# UNITED STATES DISTRICT COURT
# FOR EASTERN DISTRICT OF MICHIGAN

STEFANO CAVINATO,
individually, and on behalf of all
others similarly situated

CASE NO. 5:23-CV-10054-JEL-JJCG

     Plaintiff,

v.

ALLY FINANCIAL INC.,

     Defendant.

---

**VARNUM LLP**
Perrin Rynders (P38221)
Jailah D. Emerson (P84550)
Attorneys for Plaintiff
480 Pierce Street, Suite 300
Birmingham, MI 48009
P:  (248) 567-7800

**BAILEY & GLASSER**
James L. Kauffman (#12915)
Attorney for Plaintiff
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
P:  202-463-2101

**SUE YOUR DEALER - A LAW FIRM**
Joshua Feygin (#124685)
Attorney for Plaintiff
1930 Harrison St, Suite 208
Hollywood, FL 33020
P:  954-228-5674

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Kendra L. Huff (P69808)
Attorney for Defendant
949 Third Ave., Suite 200
Huntington, WV 25701
P:  (304) 526-3505

## DEFENDANT ALLY FINANCIAL INC.'S MOTION TO COMPEL ARBITRATION, TO DISMISS CASE PURSUANT TO FED. R. CIV. P. 12(b)(1), AND TO STRIKE CLASS ALLEGATIONS

Pursuant to Federal Rule of Civil Procedure 12(b)(1), 9 U.S.C. § 1 *et seq.*, Defendant Ally Financial Inc. ("Ally") hereby moves this Court to compel arbitration, to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(1), and to strike class allegations. The grounds for this motion are set forth in the accompanying brief.

Pursuant to Local Civil Rule 7.1(a), counsel for Ally contacted counsel for Plaintiff Cavinato to explain the nature of the relief Ally now seeks and the grounds for the instant motion, and to ascertain Plaintiff's position as to either concurring to the motion in full or narrowing the issues at hand. Counsel for Plaintiff advised that they would oppose the instant motion.

Respectfully submitted,

Dated: February 10, 2023

By: */s/ Kendra L. Huff*
Kendra L. Huff (P69808)
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Counsel for Ally Financial, Inc.
949 Third Avenue, Suite 200
Huntington, WV 25701
Telephone: (304) 526-3500
Fax: (304) 526-3599
Email: kendra.huff@nelsonmullins.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

STEFANO CAVINATO,
individually, and on behalf of all
others similarly situated                    CASE NO. 5:23-CV-10054-JEL-JJCG

      Plaintiff,

v.

ALLY FINANCIAL INC.,

      Defendant.

_____

## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION, TO DISMISS CASE PURSUANT TO FED. R. CIV. P. 12(b)(1), AND TO STRIKE CLASS ALLEGATIONS

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES....................................................................................ii

I.    INTRODUCTION.........................................................................................1

II.   FACTUAL ALLEGATIONS .........................................................................2

III.  RELEVANT LEGAL STANDARD................................................................6

IV.  ARGUMENT ...............................................................................................8

      A.    The Arbitration Clause's Delegation Provision Requires This Case Be Referred to Arbitration For a Determination of Arbitrability. ........................................................................................8

      B.    Alternatively, This Court Should Transfer This Case to Arbitration and Dismiss This Action Because Plaintiff Is Estopped From Denying His Intent to Arbitrate Claims Related to His Lease ...............................................................................10

            1.    Plaintiff Agreed to Arbitrate Any Disputes Related to the Lease Contract and Ally May Enforce That Agreement Under the Doctrine of Estoppel ...............................................................11

            2.    The Arbitration Clause Encompasses Plaintiff's Claim ............15

            3.    Congress Has Not Indicated that Consumer Leasing Act Claims Are Non-Arbitrable .................................................................16

            4.    Because the Claim Is Arbitrable, This Court Should Dismiss This Case.................................................................................17

      C.    This Court Should Strike the Class Action Allegations ....................17

V.    CONCLUSION ..........................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Express Co. v. Italian Colors Restaurant*,
    570 U.S. 228 (2013) ........................................................................ 16

*Becker v. Delek US Energy, Inc.*,
    39 F.4th 351 (6th Cir. 2022) ........................................................... 9

*Blanton v. Domino's Pizza Franchising LLC*,
    962 F.3d 842 (6th Cir. 2020) .......................................................... 9

*Boehm v. VW Credit, Inc.*,
    2022 WL 159285 (D. Neb. Jan. 18, 2022) ...................................... 16

*Brown v. Sklar-Markind*,
    2014 WL 5803135 (W.D. Pa. Nov. 7, 2014) .................................. 15

*In re Chevrolet Bolt EV Battery Litigation*,
    2022 WL 4686974 (E.D. Mich. Sept. 30, 2022) ............................. 17

*Cunningham v. Ford Motor Company*,
    2022 WL 2819115 (E.D. Mich. Jul. 19, 2022) ............................... 10

*Curiale v. Hyundai Cap. Am. Inc.*,
    2020 WL 1983231 (N.J. Sup. Ct. App. Div. Apr. 27, 2020), *cert
    denied*, 244 N.J. 346, 240 A.3d 394 (2020) ................................. 15

*Gaffers v. Kelly Servs., Inc.*,
    900 F3d 293 (6th Cir. 2018) ........................................................... 18

*Glazer v. Lehman Bros.*,
    394 F.3d 444 (6th Cir. 2002) .......................................................... 6

*Global Gen. Grp., LLC v. Mazzola*,
    2014 WL 2895445 (E.D. Mich. June 26, 2014) ......................... 14, 16

*Harrison v. Gen. Motors, LLC*,
    2023 WL 315723 (E.D. Mich. Jan. 19, 2023) ......................... 6, 9, 10

*Kroma Makeup EU, LLC v. Boldface Licensing*
  *+ Branding, Inc.*, 845 F.3d 1351 (11th Cir. 2017) (applying Florida
  Law)............................................................................................................ 8

*LoMonico v. Foulke Management Corp.*,
  2020 WL 831134 (D.N.J. Feb. 20, 2020) ........................................... 17

*Mayton v. Tempoe, LCC*,
  2017 WL 2484849 (W.D. Tex. June 7, 2017).................................... 17

*Nestle Waters N. Am., Inc. v. Bollman*,
  505 F.3d 498 (6th Cir. 2007)................................................. 7, 14, 15

*New Prime Inc. v. Oliveira*,
  139 S. Ct. 535 (2019) ........................................................................ 2

*Ozormoor v. TMobile USA, Inc.*,
  354 F. App'x 972 (6th Cir. 2009) ...................................................... 17

*Pro. Consultation Servs. Inc. v. Schaefer & Strohminger Inc.*,
  412 F. App'x 822 (6th Cir. 2011) ........................................................ 7

*Rimel v. Uber Technologies, Inc.*,
  2016 WL 6246812 (M.D. Fla. Aug. 4, 2016) ................................... 18

*Scherer v. Hyundai Cap. Am., Inc.*,
  2022 WL 17488420 (S.D. Fla. Nov. 22, 2022)................ 7, 11, 12, 13, 14

*Southerland v. Corp. Transit of Am.*,
  2014 WL 4906891 (E.D. Mich. Sept. 30, 2014) ............ 6, 7, 13, 14, 17

*Swiger v. Rosette*,
  989 F.3d 501 (6th Cir. 2021)........................................................... 6, 9

*Tyman v. Ford Motor Corp.*,
  521 F. Supp. 3d 1222 (S.D. Fla. 2021) ............................................. 13

*Waters v. Menards, Inc.*,
  2021 WL 148052 (E.D. Mich. Jan. 15, 2021)................................... 6, 7

*Wells Fargo Auto Finance, Inc. v. Wright*,
  698 S.E.2d 17 (Ct. App. Ga. 2010) ................................................... 15

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................ 1

Fed. R. Civ. P. 12(f) ................................................................. 17

**Statutes**

9 U.S.C. § 1 ........................................................................ 6

9 U.S.C. § 2 ........................................................................ 2

15 U.S.C. § 1677 .......................................................... 1, 10, 16, 17

**Other Authorities**

12 C.F.R. § 213 .................................................................... 1

Defendant Ally Financial, Inc. ("Ally") hereby submits this brief in Support of its Motion to Compel Arbitration, to Dismiss the Case pursuant to Fed. R. Civ. 12(b)(1), and to Strike Class Allegations.

## I.   INTRODUCTION

Plaintiff leased a vehicle from a dealership.  As part of that transaction, Plaintiff agreed to arbitrate any and all claims arising from, or related to, his acquisition and lease of the vehicle.  In addition, Plaintiff agreed that any dispute concerning the interpretation and scope of the arbitration provision and the arbitrability of any claim or dispute would be decided by an arbitrator.  Plaintiff further agreed to pursue any claims on an individual basis and waived any right to bring claims in a class action.

Instead of bringing his claim in arbitration on an individual basis in Florida as provided for in the leasing documents, Plaintiff brought this putative class action suit in this Court.  He alleges that Ally, the finance company that took assignment of the lease he negotiated with the car dealer, violated the Consumer Leasing Act, 15 U.S.C. § 1677, et seq. and its implementing regulation, Regulation M, 12 C.F.R. § 213, et seq. by failing to disclose that (1) Plaintiff "would be required to purchase the vehicle from the original dealer," not Ally and (2) that "Plaintiff would be required to pay additional fees to the dealer upon purchasing the vehicle."  Compl.

¶ 30.  Plaintiff's claim should be sent to the proper forum for this dispute, which is arbitration, as he agreed.

Plaintiff's claim is governed by the Federal Arbitration Act, 9 U.S.C. § 2 ("FAA"), which must be liberally construed in favor of arbitration.  *See New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 543 (2019).  Plaintiff unmistakably agreed to arbitrate any claim related to his lease of the vehicle, and to pursue those claims solely on an individual basis in the district in which the claims arose (which, in this case, is the Southern District of Florida, where Plaintiff lives and where he leased the vehicle).

As an initial matter, however, the arbitration agreement contains a "delegation clause," which requires that an arbitrator be the one to decide any issues relating to arbitrability.  Accordingly, the Court must refer the matter to arbitration to resolve any "gateway" issues of the arbitrability of Plaintiff's claim against defendant Ally.  But even if the Court decides it must first resolve the question of arbitrability, this case must still be referred to arbitration. Because Plaintiff's claim falls squarely within the applicable arbitration provision, this case must be dismissed.

## II.    FACTUAL ALLEGATIONS

On November 23, 2018, Plaintiff, a resident of Florida, executed two documents, a Retail Lease Order ("RLO") and a Lease Agreement, with Case Alfa

Romeo to acquire and lease a new 2019 Alfa Romeo Stelvio (the "Vehicle"). *See* Compl. ¶ 13 and copies of the RLO and Lease Agreement attached as Exhibits A and B, respectively, to Declaration of Jasper Garrett.[1] The RLO provided for the delivery by Case Alfa Romeo of the Vehicle to Plaintiff and informed Plaintiff that performance of the RLO depended upon his execution of a separate Lease Agreement with Case Alfa Romeo. *See* Ex. A at 1 ("Should Customer fail to execute a Lease Agreement, this [RLO] shall be deemed terminated by Dealer without further notice."); *see also id.* at 2 ("Dealer agrees to deliver the Vehicle to you on the date the Lease Agreement is signed by dealer and you."). In addition, the dealer's performance under the RLO would be contingent upon the Plaintiff securing financing from a separate creditor. *See id.* at 1. The RLO further made clear that it "shall survive the execution of the Lease Agreement" and that "[t]o the extent any terms herein conflict with the terms of the Lease Agreement (except as to dollar amounts), this Order shall control and govern." *Id.* at 3, ¶ F. Finally, the RLO provided that "This Order is an essential document to any claim by Customer against Dealer in connection with the leasing of the Vehicle." *Id.*

The financial terms for acquiring the Vehicle in the RLO are essentially identical to those contained in the Lease Agreement. For example, the RLO

---

[1] Plaintiff's Complaint purported to include a copy of the Lease Agreement in his Complaint as Exhibit A. *See* Compl. ¶ 13. The Lease Agreement was not attached to the Complaint. Accordingly, Ally has attached the Lease Agreement to this brief.

provided that the gross capitalized cost of the Vehicle was $43,946.16; that Plaintiff would be given a credit for a capitalized cost reduction of $4,358.64; and that the amount of the total capitalized cost would be $39,587.52.  Exhibit A at 1. These figures were repeated on the Lease Agreement which Plaintiff also signed, and the total capitalized cost of $39,587.52 contained in the RLO was used to calculate Plaintiff's monthly lease payments in the Lease Agreement. *Id.*

Both the RLO and Lease Agreement further informed Plaintiff that each contract would be assigned, or would be subject to assignment, following execution.  "The Lease Agreement to be entered into between Dealer and Customer . . . shall be immediately assigned by Dealer to a bank/finance company . . . which shall then be the creditor to whom Customer shall be obligated . . . ."  Ex. A at 1.   Case Alfa Romeo subsequently assigned the Lease Agreement to Ally and, at that same time, sent the RLO along with the Lease Agreement to Ally as part of the transaction.

The RLO contains an arbitration provision in which Plaintiff agreed to submit any dispute to be decided in arbitration instead of in a court or by jury trial. *See* Ex. A at 4.   The arbitration provision applies to any claims related to the leasing of the Vehicle, and also delegates to an arbitrator the initial decision to determine the interpretation and scope of that provision.  Specifically, the RLO states:

> Any claim, or dispute, whether in contract,  tort, statute or otherwise *(including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute)*, between you and us . . . which arises out of or relates to your credit application, purchase or condition of this Vehicle, this Order and Agreement *or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Order and Agreement)* shall, at your or our election, be resolved by neutral binding arbitration and not by a court action.

Ex. A at 4 (emphasis added).

Further, Plaintiff agreed that "If a dispute is arbitrated, you will give up your right to participate as a class representative or class member on any class claim you may have against us including any right to class arbitration or any consolidation of individual arbitrations." *Id.*

At the conclusion of the lease term, Plaintiff contracted to purchase the Vehicle from Case Alfa Romeo.  Compl. ¶ 20.[2]  According to Plaintiff, Case Alfa Romeo charged him a purchase price and fees that exceeded those permitted in the Lease Agreement. *See id.* at ¶ 21.  Plaintiff does not allege that he ever complained to Ally about Case Alfa Romeo's conduct.  Nor does Plaintiff allege that Ally even knew of the price which Case Alfa Romeo charged, much less that Ally directed, approved, or received any of the allegedly improper price and fees which Plaintiff paid.  Rather, Plaintiff complains about the disclosures originally made to him by

---

[2]  Plaintiff's Complaint purported to attach as an exhibit the Plaintiff's 2022 purchase agreement with Case Alfa Romeo; however, the Complaint did not include Plaintiff's purchase agreement.

Case Alfa Romeo in the Lease Agreement prior to its assignment to defendant Ally.

### III.   <u>RELEVANT LEGAL STANDARD</u>

The RLO specifically provides that the arbitration provisions applicable here are governed by the Federal Arbitration Act, 9 U.S.C. § 1 ("FAA").  "The FAA provides that arbitration clauses in commercial contracts 'shall be valid, irrevocable, and enforceable' . . . ."  *Waters v. Menards, Inc.*, 2021 WL 148052, at *2 (E.D. Mich. Jan. 15, 2021) (Levy, J.) (quoting *Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005)).  As this Court has recognized, "[T]he FAA was designed to promote arbitration and embodies a national policy favoring arbitration. . . . Courts must therefore examine the language of [arbitration agreements] in light of the strong federal policy favoring arbitration."  *Southerland v. Corp. Transit of Am.*, 2014 WL 4906891, at *3 (E.D. Mich. Sept. 30, 2014) (internal quotations and citations omitted) (Levy, J.).

In evaluating a motion to compel arbitration, the Court should first determine whether "gateway" issues of arbitrability have been delegated to an arbitrator. *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021) ("A valid delegation clause precludes courts from resolving any threshold arbitrability disputes . . . ."); *Harrison v. Gen. Motors, LLC*, 2023 WL 315723, at *3 (E.D. Mich. Jan. 19, 2023) ("the fact that . . . named plaintiffs did not contract with GM does not bar the Court from

delegating questions of arbitrability, including that very issue, to the arbitrator."). If Plaintiff agreed to delegate issues of arbitrability to an arbitrator, the Court must refer the matter to arbitration and dismiss the case.

Alternatively, if the Court determines the delegation clause does not apply, it then must: (1) determine whether the parties agreed to arbitrate; (2) determine the scope of arbitration; (3) consider whether Congress intended the subject claim to be non-arbitrable; and (4) whether, if the claims are arbitrable, to stay the action or dismiss it. *See Waters*, 2021 WL 148052, at *2. If there is any doubt about the parties' intention to agree to arbitration, the Court must resolve them "in favor of arbitration." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007).

As this Court and relevant Florida courts[3] have recognized, a non-signatory to an arbitration agreement may enforce that agreement against a signatory under the doctrine of estoppel. *See Scherer v. Hyundai Cap. America, Inc.,* 2022 WL 17488420 (S.D. Fla. Nov. 22, 2022) (applying Florida law); *Southerland v. Corp. Transit of Am.,* 2014 WL 4906891 (E.D. Mich. Sept. 30, 2014) (applying Michigan

---

[3] Though the underlying contractual documents do not contain explicit choice of law provisions, the Plaintiff is a Florida resident, the Lease Contract and RLO were executed in Florida, the Vehicle was leased, purchased and garaged in Florida, and Case Alfa Romeo is located in Florida. Accordingly, Florida law applies to this dispute. *See Pro. Consultation Servs. Inc. v. Schaefer & Strohminger Inc.,* 412 F. App'x 822, 824-25 (6th Cir. 2011).

and New York law) (Levy, J); *Kroma Makeup EU, LLC v. Boldface Licensing +*
*Branding, Inc.,* 845 F.3d 1351 (11th Cir. 2017) (applying Florida Law).

## IV.   <u>ARGUMENT</u>

This Court should enforce the arbitration agreement in the RLO and compel
arbitration of Plaintiff's individual claim.  As a threshold matter, this Court should
dismiss the suit and refer it to an arbitrator to decide any "gateway" arbitrability
issues because Plaintiff agreed to a "delegation clause" in the arbitration agreement.

But even if the Court were to itself decide the issue of arbitrability, Plaintiff
explicitly agreed to arbitrate any disputes relating to the lease, and Plaintiff is
equitably estopped from denying his agreement to arbitrate his claim.  There can be
no question that the subject matter of this suit falls squarely within the scope of the
arbitration provision in the RLO.  Because the sole claim in the Complaint is subject
to arbitration, this Court should dismiss the case.

### A.   <u>The Arbitration Clause's Delegation Provision Requires This Case</u>
<u>Be Referred to Arbitration For a Determination of Arbitrability.</u>

In the RLO which Plaintiff executed, he agreed that "any claim or dispute . . .
*[]including the interpretation and scope of this Arbitration Provision, and the*
*arbitrability of any claim or dispute*" would be resolved by "neutral, binding
arbitration and not by a court action."  Ex. A at 4 (emphasis added).  The Sixth
Circuit has repeatedly made clear that such delegation provisions are enforceable,
and require that the question of whether a nonsignatory to an arbitration provision

may invoke it, must be decided as a "gateway" issue by an arbitrator.  *See Swiger*,

989 F.3d 501 at 505 ; *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 356 (6th Cir.

2022); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 850-51 (6th Cir.

2020).

In *Swiger,* a defendant sought to enforce an arbitration clause executed by the

plaintiff but to which the defendant was a nonsignatory.  Rejecting the plaintiff's

argument that defendant could not enforce the arbitration clause, the Court of

Appeals ruled, "whether [defendant] can enforce the arbitration agreement against

[plaintiff] presents a question of arbitrability that [plaintiff's] arbitration agreement

delegated to an arbitrator." *Swiger*, 989 F.3d at 507 (citing *Blanton,* 962 F.3d 842).

Recent cases in this district are instructive.  In *Harrison v. General Motors,*

*LLC,* the district court permitted defendant General Motors to invoke an arbitration

clause, though it was a nonsignatory to the underlying agreement, which plaintiff

executed with the automobile dealer from which he purchased an allegedly defective

vehicle:

> [W]here a plaintiff has signed a contract with an arbitration provision
> and a delegation clause and where a non-party to the contract seeks to
> compel the plaintiff to arbitrate claims that bear some relationship to
> the contract – the question is *not* whether the plaintiff specifically
> intended that the non-party could enforce the delegation clause.  . . .
> Rather, the sole question is whether the delegation clause clearly and
> unmistakably delegates questions of arbitrability to the arbitrator.

9

2023 WL 315723 at *5 (quoting *Cunningham v. Ford Motor Co.*, 2022 WL 2819115 (E.D. Mich. Jul. 19, 2022) (referring matter to arbitrator to decide gateway issue of arbitrability of claim against a nonsignatory)).

Here, Plaintiff cannot seriously challenge the existence of the arbitration agreement and the validity of its delegation clause.  Nor can Plaintiff seriously challenge whether the delegation clause "clearly and unmistakably delegates questions of arbitrability to the arbitrator."  The delegation provision in the RLO's arbitration clause states unequivocally that "*the arbitrability of any claim or dispute*" would be resolved by "neutral, binding arbitration and not by a court action." Ex. A at 4 (emphasis added).

Accordingly, this Court should refer this matter to arbitration so that an arbitrator can determine arbitrability of the claim presented here.

B.    Alternatively, This Court Should Transfer This Case to Arbitration and Dismiss This Action Because Plaintiff Is Estopped From Denying His Intent to Arbitrate Claims Related to His Lease.

But even if this Court determines that it must first resolve whether Plaintiff intended to arbitrate any claims related to his lease of the Vehicle, it should still refer this case to arbitration and dismiss this action.  As set forth in more detail below, Plaintiff agreed to arbitrate any disputes related to his lease, and the claim under the Consumer Leasing Act advanced by Plaintiff falls squarely within the arbitration clause.

1. <u>Plaintiff Agreed to Arbitrate Any Disputes Related to the Lease Contract and Ally May Enforce That Agreement Under the Doctrine of Estoppel</u>

There can be no question that Plaintiff agreed to submit any claims relating to the leasing to arbitration. The Arbitration Provision is clear that it applies to "[a]ny claim or dispute, whether in contract, tort, statute or otherwise . . . which arises out of or relates to your credit application, purchase or condition of this Vehicle, this Order and Agreement or any resulting transaction or relationship . . . ." Ex. A at 4. Here, Plaintiff is challenging the initial disclosures concerning the lease purchase option contained within the Lease Agreement provided to him by Case Alfa Romeo, and which was executed simultaneously with, and a necessary contingent precedent to the fulfillment of, the RLO on November 23, 2018.

In *Scherer v. Hyundai Capital America, Inc.,* a case which presented virtually identical facts and legal issues to the instant litigation, the court recently granted an auto leasing entity's motion to compel arbitration. 2022 WL 17488420 (S.D. Fla. Nov. 22, 2022), *report and recommendation accepted by* Order Adopting and Approving Report and Recommendation of Magistrate Judge; Granting Defendant's Motion to Compel Arbitration, [Dkt 27], December 7, 2022 (adopting magistrate judge's report following no objection and district court agreeing with analysis and conclusions) (attached as Exhibit C).

As here, the plaintiff in *Scherer* executed a retail leasing order with an automobile dealership and contemporaneously executed a lease agreement which was then assigned to defendant Hyundai. At the expiration of the lease term, the plaintiff in *Scherer* purchased his leased vehicle from a dealership and paid charges and fees to the dealer allegedly not permitted by the leasing agreement. *Scherer*, 2022 WL 17488420, at *1. As here, the plaintiff in *Scherer* did not bring suit in court against the dealer which charged him the allegedly impermissible fees, but filed a class action suit against the financing entity, Hyundai. Hyundai, though not a signatory to the retail leasing order which contained the arbitration clause, moved to compel arbitration and to dismiss.

The Court in *Scherer* granted defendant Hyundai's motion to compel, finding, among other things, that the doctrine of estoppel permitted non-signatory Hyundai to enforce the arbitration agreement. *See id.* at *6.[4] Finding that plaintiff would necessarily have to rely on the RLO to advance his claim, the court ruled that "a non-signatory defendant [may] enforce an arbitration clause against a signatory plaintiff . . . when 'the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *Id.* Finding that the RLO was "an 'essential document' to the claims in this case, a case that involves claims asserted in connection with the

---

[4] *Scherer* relied on Florida contract law, which is applicable here. *See infra* n. 3.

leasing of the Vehicle insofar as the claims pertain to a lease-buyout option discussed in the [Lease Agreement]," and observing that the terms of the RLO would control to the extent they conflicted with the Lease Agreement, the court in *Scherer* held that "equitable estoppel allows Defendant to enforce the Arbitration Provision against Plaintiff." *Id.*[5] *See also Tyman v. Ford Motor Corp.*, 521 F. Supp. 3d 1222, 1227 (S.D. Fla. 2021) (applying estoppel to compel plaintiff to arbitrate claim under arbitration clause in retail lease agreement even though defendant was not a signatory thereto).

Here, the contractual terms cited by the *Scherer* court in compelling arbitration are *identical* to those found in the underlying RLO executed by Plaintiff when he contemporaneously executed the RLO and Lease Agreement. Accordingly, and for the same reasons articulated by the court in *Scherer,* this Court should grant defendant Ally's motion to compel arbitration.

This Court's decision in *Southerland v. Corporate Transit of America* is in accord. In that case, applying Michigan and New York law, this Court enforced an arbitration provision invoked by a non-signatory defendant against a signatory

---

[5] In *Scherer,* defendant Hyundai also argued that the RLO had been assigned to it along with the Lease Agreement. The court accepted that the RLO had been assigned to Hyundai which provided a separate and independent grounds on which to compel arbitration. *Scherer,* 2022 WL 17488420, at *5-6. Ally does not maintain that the RLO was assigned to it. Rather, Ally maintains as argued above that the doctrine of estoppel permits it to enforce the arbitration clause even though it is not a signatory to the RLO.

plaintiff.   *See* 2014 WL 4906891, at *4-5.   Although applying slightly (and immaterially) different tests to determine whether estoppel applied, this Court held that "[t]he underlying principle is consent: namely, whether the signatory could have 'foreseen the involvement of the nonsignatory' and could therefore 'be said to have consented to arbitrate with the nonsignatory." *Id.* at *4 (internal citation omitted). In this case, there is no question that the Plaintiff knew that Ally would be an essential party to his procurement and leasing of his Vehicle.   At the time that Plaintiff executed the RLO, he knew that he would be required to execute a separate Lease Agreement and that such agreement would be subsequently assigned to a bank or financing institution.   *See* Ex. A at 1.   Moreover, when he executed the RLO, Plaintiff contemporaneously executed the referenced Lease Agreement with Case Alfa Romeo which showed that Ally would serve as the financing institution for the lease of Plaintiff's Vehicle.   *See* Ex. B at 1.   *Cf. Global Gen. Grp., LLC v. Mazzola*, 2014 WL 2895445 (E.D. Mich. June 26, 2014) (Levy, J.) (dismissing action in favor of arbitration in light of close relationship between two agreements).

The decision of this Court in *Southerland* and the district court in *Scherer* each followed well-established precedents set forth by the Sixth Circuit and several other courts which have addressed similar cases.   In *Nestle Waters North America  v. Bollman,* the court of appeals upheld the application of an arbitration provision in an agreement in a dispute involving a separate but related contract.   505 F.3d 498 (6th

Cir. 2007).  Finding that the action could not be maintained without reference to the earlier contract or relationship at issue, the court of appeals applied the presumption favoring arbitrability and affirmed the lower court's dismissal of the action finding in favor of a non-signatory defendant who sought to compel arbitration.  *See id.* at 505; *see also Brown v. Sklar-Markind*, 2014 WL 5803135, at *13 (W.D. Pa. Nov. 7, 2014) (granting motion of non-signatory defendant to compel arbitration when contract applied to "any resulting transaction or relationship, including that with the dealer, or any result [sic] transaction with third parties who do not sign this contract."); *Curiale v. Hyundai Cap. Am. Inc.*, 2020 WL 1983231, at *5 (N.J. Sup. Ct. App. Div. Apr. 27, 2020), *cert denied*, 244 N.J. 346, 240 A.3d 394 (2020) (compelling arbitration, ruling "Here, the [RLO] and the lease agreement were executed at the same time and related to the same transaction: plaintiff's lease of the vehicle."); *Wells Fargo Auto Finance, Inc. v. Wright*, 304 Ga. App. 621, 621-23, 698 S.E.2d 17, 18-19 (2010) (permitting non-signatory financing entity to enforce a separately executed arbitration agreement because financing agreement and arbitration agreement "were executed simultaneously" and "should be read and construed together.").

### 2. The Arbitration Clause Encompasses Plaintiff's Claim

There can be no doubt that the Arbitration Provision encompasses Plaintiff's claim under the CLA.  It provides, in broad and comprehensive language, that:

> *Any claim, or dispute, whether in* contract, tort, *statute* or otherwise . . . between you and us or our . . . successors or assigns, which arises out of or relate to your credit application, purchase or condition of this Vehicle, this Order and Agreement *or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Order and Agreement)* shall, at your or our election, be resolved by neutral binding arbitration and not by a court action.

Ex. A at 4 (emphasis added).  In *Global General Group, LLC,* this Court evaluated a similarly broad arbitration clause and held that federal securities fraud claims fell within the scope of the relevant agreement.  2014 WL 2895445, at *6.  Referring to the arbitration provision's expansive sweep—"any claim, dispute, or controversy arising under, out of or relating to the Agreement"—this Court  dismissed the plaintiff's action and granted defendant's motion to compel.  *Id.*  This accords with long-standing precedent that federal statutory claims are subject to arbitration.  *See American Express Co. v. Italian Colors Restaurant,* 570 U.S. 228, 233-34 (2013) (finding that claims under federal antitrust laws could be subject to arbitration).

### 3. Congress Has Not Indicated that Consumer Leasing Act Claims Are Non-Arbitrable

There is no indication that Congress intended claims under the Consumer Lease Act to be non-arbitrable.  There is nothing in the statute or legislative history of the CLA disfavoring arbitration and, indeed, courts have routinely granted motions to compel arbitration when presented with claims under that statute.  *See, e.g., Boehm v. VW Credit, Inc.,* 2022 WL 159285 (D. Neb.  Jan. 18, 2022) (granting motion to compel arbitration in Consumer Leasing Act case and directing case to

arbitration); *LoMonico v. Foulke Mgmt. Corp.,* 2020 WL 831134 (D.N.J. Feb. 20, 2020) (directing claims under the CLA to arbitration); *Mayton v. Tempoe, LCC,* 2017 WL 2484849 (W.D. Tex. June 7, 2017) (same).

4. Because the Claim Is Arbitrable, This Court Should Dismiss This Case

As this Court has recognized, the Sixth Circuit has authorized courts to dismiss lawsuits where retention of jurisdiction following referral to arbitration would serve no purpose. *See Southerland,* 2014 WL 4906891, at *11 (citing *Ozormoor v. TMobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009). This Court has further recognized that it is "the practice of courts within this circuit" to dismiss cases when all claims are referable to arbitration. *Id.* Plaintiff advances one cause of action, which indisputably falls within the arbitration provision of the RLO, and, accordingly, this Court should follow its prior practice and dismiss this case.

C. This Court Should Strike the Class Action Allegations

Federal Rule of Civil Procedure 12(f) "allows a court to strike from a pleading . . . 'any redundant, immaterial, impertinent, or scandalous matter.'" *In re Chevrolet Bolt EV Battery Litigation,* 2022 WL 4686974, at *7 (E.D. Mich. Sept. 30, 2022). Here, there can be no question that Plaintiff agreed to pursue his claims individually and specifically to waive any right to proceed as a class representative in a class action. Therefore, this Court should enforce the class action waiver contained in the arbitration provision of the RLO. *See Gaffers v.*

17

*Kelly Servs., Inc.,* 900 F3d 293, 297 (6th Cir. 2018) (upholding class action waiver in arbitration clause); *Rimel v. Uber Technologies, Inc.,* 2016 WL 6246812 (M.D. Fla. Aug. 4, 2016) (striking class allegations contained in arbitration clause).

## V.    <u>CONCLUSION</u>

Plaintiff agreed to arbitrate any claim or dispute arising from the lease of his vehicle. Further, Plaintiff further agreed that any such claim would be pursued on an individual basis by waiving any right to bring class action litigation. In addition, Plaintiff agreed to delegate any threshold "gateway" issues of arbitrability to an arbitrator. For the reasons set forth above, Ally may enforce all of these provisions. Accordingly, this Court should dismiss this case, strike the class allegations, and refer this suit to arbitration.

Respectfully submitted,

Dated: February 10, 2023

By: */s/ Kendra L. Huff*
Kendra L. Huff (P69808)
**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
Counsel for Ally Financial, Inc.
949 Third Avenue, Suite 200
Huntington, WV 25701
Telephone: (304) 526-3500
Fax: (304) 526-3599
Email: kendra.huff@nelsonmullins.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**STEFANO CAVINATO**, on
behalf of HIMSELF and all
others similarly situated,

      Plaintiff,

v.                                  Case No. 5:23-cv-10054

**ALLY FINANCIAL, INC.,**

      Defendant.

### CERTIFICATE OF SERVICE

I certify that on the 10th day of February, 2023, I served *"Defendant Ally Financial Inc.'s Motion to Compel Arbitration, to Dismiss Case Pursuant to Fed. R. Civ. P. 12(b)(1), and to Strike Class Allegations"* and *"Defendant's Brief in Support of Motion to Compel Arbitration, to Dismiss Case Pursuant to Fed. R. Civ. P. 12(b)(1), and to Strike Class Allegations"* upon all parties of record and filed with the Clerk of the Court utilizing the CM/ECF system which will send electronic notification of such filing to all parties of record.


                                     */s/ Kendra L. Huff*
                                     Kendra L. Huff, Esquire (P69808)