## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**STEFANO CAVINATO,** on
behalf of HIMSELF and all others
similarly situated,

      Plaintiff,

      v.

**ALLY FINANCIAL, INC.,**

      Defendant.

Case No. 5:23-cv-10054

Hon. Judith E. Levy

**<u>PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO
COMPEL ARBITRATION, TO
DISMISS THE CASE PURSUANT
TO FED. R. CIV. P. 12(b)(1), AND
TO STRIKE CLASS
ALLEGATIONS</u>**

---

| | |
|---|---|
| Perrin Rynders (P38221) | Kendra L. Huff (P69808) |
| Jailah D. Emerson (P84550) | Lyndsey A. Stultz (#687958) |
| Varnum LLP | Robert J. McGahan (#446707) |
| Attorneys for Plaintiff | Nelson Mullins Riley & Scarborough |
| 480 Pierce Street, Suite 300 | LLP |
| Birmingham, MI 48009 | Attorneys for Defendant |
| (248) 567-7800 | 949 Third Avenue, Suite 200 |
| prynders@varnumlaw.com | Huntington, WV 25701 |
| jdemerson@varnumlaw.com | (304) 526-3505 |
| | kendra.huff@nelsonmullins.com |
| James L. Kauffman (#12915) | lyndsey.stultz@nelsonmullins.com |
| Bailey & Glasser, LLP | robert.mcgahan@nelsonmullins.com |
| Co-Counsel for Plaintiff | |
| 1055 Thomas Jefferson Street NW, | |
| Suite 540 | |
| Washington, DC 20007 | |
| (202) 463-2105 | |
| jkauffman@baileyglasser.com | |
| | |
| Joshua Feygin (#124685) | |
| Co-Counsel for Plaintiff | |
| 1930 Harrison Street, Suite 208 | |
| Hollywood, FL 33020 | |
| (954) 228-5674 | |
| josh@jfeyginesq.com | |

## **TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ……………………………………………………… 6

FACTUAL BACKGROUND …………………………………………… 8

APPLICABLE LAW …………………………………………………… 10

    **A.**    A Motion to Compel Arbitration is Evaluated
        Under a Summary Judgment Standard ……………………… 11

    **B.**    Florida Law Applies to this Dispute ………………………… 12

THIS ACTION ARISES UNDER THE LEASE AGREEMENT…………. 12

    **C.**    This Dispute Arises Out of the Lease Agreement Only ……… 13

    **D.**    The Lease Agreement superseded the RLO;
        therefore, no valid arbitration or delegation
        clause exists ………………………………………………….. 16

    **E.**    Ally's Arguments on Estoppel Regarding the
        Delegation or Arbitration Clauses are based on Documents
        that Cannot be Considered by the Court ……………………… 23

    **F.**    Ally's Motion to Strike Class Allegations is Premature …….. 24

CONCLUSION ………………………………………………………… 25

# INDEX OF AUTHORITIES

**CASES**                                                                **PAGE(S)**

*Basulto v. Hialeah Automotive*, 141 So.3d 1145 (Fla.2014) ……………… 23

*Chapman v. General Motors LLC*, 531 F.Supp.3d 1257,
1306 (E.D. Mich. 2021) ……………………………………………………… 25

*City of Homestead v. Johnson*, 760 So.2d 80, 84 (Fla.,2000) fed. ………… 19

*CT Miami, LLC v. Samsung Elecs. Latinoamerica Miami, Inc*.,
201 So. 3d 85, 93 (Fla. 3d DCA 2015) …………………………………… 17

*Dasher v. RBC Bank*, 745 F.3d 1111 (11th Cir.2014) …………………….. 17

*Duval Motors Co. v. Rogers*, 73 So. 3d 261, 265
(Fla. 1st Dist. App. 2011) ……………………………………... 6, 18, 19, 21

*Emerg. Associates of Tampa, P.A. v. Sassano*, 664 So. 2d
1000, 1003 (Fla. 2d Dist. App. 1995) …………………………………… 23

*Francis v. General Motors, LLC*, 504 F.Supp.3d 659, 694
(E.D. Mich. 2020) …………………………………………………….. 25

*GEICO Indem. Co. v. Walker*, 319 So. 3d 661, 665
(Fla. 4th DCA 2021) …………………………………………………….. 14

*Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889
(C.A.6 (Mich.), 2002) …………………………………………………… 11

*Harvey v. Lifespace Cmtys., Inc.*, 306 So. 3d 1248, 1250
(Fla. Dist. Ct. App. 2020) …………………………………………… 14

*HHH Motors, LLP v. Holt*, 152 So. 3d 745, 748
(Fla. 1st Dist. App. 2014) …………………………………… 16, 21, 23

*Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 53 n.1
(Fla. Dist. Ct. App. 2005) ………………………………………… 18

*Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*,
845 F.3d 1351, 1354 (C.A.11 (Fla.), 2017) ……………………….. 7

*Lee v. All Fla. Constr. Co.*, 662 So. 2d 365, 366
(Fla. Dist. Ct. App. 1995) ……………………………………..… 14

*Odum v. LP Graceville*, LLC, 277 So. 3d 194, 197
(Fla. 1st Dist. App. 2019) …………………………………… 17

*Pro. Consultation Servs. Inc. v. Schaefer & Strohminger Inc.*,
412 F. App'x 822, 824-25 (6th Cir. 2011) ……………………… 12

*Publix Super Mkts., Inc. v. Wilder Corp. of Del.*,
876 So. 2d 652, 654 (Fla. 2d DCA 2004) ……………………… 14

*Scherer v. Hyundai Cap. Am., Inc.*, 2022 WL 17488420
(S.D. Fla. Nov. 22, 2022) ……………………………………….. 21

*Schreiber v. Ally Fin. Inc.*, 634 Fed. Appx. 263, 265
(11th Cir. 2015) ……………………………………………….. 7, 24

*Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999) …………... 13

*UATP Mgt., LLC v. Barnes*, 2D20-1301, 2021 WL 1431617
(Fla. 2d Dist. App. Apr. 16, 2021) ……………………………… 17

*Walker v. State Farm Fire & Cas. Co.*, 758 So.2d 1161,
1162 (Fla.App. 4 Dist.,2000) ……………………………………………  19


*1906 Collins LLC v. Romero*, 346 So.3d 1262, 1264–65
(Fla. 3d DCA 2022) …………………………………………………...  13

## I.    INTRODUCTION

Defendant Ally Financial, Inc. ("Ally") leased a vehicle to Plaintiff Stefano Cavinato ("Cavinato") with an agreed price at which Cavinato could buy the vehicle at the end of the lease. Ally drafted and the parties executed an Ally SmartLease Agreement (the "Lease Agreement"), which has all the essential terms of the lease. ECF No. 9-1, Exhibit B Page ID. 61-65.

When the lease ended, Cavinato tried to buy the vehicle for the agreed price, but Ally refused to honor it, and as a result Cavinato paid thousands more than the agreed price. As a result of Ally's failure to disclose the price Cavinato could expect to pay in the Lease Agreement, Cavinato sued Ally under the Consumer Leasing Act ("CLA"). His claim is solely based on Ally's choice not to comply with the agreed purchase price in the Lease Agreement. According to Ally, the CLA claim should be arbitrated based on an arbitration clause in a Retail Lease Order ("RLO")—an extraneous document not incorporated or mentioned in the Lease Agreement and one that Ally did not draft.

The Court should deny the motion to compel arbitration for two reasons:

*First*, under Florida law, a merger clause in a contract affirms the parties' intent to apply the parol evidence rule to the contract, so it supersedes any previous agreements related to the contract. *Duval Motors Co. v. Rogers*, 73 So. 3d 261, 265 (Fla. 1st Dist. App. 2011). Ally drafted a merger clause into the Lease Agreement

and chose not to include an arbitration or delegation clause. Nor did Ally incorporate the RLO into the Lease Agreement. Therefore, the arbitration and delegation clause in the RLO are unenforceable under Florida law since the Lease Agreement is a fully integrated contract that contains no arbitration or delegation clause.

*Second*, Florida law permits a non-signatory to enforce a contract only when "the signatory ... must rely on the terms of the written agreement in asserting its claims against the nonsignatory...." *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc*., 845 F.3d 1351, 1354 (C.A.11 (Fla.), 2017) (quoting *Allscripts Healthcare Sols., Inc. v. Pain Clinic of Nw. Fla., Inc*., 158 So.3d 644, 646 (Fla. 3d DCA 2014) (emphasis added). Here, Cavinato's claim is solely based on the violation of the CLA in the Lease Agreement. Faced with a similar scenario, the Eleventh Circuit affirmed the district court's denial of a motion to compel arbitration by finding that plaintiff's claim against a financing company—based on a violation of the CLA—did not "rely on" the terms of a buyer's order. *See Schreiber v. Ally Fin. Inc.*, 634 Fed. Appx. 263, 265 (11th Cir. 2015).

For these reasons, the Court should deny the Ally's Motion in its entirety.

## II.    FACTUAL BACKGROUND

On November 23, 2018, Cavinato executed the RLO with Rick Case Alfa Romeo ("Dealer"). This document, between Cavinato and the Dealer, anticipated that Cavinato would later execute a Lease Agreement with Ally.[1]

Cavinato and Ally executed the Lease Agreement for a new 2019 Alfa Romeo Stelvio (the "vehicle"), which was signed after the RLO. Plaintiff agreed to "everything in [the Lease Agreement]," by signing "this lease."

The Lease Agreement provided that Cavinato would pay $6,373 cash, then make 39 monthly payments of $477.57. Importantly, it gave Cavinato the option to purchase the vehicle at lease end:

> Purchase Option at End of Lease Term. You have an option to buy the vehicle at the end of the lease term for $23,809.10 plus official fees and taxes.

*Id*.

The Lease Agreement was clear that the purchase price option would be an "all-in" price, except for "official fees and taxes" which the Lease Agreement defined as "all government license, title, registration, testing, and inspection fees for the vehicle" and "all taxes on the lease."  *Id.*

---

[1] The RLO states, "This is not the Lease Agreement. The lease terms will be contained in a Lease Agreement which Customer will be required to execute." Dkt. #9-1 at 4.

For additional information about "**Other Important Terms**" concerning the lease transaction, the Lease Agreement provides: "See your *lease documents* for additional information on early termination, purchase options, and maintenance responsibilities, warranties, late and default charges, and insurance." *Id*.

At the bottom of the first page, it further provides:

> **SEE THE OTHER PAGES OF *THIS LEASE* FOR OTHER IMPORTANT AGREEMENTS INCLUDING PROHIBITION OF TRANSFER OF YOUR INTEREST.**

*Id.* (emphasis added).

The Lease Agreement informed Cavinato that "**THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT**."

And immediately below, it contains the following merger clause:

> **THIS IS THE ENTIRE AGREEMENT.** This lease contains the entire agreement between you and us relating to the lease of this vehicle. Any change to this lease must be in writing and we must sign it. No oral changes are binding.

Cavinato signed the Lease Agreement and agreed to the "TERMS OF THIS LEASE":

Nowhere in the Lease Agreement is arbitration or delegation mentioned. Nor does it incorporate the RLO.

After making all 39 payments under the Lease Agreement, Cavinato attempted to buy the vehicle from Ally, but Ally refused to perform the buy-out, directing him instead to the dealer. The cash price of the vehicle was set at $24,974.10 plus additional dealer service charges and a battery fee, resulting in a total purchase price of $26,199.55. Cavinato paid the purchase price of the vehicle, which was thousands of dollars higher than the contractual buyout price in the Lease Agreement.

## III.   APPLICABLE LAW

Cavinato brought this lawsuit for Ally's CLA violations, which Cavinato alleges arise solely out of the Lease Agreement when Ally failed to sell Cavinato the

vehicle at the agreed price. The Lease Agreement has a merger clause that explicitly states t"[t]his lease contains the entire agreement between you and us relating to the lease of the vehicle." *See* **Exhibit A** to Dkt. No. 9-1. The Lease Agreement's merger clause makes clear that it is a fully integrated contract between Cavinato and Ally.

Faced with unfavorable language in a contract Ally drafted itself, Ally deliberately confuses the terms of the RLO with the terms of the Lease Agreement. *See* Dkt. No. 9. Ally hopes to divert the Court's attention from the only document relied upon for Cavinato's CLA claims – the Lease Agreement – and point it instead toward an inapplicable arbitration clause found in a document (the RLO) to which it is not a signatory. *Id.*

### A.  A Motion to Compel Arbitration is Evaluated Under a Summary Judgment Standard

Under Section 4 of the FAA, the Court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. However, "[i]f the making of the arbitration agreement … be in issue, the court shall proceed summarily to the trial thereof." *Id.*

"In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878,

889 (C.A.6 (Mich.), 2002). "The required showing mirrors that required to withstand summary judgment in a civil suit." *Id.*

### B.    Florida Law Applies to this Dispute

Both parties agree that Florida law applies to this dispute. *See* Dkt. No. 9 at pp. 7; *see also Pro. Consultation Servs. Inc. v. Schaefer & Strohminger Inc.*, 412 F. App'x 822, 824-25 (6th Cir. 2011) ("the court should consider several factors in order to 'balance the expectations of the parties ... with the interests of the states involved,' [] including '(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.'") (citations omitted). The SmartLease was signed in Florida, the vehicle was leased by Ally and used by Plaintiff in Florida, and the Plaintiff is a domicile of Florida. Thus, the Michigan choice-of-law rules dictate that Florida law applies to this dispute. *Id.*

## IV.    THIS ACTION ARISES UNDER THE LEASE AGREEMENT

The Lease Agreement was executed between Ally and Plaintiff Stefano Cavinato ("Cavinato") before the Covid-19 Pandemic and set the exact price that Cavinato could expect to purchase his vehicle at the end of the Lease Agreement. After the Pandemic, used car prices inflated significantly, so Ally did not honor its contractual price commitment, resulting in Ally's violation of the Consumer Leasing

Act and this Action. Cavinato's claims arise solely from the terms of the Lease Agreement, which contains a clear, unmistakable "Entire Agreement" integration clause drafted by Ally and no agreement to arbitrate. Despite Ally's insistence that it may avoid liability by pointing to extrinsic evidence outside of the Lease Agreement, this Court should not consider any other document and deny Ally's Motion.

## C.    This Dispute Arises Out of the Lease Agreement Only

The Court should first consider the contract between the parties and only those documents relevant to Cavinato's claims; here, the only relevant document is the Lease Agreement. Under both the state and federal arbitration codes, when considering a motion to compel arbitration, a court evaluates three factors: (1) whether a valid agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration has been waived. *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999). "[I]n determining whether the parties have agreed to arbitrate a particular dispute, arbitration provisions are to be construed following general principles of contract interpretation, and no party may be forced to submit a dispute to arbitration if the parties did not intend and agree to arbitrate that dispute." *1906 Collins LLC v. Romero*, 346 So.3d 1262, 1264–65 (Fla. 3d DCA 2022), quoting *MV Ins. Consultants v. NAFH Nat'l Bank*, 87 So. 3d 96, 98 (Fla. 3d DCA 2012). "It is fundamental that where a contract is clear and unambiguous in its terms, the court

may not give those terms any meaning beyond the plain meaning of the words contained therein." *GEICO Indem. Co. v. Walker*, 319 So. 3d 661, 665 (Fla. 4th DCA 2021) (quotation omitted). "Courts must 'construe contracts in such a way as to give reasonable meaning to all provisions,' rather than leaving part of the contract useless." *Publix Super Mkts., Inc. v. Wilder Corp. of Del*., 876 So. 2d 652, 654 (Fla. 2d DCA 2004) (quoting *Hardwick Props., Inc. v. Newbern*, 711 So. 2d 35, 40 (Fla. 1st DCA 1998)).

Furthermore, a party cannot compel arbitration when the dispute arises from a contract that does not contain an arbitration clause by referencing a separate agreement from which the dispute does not arise. *See Lee v. All Fla. Constr. Co.*, 662 So. 2d 365, 366 (Fla. Dist. Ct. App. 1995) (holding under Florida law that where two separate contracts exist and only one contains an arbitration clause "the parties cannot be compelled to arbitrate disputes arising from the contract that does not call for arbitration"); *Harvey v. Lifespace Cmtys., Inc.*, 306 So. 3d 1248, 1250 (Fla. Dist. Ct. App. 2020) ("Arbitration provisions from one contract cannot be extended to a separate contract between the same parties unless the parties expressly agree to do so.") (internal citations omitted).

Cavinato's claims arise solely from the Lease Agreement because it is the only document with the disclosures required by the CLA. For example, the CLA requires certain disclosures to be segregated from other required disclosures and lease

information. The segregated disclosure (commonly called the federal box) must

contain only the following information:

- The amount due at lease signing (which includes for automobile leases both the itemization of the amount due and how the amount due will be paid);
- The payment schedule and total of periodic payments;

- Other charges;

- Total of payments;

- For motor vehicle leases, an eleven step payment calculation;

- The early termination notice (i.e., the warning that the charge can be substantial, not the actual disclosure of the early termination method);

- A statement referencing the other required disclosures found elsewhere on the disclosure form;

- A warning and amount or method of determining the charges for excessive wear or use; and

- The end of term purchase option price (not the purchase option price earlier in the lease).

Reg. M § 1013.3(a)(2).

The above disclosures appear on the Lease Agreement, not the RLO.

Cavinato has sued Ally for choosing not to disclose fees that had to be paid to

purchase the vehicle at lease end. Under the CLA, the lease must state whether or

not it provides the option to purchase the leased property. Reg. M § 1013.4(i). If the

option exists before the end of term, the lease must indicate, outside the segregated

disclosures in the same place as disclosure of the right to purchase early, when this option can be exercised, and the price or method of determining the price. Reg. M §§ 1013.3(a)(2). The purchase option fees the lessor assesses must be included in the purchase option disclosure, and not disclosed as "other charges." Official Interpretations § 1013.4(i)-3.

The purchase option information is disclosed in the Lease Agreement, not the RLO. As a result, Cavinato need not "rely on" the RLO for his CLA claims.

Cavinato's CLA claims rely only on Ally's failure to comply with the terms of the Lease Agreement. The Lease Agreement is clear in excluding consideration of any parol evidence in its merger clause. Considering another document that is outside of the Lease Agreement, as Ally must do to compel arbitration under the RLO, violates the basic tenets of contract interpretation.  Additionally, should the Court follow Ally's argument, the merger clause in the Lease Agreement would render it useless, an effect that Florida and federal law specifically warn against. Ally's motion should be denied because the Lease Agreement is the relevant contract between the parties, and it does not contain any agreement to arbitrate.

### D. The Lease Agreement superseded the RLO; therefore, no valid arbitration or delegation clause exists.

"[C]hallenges to formation or existence of a contract are resolved by the court." *HHH Motors, LLP v. Holt*, 152 So. 3d 745, 748 (Fla. 1st Dist. App. 2014) *citing Granite Rock Co. v. International Broth. of Teamsters*, 130 S.Ct. 2847, 2855,

561 U.S. 287, 296 (U.S., 2010); *cf. Dasher v. RBC Bank*, 745 F.3d 1111 (11th Cir.2014) (holding that whether a subsequent agreement entirely supersedes a prior agreement is made under state law, without applying the FAA's presumption). Whether a valid delegation clause exists is an issue for the court to decide. *See Odum v. LP Graceville*, LLC, 277 So. 3d 194, 197 (Fla. 1st Dist. App. 2019) ("whether a party seeking to enforce an arbitration agreement actually entered into that agreement is one for the trial court, regardless of a delegation clause."); *see also UATP Mgt., LLC v. Barnes*, 2D20-1301, 2021 WL 1431617 (Fla. 2d Dist. App. Apr. 16, 2021); *CT Miami, LLC v. Samsung Elecs. Latinoamerica Miami, Inc*., 201 So. 3d 85, 93 (Fla. 3d DCA 2015) ("[W]e hold that challenges to either party's agreement to the contract in the first instance are exclusively to be determined by the trial court and that, when raised, such challenges must be decided by the trial court before arbitration can be compelled." (emphasis added).

A valid arbitration or delegation clause does not exist here because the Lease Agreement superseded the RLO, and Florida's parol evidence rule precludes consideration of it. Ally drafted the Lease Agreement to include a conspicuous merger clause. The merger clause states:

> **THIS IS THE ENTIRE AGREEMENT. This lease contains the entire agreement between you and us relating to the lease of the vehicle. Any changes to this lease must be in writing and we must sign it. No oral changes are binding.**

**Exhibit B** to Def's Declaration, Dkt. No. 9-1 at Page 5 (emphasis in original).

Florida contract law provides that "[t]he purpose of a merger clause is 'to affirm the parties' intent to have the parol evidence rule applied to their contract.'" *Duval Motors Co.*, 73 So. 3d at 265 citing *Centennial Mortg., Inc. v. SG/SC, Ltd.*, 772 So. 2d 564, 565 (Fla. 1st DCA 2000). "A merger or integration clause is '[a] contractual provision stating that the contract represents the parties' complete and final agreement and supersedes all informal understandings and oral agreements relating to the subject matter of the contract.'" *Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 53 n.1 (Fla. Dist. Ct. App. 2005), citing Black's Law Dictionary, 813 (7th ed. 1999). "A merger clause is a highly persuasive statement that the parties intended the agreement to be totally integrated and generally works to prevent a party from introducing parol evidence to vary or contradict the written terms." *Id.* at 53.

As shown above, there is no question that the Lease Agreement contains a merger clause. The Lease Agreement is therefore a "totally integrated" document that makes no mention of an arbitration or delegation clause. *Duval Motors Co. v. Rogers*, 73 So. 3d 261, 269 (Fla. 1st Dist. App. 2011). And because the Lease Agreement is a totally integrated document, it superseded the RLO, including the arbitration and delegation clause contained within it. *See Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 53 n.1 (Fla. Dist. Ct. App. 2005).

Despite the Lease Agreement being a totally integrated contract, Ally has attempted to introduce extraneous evidence to add an arbitration and delegation clause to that agreement. Florida's parol evidence rule prohibits its introduction "to contradict, vary, defeat, or modify a complete and unambiguous written instrument, or to change, add to, or subtract form it, or affect its construction.'" *Duval Motors Co.*, 73 So. 3d at 265. Parol evidence includes "a verbal agreement or other extrinsic evidence where such agreement was made before or at the time of the instrument in question." *Id. quoting* J.M. Montgomery Roofing Co. v. Fred Howland, Inc., 98 So.2d 484, 485 (Fla.1957).

Further, Florida contract law dictates that "[a]ll the various provisions of a contract must be so construed … as to give effect to each." *City of Homestead v. Johnson*, 760 So.2d 80, 84 (Fla.,2000) (quoting *Paddock v. Bay Concrete Indus., Inc.*, 154 So.2d 313, 315 (Fla. 2d DCA 1963)). "In construing a contract, the court should consider its plain language and take care not to give the contract any meaning beyond that expressed." *Walker v. State Farm Fire & Cas. Co.*, 758 So.2d 1161, 1162 (Fla.App. 4 Dist.,2000) (quoting *Walgreen Co. v. Habitat Dev. Corp.*, 655 So.2d 164, 165 (Fla. 3d DCA 1995).

Ally chose to draft the Lease Agreement with a merger clause. In turn, the Lease Agreement controls the issue of arbitration. Ally cannot have it both ways, in choosing not to include an arbitration clause in the Lease Agreement while

incorporating a merger clause, and then seek to apply a *separate* agreement – to which they are not a party – to Cavinato and defeat his claims here.

A Florida court addressed legal issues concerning arbitration that are nearly identical to the issues pertinent to the instant case in *Duval Motors Co.*, 73 So. 3d 261 (Fla. Dist. Ct. App. 2011). In *Duval Motors Co.*, the District Court of Appeals affirmed a trial court's decision to deny Duval's motion to compel arbitration on the grounds that "the merger clause indicating that the [Retail Installment Sales Contract] constitutes the entire agreement between the parties related to the contract governing the vehicle purchase." *Id*. at 269. The consumer had executed a Retail Buyer's Order ("RBO") and a Retail Installment Sales Contract ("RISC") on the same day. *Id*. at 264. The RBO contained the arbitration agreement, while the RISC did not. *Id*. The court reasoned that because the "RISC's merger clause does not specifically mention prior written agreements, but it explicitly provides that 'this contract' is the 'entire agreement' between the parties … [i]t is immaterial whether any prior representations sought to be excluded are oral or written; anything that does not constitute part of 'this contract' is not part of the parties' agreement related to the contract." *Id*. at 266.

Here, the Lease Agreement has a merger clause that is strikingly similar to the merger clause relied on in *Duval Motors*. As a result, Florida law dictates a finding that the Lease Agreement superseded the RLO, and further, Florida's parol evidence

rule precludes consideration of the RLO to vary, modify, or contradict the Lease Agreement.

Moreover, the parol evidence rule precludes consideration of the RLO because the Lease Agreement, which is the controlling agreement, did not expressly incorporate the RLO. The important inquiry here is whether the Lease Agreement expressly incorporated the RLO, not the other way around. *Duval Motors Co. v. Rogers*, 73 So. 3d 261, 269 (Fla. 1st Dist. App. 2011). The Lease Agreement makes no mention of the RLO, much less the arbitration or delegation clause. As a result, the RLO was superseded by the Lease Agreement and is irrelevant to the disputes arising out of the transaction at issue. *Duval Motors Co. v. Rogers*, 73 So. 3d 261, 269 (Fla. 1st Dist. App. 2011). Another Florida appellate court held similarly to *Duval Motors* and affirmed the trial court's denial of a motion to compel arbitration, concluding that when the plaintiffs signed a RISC, which contained the merger clause, a new contract was formed. *HHH Motors, LLP v. Holt*, 152 So. 3d 745, 747 (Fla. Dist. Ct. App. 2014).  This meant that the RISC, which did not have an arbitration clause, superseded a separate agreement, which did. *Id.* And because the RISC appeared facially complete, no parol evidence could be considered to address alleged ambiguities.  *Id.*

In arguing that Plaintiff's claims are to be compelled to arbitration, Ally relies principally on *Scherer v. Hyundai Cap. Am., Inc.*, 2022 WL 17488420 (S.D. Fla.

Nov. 22, 2022) *report and recommendation accepted by* Order Adopting and Approving Report and Recommendation of Magistrate Judge; Granting Defendant's Motion to Compel Arbitration, [Dkt 27], December 7, 2022 (adopting magistrate judge's report following no objection and district court agreeing with analysis and conclusions) (attached as **<u>Exhibit C</u>** to Dkt. No. 9). The *Scherer* case involved some facts and questions of law similar to this case, but the Florida Motor Vehicle Lease Agreement in *Scherer*, which served the same purpose as Ally's SmartLease in the instant case, *did not contain a merger clause*.

Relying on *Scherer* to decide this case would ignore basic principles of contract law that control this dispute. The district court in *Scherer* did not analyze the parol evidence rule in its opinion. Here, unlike in *Scherer*, Cavinato argues that the Lease Agreement includes a merger clause but no arbitration clause. The merger clause thus memorialized the parties' intent to apply the parol evidence rule to Lease Agreement. Therefore, the parol evidence rule, which prohibits extraneous evidence from varying fully integrated contracts, bars reliance on the RLO's arbitration and delegation clause.

Cavinato's claims arise solely from the Lease Agreement with Ally, and that Lease Agreement contains this merger clause that prevents the introduction of external documents into consideration. However, this Court is precluded from considering the RLO in tandem with the Lease Agreement under the parol evidence

rule. *Id*. Because the Lease Agreement – the only document that is relevant to this dispute – does not contain an arbitration or delegation clause there is no valid agreement to arbitrate or delegate the dispute.

In sum, "a court is powerless to rewrite [a] contract to make it more reasonable or advantageous for one of the contracting parties." *Emerg. Associates of Tampa, P.A. v. Sassano*, 664 So. 2d 1000, 1003 (Fla. 2d Dist. App. 1995). The Court should therefore hold Ally to "the language of its own concurrently-signed documents[,]" which does not contain an arbitration or delegation clause. *HHH Motors, LLP v. Holt*, 152 So. 3d 745, 748 (Fla. 1st Dist. App. 2014); *see Basulto v. Hialeah Automotive*, 141 So.3d 1145 (Fla.2014) (affirming trial court's finding that there were issues regarding the making of the agreement, so it was proper to deny the motion to compel). If Ally wanted consumers like Cavinato to be bound by an arbitration or delegation clause, it could have included it in the Lease Agreement, but it chose not to. Therefore, the Court should deny the motion to compel in its entirety.

**E.   Ally's Arguments on Estoppel Regarding the Delegation or Arbitration Clauses are based on Documents that Cannot be Considered by the Court**

Under Florida's doctrine of equitable estoppel, a defendant who is a non-signatory to an agreement containing an arbitration clause can force arbitration of a signatory's claims only when "the signatory ... must rely on the terms of the written

agreement in asserting its claims against the nonsignatory...." *Kroma Makeup*, 845 F.3d at 1354 quoting *Allscripts Healthcare*, 158 So.3d at 646. Ally relies upon the RLO for its equitable estoppel argument, but Cavinato does not rely upon the RLO for his claims against Ally.

To the extent Ally's argument attempts to invoke Florida's "second exception" to a non-signatory forcing arbitration on a signatory of an agreement containing an arbitration clause, e.g. "when the signatory alleges 'interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract,'" that argument was flatly rejected by the Eleventh Circuit in *Schreiber v. Ally Financial Inc*., 634 Fed.Appx. 263, 264-265 (11th Cir. (Fla.) 2015). In the same context and involving the same defendant, the Eleventh Circuit held:

> Ally has also failed to demonstrate that equitable estoppel is warranted under the second exception. We have said that the second exception is not implicated when a plaintiff alleges no interdependent and concerted misconduct between a signatory and a non-signatory to the contract and when the plaintiff names no signatory as a defendant.

*Schreiber,* 634 Fed. Appx. at 265. Therefore, Ally's arguments with respect to the language in the RLO regarding estoppel and delegation are irrelevant and should be rejected in their entirety.

### F.    Ally's Motion to Strike Class Allegations is Premature

Ally further requests that the Court strike Cavinato's class allegations. This argument is also grounded in language found in the RLO. For the reasons stated

above, the RLO does not apply to this dispute. Granting Ally's motion to strike class allegations would be premature; Ally's argument that the class may not be certified depends upon the validity of the arbitration agreement. *See* Dkt. No. 9 at pp. 17-18; *see also Chapman v. General Motors LLC*, 531 F.Supp.3d 1257, 1306 (E.D. Mich. 2021) (find that when "construing the facts in Plaintiffs' favor, it is not a foregone conclusion that they will be unable to meet class certification requirements after discover."); *see also Francis v. General Motors, LLC*, 504 F.Supp.3d 659, 694 (E.D. Mich. 2020) (finding that it was procedurally premature to rule on class issues during the motion to dismiss stage). The arbitration agreement is not valid; thus, the request to strike class allegations is, at best, premature.

## V.   CONCLUSION

This case requires a simple review of Ally's Lease Agreement under basic Florida contract law and the terms contained therein. Ally drafted this agreement and chose to include a merger clause in it, demonstrating its intent to be bound by the terms of the Lease Agreement and only those terms. Ally bases the entirety of its Motion on terms found in a document to which it is not a party and that its document does not address. Cavinato urges the Court to ignore Ally's diversion and decide this Motion on the terms of the only contract at issue: Ally's Lease Agreement.

Respectfully submitted,

Dated: March 10, 2023                     By: /s/ Perrin Rynders
                                          Perrin Rynders (P38221)
                                          Jailah D. Emerson (P84550)
                                          Varnum LLP
                                          Co-Counsel for Plaintiff
                                          480 Pierce Street, Suite 300
                                          Birmingham, MI 48009
                                          (248) 567-7800
                                          prynders@varnumlaw.com
                                          jdemerson@varnumlaw.com

                                          James L. Kauffman (#12915)
                                          Bailey & Glasser, LLP
                                          Co-Counsel for Plaintiff
                                          1055 Thomas Jefferson St. NW,
                                          Washington, DC 20007
                                          (202) 463-2105
                                          jkauffman@baileyglasser.com

                                          Joshua Feygin (#124685)
                                          Co-Counsel for Plaintiff
                                          1930 Harrison Street, Suite 208
                                          Hollywood, FL 33020
                                          (954) 228-5674
                                          josh@jfeyginesq.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 10, 2023, a true and correct copy of the foregoing *Plaintiff's Opposition to Defendant's Motion to Compel Arbitration, to Dismiss the Case Pursuant to Fed. R. Civ. P. 12(b)(1), and to Strike Class Allegations* was served via CM/ECF and e-mail to the following:

James L. Kauffman (#12915)
Bailey & Glasser, LLP
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
(202) 463-2105
jkauffman@baileyglasser.com

*Co-Counsel for Plaintiff*

Joshua Feygin (#124685)
Co-Counsel for Plaintiff
1930 Harrison Street, Suite 208
Hollywood, FL 33020
(954) 228-5674
josh@jfeyginesq.com

*Co-Counsel for Plaintiff*

Kendra L. Huff (P69808)
Lyndsey A. Stultz (#687958)
Robert J. McGahan (#446707)
Nelson Mullins Riley & Scarborough LLP
949 Third Avenue, Suite 200
Huntington, WV 25701
(304) 526-3505
kendra.huff@nelsonmullins.com

lyndsey.stultz@nelsonmullins.com
robert.mcgahan@nelsonmullins.com

*Attorneys for Defendant*

                                        **VARNUM LLP**
                                        Attorneys for Plaintiff

                                        By: */s/*  Perrin Rynders
                                              Perrin Rynders (P38221)
                                              Jailah D. Emerson (P84550)
                                              Varnum LLP
                                              Co-Counsel for Plaintiff
                                              480 Pierce Street, Suite 300
                                              Birmingham, MI 48009
                                              (248) 567-7800
                                              prynders@varnumlaw.com
                                              jdemerson@varnumlaw.com