UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Stefano Cavinato

    Plaintiffs,                                  Case No. 23-10054

v.                                                 Hon. Jonathan J.C. Grey

Ally Financial Inc.

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DENYING DEFENDANT'S MOTION TO DISMISS CASE AND TO STRIKE CLASS ALLEGATIONS (ECF No. 9)**

**I.    Introduction**

Stefano Cavinato filed a class action complaint against Ally Financial Inc. ("Ally") under the Consumer Leasing Act (CLA), 15 U.S.C.A. §§ 1667–1667f, for charging undisclosed fees after Cavinato purchased a car through a lease agreement. (ECF No. 1.) Ally filed a motion to compel arbitration, to dismiss, and to strike class allegations (ECF No. 9) because it claims that Cavinato agreed to arbitrate this dispute by signing a retail lease order (RLO) with an arbitration clause. Ally claims the RLO contained a "delegation clause," or an agreement to

1

arbitrate over whether the dispute was subject to arbitration. (ECF No. 9.) Cavinato argues that under Florida law, the merger clause in the lease supersedes the arbitration agreement. (ECF No. 15.) Next, Cavinato argues that Florida law does not allow Ally to enforce the contract as a non-signatory under these circumstances. (*Id.*) Both parties agree that Florida substantive law applies to contract disputes. (ECF Nos. 9, 15.)

The Court held a hearing on Ally's motion on July 20, 2023. The parties both presented arguments and clarified some of the factual matters.

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Ally's motion.

**II. Background**

On November 23, 2018, Cavinato entered a lease agreement with Rick Case Alfa Romeo Fiat Maserati ("dealership") for a new vehicle. (ECF No. 1.) Cavinato signed a lease agreement and an RLO with the dealership. The lease was later assigned to Ally. (*Id.*) The lease agreement included a purchase option at the end of the lease. (*Id.*) At the end of the lease term, Cavinato exercised the purchase option and

2

purchased the vehicle. (*Id.*) Cavinato alleges that the dealership charged him more than the lease agreement allowed, so he brought this action against Ally under the CLA. (*Id.*)

Ally moved to dismiss this action and to compel arbitration pursuant to an arbitration agreement in the RLO. (ECF No. 9.) At the hearing, the parties agreed that the RLO was never assigned to Ally. However, Ally argues that the delegation clause requires that the arbitrator determine if this dispute is arbitrable. (*Id.*) In the alternative, Ally argues that it can enforce the arbitration clause as a non-signatory under the doctrine of estoppel. (*Id.*) The lease agreement, which was assigned to Ally, does not contain an arbitration clause. (*See* ECF No. 9-1.)

The RLO contains the following language regarding the arbitration clause:

> EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION . . . Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors, or assigns, which arise out of or relates to your credit application, purchase or condition of this Vehicle, this

3

> Order and Agreement or any resulting transaction or relationship (including such relationship with third parties who do not sign this Order and Agreement) shall, at your or our election, be resolved by neutral, binding arbitration.

(ECF No. 9-1, PageID.59.)

### III. Discussion

A motion to compel arbitration is reviewed under a standard like the one used for summary judgment. *See Great Earth Co. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). That is, the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. *Id.* All facts and inferences are viewed in the light most favorable to the opposing party to determine whether a reasonable factfinder could conclude that no valid agreement exists. *Id.*

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, governs the applicability of arbitration agreements. The FAA states, "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2. As evidenced by the language in

4

the FAA, arbitration is a matter of contract. *Rent-A-Center, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). The question of who decides arbitrability is also one of contract. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). Thus, under the FAA, the parties may agree that an arbitrator will decide threshold questions of arbitrability along with the merits. This type of agreement is otherwise known as a delegation clause. *Id.*

However, before referring a dispute to an arbitrator, the court must determine that a valid arbitration agreement exists. *In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377, 380 (6th Cir. 2020). This is because arbitration is a matter of "contract, not coercion." *Id.* at 382. (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989)).

Courts should order arbitration unless (1) the formation of the arbitration agreement is contested, or (2) absent a valid provision specifically committing such disputes to an arbitrator, the agreement's enforceability or applicability is contested. *Id.* at 382–83. If one or both are contested, the court must resolve the disagreement. *Id.* However, if a

5

valid agreement exists and the agreement contains a delegation clause, a court cannot decide the arbitrability issues. *Id.* at 380 (citing *Henry Schein*, 139 S. Ct. at 530).

A challenge to the formation or existence of a contract is always a question for the courts. *Id.* (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300 (2010)). And courts look to state-law principles to determine if an agreement exists. *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 881 (6th Cir. 2021). However, a challenge to a non-signatory's ability to enforce a delegation clause falls into the category of enforceability, not formation. *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 356 (6th Cir. 2022); *but see In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377 (6th Cir. 2020) (finding a delegation clause did not apply to the parties' dispute despite the uncontested existence of a contract between the parties with a delegation clause incorporated by reference). The question of enforceability may be delegated to an arbitrator in a valid delegation clause. *Becker*, 39 F.4th at 356.

A delegation clause is severable from the rest of the agreement. *Rent-A-Center*, 561 U.S. at 72. So, a party challenging the delegation

6

clause must bring specific challenges to that clause. *Id.* That is, the challenge must apply directly to the delegation clause, and not *just* to the entire contract. *Id.* ("unless [plaintiff] challenged the delegation provision, we must treat it as valid . . . [and leave] any challenge to the validity of the Agreement as a whole for the arbitrator."). Sometimes the challenges to a delegation clause and the contract will be the same. *Id.* at 73–74; *Swiger v. Rosette*, 989 F.3d 501, 506 (6th Cir. 2021). However, merely stating that a challenge exists to both is not enough. *Becker*, 39 F.4th at 356. The challenger must show that the basis of the challenge is directed to the delegation clause. *Id.* (citing *In re StockX*, 19 F.4th at 886).

In this case, Cavinato must show that his challenge of non-signatory enforcement applies directly to the delegation clause. Cavinato does in fact claim that the non-signatory challenge directly invalidates the delegation clause. (ECF No. 15, PageID.96.) But the Sixth Circuit already addressed this issue and determined that challenges to non-signatory enforcement are to the contract as a whole and cannot be challenges to the delegation clause alone. *Becker*, 39 F.4th at 356. Therefore, the issue of non-signatory enforceability is an issue for the

7

arbitrator to decide. *Id.*; *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 952 (E.D. Mich. 2022) (collecting cases).

This outcome may lead to the absurd result of a parties forced to arbitrate with someone they did not actually agree to arbitrate claims with simply because they signed *an arbitration agreement* with any person or entity. Application of this rule allows anyone to force arbitration of the threshold issue of arbitrability for a person who signed any arbitration agreement, no matter how frivolous the argument for arbitration is. *See Blanton*, 962 F.3d at 851. However, the Court cannot consider whether a motion to compel arbitration is frivolous when determining these motions. *Id.* (citing *Henry Schein*, 139 S. Ct. at 531.) Additionally, the Sixth Circuit found that this concern is minimal since an arbitrator can quickly resolve frivolous[1] motions. *Id.* at 851–52 (citing *Henry Schein*, 139 S. Ct. at 531).

Cavinato argues that there is no agreement to arbitrate with Ally

---

[1] For the reasons stated in this order, the Court is not deciding the merits of whether a non-signatory can enforce the arbitration agreement here. The Court notes that the motion is likely not frivolous as both parties have made reasoned arguments and provided Eleventh Circuit and Florida caselaw supporting their respective positions. (*See* ECF Nos. 9, 15.)

8

in the first place since neither of them signed an agreement with each other containing an arbitration clause. However, the Sixth Circuit has defined this type of challenge as one to the enforceability of the contract and not to the existence of an agreement. *Becker*, 39 F.4th at 356. The Supreme Court also has indicated that this challenge is one of enforcement. *See Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 632 ("we need not decide here whether the relevant state contract law recognizes equitable estoppel as a ground for enforcing contracts against third parties"). As Ally has shown, Cavinato did sign an arbitration agreement with the dealership, a fact Cavinato does not dispute. (*See* ECF No. 9-1, PageID.59.) Thus, a delegation agreement exists.

Again, the Court's decision here is not about the merits, this is about the threshold issue of who decides the scope of the agreement to arbitrate. *See Blanton*, 962 F.3d at 852. Under the law of this circuit, in these circumstances, **the arbitrator decides**. *Becker*, 39 F.4th at 356.

The FAA requires a court to stay the case pending arbitration rather than to dismiss the case. *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 942 (6th Cir. 2021) (citing 9 U.S.C. § 3). The

9

Sixth Circuit has reserved the question of whether a district court can ever dismiss a suit based on an arbitration agreement. *Id.* at 942–43. It indicated that some circumstances might allow for dismissal, including possibilities like when both parties request dismissal or when all of the issues are arbitrable. *Id.*

Ally moved to dismiss the case. The Court finds that the limited circumstances that might allow for dismissal do not apply here. It is unclear whether the arbitrator will decide the threshold issue in favor of Cavinato or Ally. As stated, the Court will not address this motion on the merits but notes that Cavinato made persuasive arguments regarding non-signatory enforcement and equitable estoppel based on Florida law.

Cavinato claims that, under Florida law, the merger clause in the lease agreement it signed with the dealership and was later reassigned to Ally supersedes any previous agreement. (ECF No. 15 (citing *Duval Motors Co. v. Rogers*, 73 So. 3d 261, 265 (Fla. 1st Dist. App. 2011) and *HHH Motors, LLP v. Holt*, 152 So. 3d 745, 747 (Fla. Dist. Ct. App. 2014)).) Further, Cavinato argues that estoppel does not apply under Florida law since he is not "relying" on the RLO for its claims against Ally. (*Id.* (citing

10

*Schreiber v. Ally Fin. Inc.*, 634 F. App'x 263, 265 (11th Cir. 2015)).) The Court finds these arguments persuasive, making it unclear whether all of the issues are arbitrable. The arbitrator could agree with Cavinato's arguments. Thus, it is premature to dismiss the case on the basis that all claims are arbitrable since that issue has not been determined yet.

Given that the Court is not dismissing the case and that it is not a foregone conclusion that the arbitrator will decide that Cavinato agreed to arbitrate this dispute, Ally's motion to strike class allegations is also premature.

## V. CONCLUSION

Accordingly, and for the reasons set forth above, Ally's motion (ECF No. 9) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS ORDERED** that the motion to compel arbitration is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion to dismiss is **DENIED.**

**IT IS FURTHER ORDERED** that the motion to strike class allegations is **DENIED**.

11

**IT IS FURTHER ORDERED** that the case is **STAYED** pending arbitration.

**IT IS SO ORDERED.**

September 29, 2023                    s/Jonathan J.C. Grey
                                                        JONATHAN J.C. GREY
                                                        UNITED STATES DISTRICT JUDGE

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 29, 2023.

                    s/ S. Osorio
                    Sandra Osorio
                    Case Manager