## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

STEFANO CAVINATO,
individually, and on behalf of all
others similarly situated

      Plaintiff,                            CASE NO. 2:23-CV-10054-JJCG

v.

ALLY FINANCIAL INC.,

      Defendant.

_____

## DEFENDANT'S BRIEF IN SUPPORT OF ITS RENEWED
## MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE
## <u>PURSUANT TO FED. R. CIV. P. 12(b)(1)</u>

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... ii

I.     INTRODUCTION ........................................................................... 1

II.    FACTUAL ALLEGATIONS ............................................................. 3

III.   PROCEDURAL HISTORY ............................................................. 6

IV.    RELEVANT LEGAL STANDARD .................................................. 8

V.     ARGUMENT ................................................................................. 10

       A.    The Coinbase Decision is Distinguishable and Does Not
             Change the Conclusion that the Delegation Clause Requires the
             Matter be Referred to the Arbitrator .................................... 11

       B.    The Arbitration Clause's Delegation Provision Requires This
             Case Be Referred to Arbitration For a Determination of
             Arbitrability. ......................................................................... 17

       C.    Alternatively, This Court Should Refer This Case to Arbitration
             and Dismiss This Action Because Plaintiff Is Estopped From
             Denying His Intent to Arbitrate Claims Related to His Lease. ........... 19

             1.    Plaintiff Agreed to Arbitrate Any Disputes Related to the
                   Lease Contract and Ally May Enforce That Agreement
                   Under the Doctrine of Estoppel .................................. 20

             2.    Because the Claim Is Arbitrable, This Court Should
                   Dismiss This Case ...................................................... 24

VI.    CONCLUSION ............................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Express Co. v. Italian Colors Restaurant*,
   570 U.S. 228 (2013)...................................................................................24

*Baxter v. Miscavige*,
   No. 8:22-cv-986-TPB-JSS, 2024 WL 3597120 (M.D. Fla. July 31,
   2024) .......................................................................................................14

*Becker v. Delek US Energy, Inc.*,
   39 F. 4th 351 (6th Cir. 2022) .................................................................8, 18

*Bernardoni v. FCA US LLC*,
   Case No. 23-12881, 2024 WL 3103316 (E.D. Mich. Jun. 20, 2024)............9, 18

*Blanton v. Domino's Pizza Franchising LLC*,
   962 F.3d 842 (6th Cir. 2020) ...................................................................18

*Boehm v. VW Credit, Inc.*,
   Case No. 8:21CV406, 2022 WL 159285 (D. Neb. Jan. 18, 2022)....................24

*Brown v. Sklar-Markind*,
   Civil Action No. 14-0266, 2014 WL 5803135 (W.D. Pa. Nov. 7,
   2014) .......................................................................................................15

*Cavinato v. Ally Financial Inc.*,
   Case No. 23-10054, 2023 WL 11915772 (E.D. Mich. Sept. 29,
   2023) (ECF 20) .........................................................................................1

*Coinbase v. Suski, Inc.*
   144 S. Ct. 1186 (2024)...................................................................*passim*

*Garcia v. Harmony Healthcare, LLC*,
   Case No. 8:20-cv-1065-WFJ-AAS, 2021 WL 1610093, at *5
   (M.D. Fla. Apr. 26, 2021) ........................................................................15

*Global Gen. Grp., LLC v. Mazzola*,
   Case No. 13-cv-14979, 2014 WL 2895445 (E.D. Mich. June 26,
   2014) .......................................................................................................23

*Harrison v. Gen. Motors*, LLC,
    651 F.Supp. 3d 878 (E.D. Mich. 2023) ....................................................9, 18, 24

*Jonna v. Latinum, et al.*,
    No. 22-10208, 2024 WL 3029505 (E.D. Mich. June 17, 2024).........................8

*Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*,
    845 F.3d 1351 (11th Cir. 2017) ..........................................................................10

*LoMonico v. Foulke Mgmt. Corp.*,
    Civil No. 18-11511, 2020 WL 831134 (D.N.J. Feb. 20, 2020).........................24

*Lowe v. Nissan of Brandon*,
    235 So.3d 1021 ..................................................................................................16

*Mayton v. Tempoe, LCC*,
    Civil Action No. SA-17-CV-179-XR, 2017 WL 2484849 (W.D.
    Tex. June 7, 2017)...............................................................................................24

*Memmer v. United Wholesale Mortg.*,
    Case No. 23-cv-10921, 2024 WL 187697 (E.D. Mich. Jan. 16,
    2024) ...................................................................................................................24

*Estate of Moncrief*,
    Nos. 02-23-00021-CV and 02-23-00058-CV, -- S.W.3d --, 2024
    WL 3611453 (Tex.Ct.App.—Fort Worth, Aug. 1, 2024)...................................14

*Nestle Waters N. Am., Inc. v. Bollman*,
    505 F.3d 498 (6th Cir. 2007.........................................................................9, 15

*Pro. Consultation Servs. Inc. v. Schaefer & Strohminger Inc.*,
    412 F. App'x 822 (6th Cir. 2011).......................................................................10

*Richmond Health Facilities v. Nichols*,
    811 F.3d 192 (6th Cir. 2016) ...............................................................................8

*Robinson v. Hyundai Capital America, Inc.*,
    Case No. 22-61234-CV-KMW (S.D. Fla. Aug. 12, 2024) ..........................*passim*

*Ron v. Parrado*,
    359 So.3d 831 (Fla. 3d DCA 2023)....................................................................16

*Ross v. Subcontracting Concepts, LLC,*
  Civil No. 20-12994, 2021 WL 6072593 (E.D. Mich. Dec. 23,
  2021) ..................................................................................................22

*Rowe v. JP Morgan Chase Bank, NA,*
  Case No. 2:23-cv-1704, 2024 WL 47704 (S.D. Ohio Jan. 4, 2024) .................25

*Scherer v. Hyundai Capital America, Inc.,*
  Case No. 22-cv-61014, 2022 WL 17488420 (S.D. Fla. Nov. 22,
  2022), *report and recommendation adopted* 2022 WL 17486330,
  (S.D. Fla. Dec. 7, 2022) .................................................................*passim*

*Shehadeh v. Horizon Pharma USA, Inc.,*
  No. 20 Civ. 8107, 2021 WL 4176254 (S.D.N.Y. Sept. 14, 2021)....................17

*Southerland v. Corp. Transit of Am.,*
  No. 13-14462, 2014 WL 4906891 (E.D. Mich. Sept. 30, 2014)
  ..........................................................................................8, 10, 22, 23

*Storz, Trustee of I. Shane Storz Trust v. Southern Airways Corp.,*
  No. 4:23-cv-1496-SEP, 2024 WL 3652919 (E.D. Mo. Aug. 5,
  2024) ..................................................................................................13

*Swartz v. Next Net Media LLC,*
  Case No. 24-cv-10018, 2024 WL 3236709 (E.D. Mich. Jun. 28,
  2024) ....................................................................................................9

*Swiger v. Rosette,*
  989 F.3d 501 (6th Cir. 2021) .......................................................8, 18

*Tillman Transpo, LLC v. MI Business Inc.,*
  Case No. 23-10197, 2023 WL 4875872 (E.D. Mich. July 31, 2023)................25

*Walker v. Hyundai Capital America, Inc.,*
  Case No. CV417-045, 2018 WL 1352173 (S.D. Ga. Mar. 15, 2018) ...............17

**Statutes**

9 U.S.C. § 1 ...............................................................................................8

15 U.S.C. § 1677, *et seq*...........................................................................2

**Other Authorities**

12 C.F.R. § 213, *et seq.*.............................................................................2

Fed. R. Civ. 12(b)(1).................................................................................1

Defendant Ally Financial, Inc. ("Ally") hereby submits this brief in Support of its Renewed Motion to Compel Arbitration and to Dismiss the Case pursuant to Fed. R. Civ. 12(b)(1).[1]

## I.    INTRODUCTION

In its prior order, this Court has already determined that this case must be sent to arbitration. *Cavinato v. Ally Financial Inc.*, Case No. 23-10054, 2023 WL 11915772 (E.D. Mich. Sept. 29, 2023) (ECF 20).  That decision was correct and no factual or legal developments since then change that determination. The Supreme Court's opinion in *Coinbase v. Suski, Inc.* 144 S. Ct. 1186 (2024), does not apply to the facts present here as there is no conflict between the two relevant agreements the Plaintiff executed. *Coinbase* involved two contracts that, under California law, contained contrary provisions that could not be reconciled.  Here, there is no such contradiction as federal courts in Florida applying Florida law have held in nearly identical cases. *See Robinson v. Hyundai Capital America, Inc.,* Case No. 22-61234-CV-KMW (S.D. Fla. Aug. 12, 2024) (rejecting claim that "merger clause" in lease agreement invalidated prior arbitration agreement) (opinion attached as Exhibit 1);

---

[1] This Motion reiterates all the arguments and authorities set forth in the initial Motion to Compel Arbitration (ECF No. 9) that the Court granted (ECF No. 20), but addresses further why the U.S. Supreme Court's *Coinbase* decision should not change the Court's previous conclusion and includes additional authorities in support.  Once it is recognized that *Coinbase* does not apply to change the conclusion, the Court's previous analysis should be adopted.  In addition, Defendant hereby reserves its right to move to strike the class allegations in this matter.

1

*Scherer v. Hyundai Capital America, Inc.,* Case No. 22-cv-61014, 2022 WL 17488420 (S.D. Fla. Nov. 22, 2022), *report and recommendation adopted* 2022 WL 17486330, (S.D. Fla. Dec. 7, 2022) (same). The Court should simply affirm its previous correct determination that the delegation clause in the arbitration agreement controls, and refer this matter to arbitration.

As the Court is aware, Plaintiff leased a vehicle from a dealership. As part of that transaction, Plaintiff agreed to arbitrate any and all claims arising from, or related to, his acquisition and lease of the vehicle. Additionally, Plaintiff agreed that any dispute concerning the interpretation and scope of the arbitration provision and the arbitrability of any claim or dispute would be decided by an arbitrator. Plaintiff further agreed to pursue any claims on an individual basis and waived any right to bring claims in a class action.

Instead of bringing his claim in arbitration on an individual basis in Florida as provided for in the leasing documents, Plaintiff brought this putative class action suit in this Court. He alleges that Ally, the finance company that took assignment of the lease he negotiated with the car dealer, violated the Consumer Leasing Act, 15 U.S.C. § 1677, *et seq*. and its implementing regulation, Regulation M, 12 C.F.R. § 213, *et seq*. by failing to disclose that (1) Plaintiff "would be required to purchase the vehicle from the original dealer," not Ally and (2) that "Plaintiff would be required to pay additional fees to the dealer upon purchasing the vehicle." Compl.

¶ 30.  Plaintiff's claim should be sent to the proper forum for this dispute, which is arbitration, as he agreed.

As a preliminary matter, however, the arbitration agreement contains a "delegation clause," which requires that an arbitrator decide any issues relating to arbitrability.  Nothing in the *Coinbase* opinion should change the Court's previous determination that the delegation clause necessitates this matter be referred to the arbitrator.  Accordingly, the Court must refer the matter to arbitration to resolve any "gateway" issues of the arbitrability of Plaintiff's claim against defendant Ally.  But even if the Court were to reverse course and decide it must first resolve the question of arbitrability, this case must still be referred to arbitration. Because Plaintiff's claim falls squarely within the applicable arbitration provision, this case's only destination is to the arbitration forum pursuant to his agreement.

## II.    FACTUAL ALLEGATIONS

On November 23, 2018, Plaintiff, a resident of Florida, executed two documents, a Retail Lease Order ("RLO") and a Lease Agreement, with Case Alfa Romeo to acquire and lease a new 2019 Alfa Romeo Stelvio (the "Vehicle").  *See* Compl. ¶ 13 and copies of the RLO and Lease Agreement attached as Exhibits A and B, respectively, to Exhibit 2, Declaration of Jasper Garrett.  The RLO provided for the delivery by Case Alfa Romeo of the Vehicle to Plaintiff and informed Plaintiff that performance of the RLO depended upon his execution of a separate

3

Lease Agreement with Case Alfa Romeo. *See* Ex. A at 1 ("Should Customer fail to execute a Lease Agreement, this [RLO] shall be deemed terminated by Dealer without further notice."); *see also id.* at 2 ("Dealer agrees to deliver the Vehicle to you on the date the Lease Agreement is signed by dealer and you."). In addition, the dealer's performance under the RLO would be contingent upon the Plaintiff securing financing from a separate creditor. *See id.* at 1. The RLO further made clear that it "shall survive the execution of the Lease Agreement" and that "[t]o the extent any terms herein conflict with the terms of the Lease Agreement (except as to dollar amounts), this Order shall control and govern." *Id.* at 3, ¶ F. Finally, the RLO provided that "This Order is an essential document to any claim by Customer against Dealer in connection with the leasing of the Vehicle." *Id.*

The financial terms for acquiring the Vehicle in the RLO are essentially identical to those contained in the Lease Agreement. For example, the RLO provided that the gross capitalized cost of the Vehicle was $43,946.16; that Plaintiff would be given a credit for a capitalized cost reduction of $4,358.64; and that the amount of the total capitalized cost would be $39,587.52. Exhibit A at 1. These figures were repeated on the Lease Agreement which Plaintiff also signed, and the total capitalized cost of $39,587.52 contained in the RLO was used to calculate Plaintiff's monthly lease payments in the Lease Agreement. *Id.*

4

Both the RLO and Lease Agreement further informed Plaintiff that each contract would be assigned, or would be subject to assignment, following execution. "The Lease Agreement to be entered into between Dealer and Customer . . . shall be immediately assigned by Dealer to a bank/finance company . . . which shall then be the creditor to whom Customer shall be obligated . . . ." Ex. A at 1.   Case Alfa Romeo subsequently assigned the Lease Agreement to Ally and, at that same time, sent the RLO along with the Lease Agreement to Ally as part of the transaction.

The RLO contains an arbitration provision in which Plaintiff agreed to submit any dispute to arbitration instead of to a court and jury trial. *See* Ex. A at 4.  The arbitration provision applies to any claims related to the leasing of the Vehicle, and also delegates to an arbitrator the initial decision to determine the interpretation and scope of that provision.  Specifically, the RLO states:

> Any claim, or dispute, whether in contract,  tort, statute or otherwise *(including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute)*, between you and us  . . . which arises out of or relates to your credit application, purchase or condition of this Vehicle, this Order and Agreement *or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Order and Agreement)* shall, at your or our election, be resolved by neutral binding arbitration and not by a court action.

Ex. A at 4 (emphasis added).

Further, Plaintiff agreed that "If a dispute is arbitrated, you will give up your right to participate as a class representative or class member on any class claim you

may have against us including any right to class arbitration or any consolidation of individual arbitrations." *Id.*

At the conclusion of the lease term, Plaintiff contracted to purchase the Vehicle from Case Alfa Romeo.  Compl. ¶ 20.  According to Plaintiff, Case Alfa Romeo charged him a purchase price and fees that exceeded those permitted in the Lease Agreement. *See id.* at ¶ 21.  Plaintiff does not allege that he ever complained to Ally about Case Alfa Romeo's conduct.  Nor does Plaintiff allege that Ally even knew of the price which Case Alfa Romeo charged, much less that Ally directed, approved, or received any of the allegedly improper price and fees which Plaintiff paid.  Rather, Plaintiff complains about the disclosures originally made to him by Case Alfa Romeo in the Lease Agreement prior to its assignment to defendant Ally.

### III.    PROCEDURAL HISTORY

Ally filed a motion to compel arbitration on February 10, 2023.  (ECF No. 9). Plaintiff responded (ECF No. 15) and Ally then filed a Reply (ECF No. 16).  On September 29, 2023, the Court correctly granted Ally's motion to compel arbitration (ECF No. 20).  In its Order, this Court held:

- "[I]f a valid agreement exists and the agreement contains a delegation clause, a court cannot decide the arbitrability issues." *Id.* at 5-6 (citing *In re Auto. Parts Antitrust Litig.*, 951 F.3d 377, 380

(6th Cir. 2020) and *Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524, 530 (2019)).

- "[A] challenge to a non-signatory's ability to enforce a delegation
  clause falls into the category of enforceability, not formation."
  (ECF No. 20 at 6 (*citing Becker v. Delek US Energy, Inc.*, 39 F. 4th
  351, 356 (6th Cir. 2022))).

- And as to "the threshold issue of who decides the scope of the
  agreement arbitrate … Under the law of this circuit, in these
  circumstances, **the arbitrator decides**." (*Id.* at 9 [emphasis in the
  original], citing *Becker*, 39 F. 4th at 356).

Plaintiff filed a motion for reconsideration (ECF No. 21) to which Ally
responded (ECF No. 23). On August 29, 2024, the Court granted Plaintiff's motion
for reconsideration and denied without prejudice Ally's motion to compel arbitration
based on the Supreme Court's decision in *Coinbase, Inc. v. Suski*, *Inc.*, 144 S. Ct.
1186 (2024), that in the Court's review was "an opinion that clarified the proper
analysis when there are two conflicting contracts regarding arbitration." (ECF No.
24 at 2.) The Court expressly allowed Ally to re-file a motion to compel arbitration.
(*Id.* at 4.)

As noted above, two Florida federal district courts have addressed these same
facts, with the exact same arbitration provision, under Florida law. And both

concluded that the delegation provision in the arbitration clause controlled, and granted the defendant's motion, finding there was no conflict between the two relevant agreements.  Indeed, one case was decided three months after the Supreme Court issued its decision in *Coinbase*.  This Court should do the same.

## IV.   RELEVANT LEGAL STANDARD

The RLO specifically provides that the arbitration provisions applicable here are governed by the Federal Arbitration Act, 9 U.S.C. § 1 ("FAA").  Under the FAA, "[a] written agreement to arbitrate disputes arising out of a transaction in interstate commerce 'shall be valid, irrevocable, and enforceable…".  *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016) (quoting 9 U.S.C. § 2); *Jonna v. Latinum, et al*., No. 22-10208, 2024 WL 3029505, at *2 (E.D. Mich. June 17, 2024).  As a court in this district has recognized, "[T]he FAA was designed to promote arbitration and embodies a national policy favoring arbitration.  . . .  Courts must therefore examine the language of [arbitration agreements] in light of the strong federal policy favoring arbitration."  *Southerland v. Corp. Transit of Am.*, No. 13-14462, 2014 WL 4906891, at *3 (E.D. Mich. Sept. 30, 2014) (internal quotations and citations omitted).

In evaluating a motion to compel arbitration, the Court should first determine whether "gateway" issues of arbitrability have been delegated to an arbitrator. *Becker v. Delek US Energy, Inc*., 39 F. 4th 351, 355 (6th Cir. 2022); *Swiger v. Rosette*, 989

8

F.3d 501, 505 (6th Cir. 2021) ("A valid delegation clause precludes courts from resolving any threshold arbitrability disputes . . . ."); *Harrison v. Gen. Motors*, *LLC,* 651 F.Supp. 3d 878, 886, at \*3 (E.D. Mich. 2023) ("the fact that . . . named plaintiffs did not contract with GM does not bar the Court from delegating questions of arbitrability, including that very issue, to the arbitrator.").  If Plaintiff agreed to delegate issues of arbitrability to an arbitrator, the Court must refer the matter to arbitration and dismiss the case.  *See Bernardoni v. FCA US LLC,* Case No. 23-12881, 2024 WL 3103316, at \*4 (E.D. Mich. Jun. 20, 2024) ("The language of the delegation clause . . . is unconditional . . ." and "plainly delegates to an arbitrator *all* questions about the 'interpretation and scope' of [the] Arbitration Provision . . . .") (emphasis in original); *Swartz v. Next Net Media LLC*, Case No. 24-cv-10018, 2024 WL 3236709 (E.D. Mich. Jun. 28, 2024).

Alternatively, if the Court determines the delegation clause does not apply, it then must: (1) determine whether the parties agreed to arbitrate; (2) determine the scope of arbitration; (3) consider whether Congress intended the subject claim to be non-arbitrable; and (4) whether, if the claims are arbitrable, to stay the action or dismiss it. *See Waters*, 2021 WL 148052, at \*2.  If there is any doubt about the parties' intention to agree to arbitration, the Court must resolve them "in favor of arbitration." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir.  2007).

As this Court and relevant Florida courts[2] have recognized, a non-signatory to an arbitration agreement may enforce that agreement against a signatory under the doctrine of estoppel. *See Robinson*, Case No. 22-61234-CV-KMW at *11-12 ("Accordingly, even if the RLO was not assigned, [lender] is allowed to enforce the Arbitration Provision against Plaintiff through equitable estoppel") (applying Florida law); *Scherer,* 2022 WL 17488420 (applying Florida law); *Southerland,* 2014 WL 4906891 (applying Michigan and New York law); *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.,* 845 F.3d 1351 (11th Cir. 2017) (applying Florida Law).

## V.    **ARGUMENT**

This Court has already determined that it is compelled to enforce the arbitration agreement in the RLO and send Plaintiff's individual claim to arbitration as a "gateway" determination pursuant to the "delegation clause" in the arbitration agreement.  (ECF No. 20.)  That decision was correct under binding precedent, and nothing in the Supreme Court's *Coinbase* opinion changes the analysis.  Plaintiff's

---

[2]  Although the underlying contractual documents do not contain explicit choice of law provisions, both parties agree that Florida law applies to the dispute.  (ECF No. 15 at 12.)  Plaintiff is a Florida resident, the Lease Contract and RLO were executed in Florida, the Vehicle was leased, purchased and garaged in Florida, and Case Alfa Romeo is located in Florida.  *See Pro. Consultation Servs. Inc. v. Schaefer & Strohminger Inc.,* 412 F. App'x 822, 824-25 (6th Cir. 2011).

10

attempts to attack the clear and unmistakable language of the arbitration provision must be, once again, rejected.

But even if the Court believed that it needed to decide the issue of arbitrability pursuant to *Coinbase*, Plaintiff explicitly agreed to arbitrate any disputes relating to the lease, and Plaintiff is equitably estopped from denying his agreement to arbitrate his claim. There can be no question that the subject matter of this suit falls squarely within the scope of the arbitration provision in the RLO. Because the sole claim in the Complaint is subject to arbitration, this Court should compel the matter to arbitration.

A.    <u>The Coinbase Decision is Distinguishable and Does Not Change the Conclusion that the Delegation Clause Requires the Matter be Referred to an Arbitrator</u>

The Supreme Court's decision in *Coinbase* is factually distinguishable from the instant action and does not change the outcome here. In *Coinbase,* decided under California law, there was a <u>*conflict between an arbitration provision and a forum selection clause* in two applicable contracts</u> that simply does not exist here. *Coinbase* concerned two contracts: first, an initial contract – the "User Agreement" – that contained an arbitration provision with a delegation clause; and a second contract – the "Official Rules" for a promotional sweepstakes – that contained a forum selection clause that provided that California courts would "have sole jurisdiction of any controversies regarding the [sweepstakes] promotion." *Coinbase*, 144 S. Ct. at 1189,

1191.  Accordingly, the plaintiff argued that, under California law, there existed a direct and irreconcilable conflict between the forum provisions of the two contracts. If a dispute arose between the parties, it either had to be resolved in arbitration or in the California courts, so the court was left with no choice but a zero-sum determination regarding which contract provision applied.

*Coinbase*'s limited application to cases where there is a clear conflict under applicable state law between two contracts is unmistakable from the language in the opinion:

- "[W]hat happens if parties have multiple agreements that evidence a <u>conflict</u> over the answer to the third-order question of who decides arbitrability?" Syllabus, *id*. at 1189 (emphasis added).

- "This case involves a fourth [question]: What happens if parties have multiple agreements that <u>conflict</u> as to the third-order question of who decides arbitrability?" *Id*. at 1193 (emphasis added).

- "When we home in on the <u>conflict</u> between the delegation clause in the first contract and forum selection clause in the second, the question is whether the parties agreed to send the given dispute to arbitration." *Id*. at 1193 (emphasis added).

- "But, where, as here, parties have agreed to two contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts [i.e. – a <u>conflict</u> between the two]— a court must decide which contract applies." *Id*. at 1194.

This Court, in fact, recognized this limited application when it granted Plaintiff's motion for reconsideration, noting that *Coinbase* was "an opinion that clarified the proper analysis when there are two <u>conflicting</u> contracts regarding

12

arbitration" and later stating *Coinbase* "clarified its existing precedent regarding conflicting contracts between the parties regarding arbitration clauses, namely, where one contract contains a delegation clause and the other explicitly or implicitly sends the arbitrability question to the courts."  (ECF No. 24 at 2, 3.)

This case is factually and legally different.  Here, the RLO and Lease Agreement at issue, properly construed under Florida law, have no such conflict upon which the *Coinbase* decision was premised.  The RLO prescribes arbitration with the delegation clause for the claims alleged.  Ex. A at 4.  The Lease Agreement says nothing regarding forum selection, arbitration, jurisdiction, venue or otherwise. Ex. B. The Lease Agreement creates no conflict or inconsistency with the RLO; rather, it is merely silent.  Thus, there is no conflict and the two agreements are entirely compatible.

As other courts have found post-*Coinbase,* where the provisions of two contracts can co-exist there is no conflict that allows for avoidance of arbitration. *See Storz, Trustee of I. Shane Storz Trust v. Southern Airways Corp*., No. 4:23-cv-1496-SEP, 2024 WL 3652919, at *4, n.1 (E.D. Mo. Aug. 5, 2024) (distinguishing *Coinbase* and granting arbitration motion "[b]ecause the MRR is silent on how the parties must resolve future disputes, it can coexist with the SPA's arbitration provision" and explaining that "[a]s noted above, unlike the second contract in *Coinbase*, the MRR does not require the parties to litigate their disputes in court;

13

therefore the Supreme Court's decision does not vindicate Plaintiffs' argument here"); *Baxter v. Miscavige*, No. 8:22-cv-986-TPB-JSS, 2024 WL 3597120, at *2 (M.D. Fla. July 31, 2024) (denying motion for reconsideration of previous arbitration ruling because "[i]n *Coinbase*, the Supreme Court considered who should decide the issue of arbitrability in the event of two conflicting contracts" and no conflict existed between the "multiple arbitration agreements"); *Estate of Moncrief*, Nos. 02-23-00021-CV and 02-23-00058-CV, -- S.W.3d --, 2024 WL 3611453, at *16 (Tex.Ct.App.—Fort Worth, Aug. 1, 2024) (distinguishing *Coinbase* as there was an initial contract with the arbitration clause and the amendments to that contract "do not address the arbitration clause or dispute resolution" such that the court was "not persuaded that the *Coinbase* decision has any application to this case").

Here, this Court has not, in fact, found that the RLO and Lease Agreement conflict. (ECF No. 24 at 3 ("The Court finds that *Cavinato explicitly argues* that the lease agreement superseded the RLO with the delegation clause" and "[a]s such, *Coinbase may* control this issue") (emphasis added)).  And, for the reasons set forth above and detailed more fully below, there is no basis to do so because the Lease Agreement did *not* supersede or otherwise nullify the RLO.

Plaintiff's contentions attacking the existence of the RLO are unavailing as it was undoubtedly an agreed contract by Plaintiff where there was an offer, acceptance,

and consideration.[3]   Plaintiff cannot dispute that he signed the RLO or mount any other legitimate argument that it was not a binding contract he agreed to as a competent adult. (*See* ECF No. 23 at 5 ["That RLO did not somehow disappear as a result of the SmartLease Agreement and the RLO remains a valid, existing agreement"]).  The RLO explicitly stated that it would "survive the execution of the Lease Agreement" and would encompass claims relating to "any resulting transaction or relationship."  Ex. A at 3, ¶ F.  The RLO and Lease Agreement are entirely consistent, compatible, and integrated documents to be read together as multiple other courts have concluded. *See, e.g.*, *Garcia v. Harmony Healthcare, LLC*, Case No. 8:20-cv-1065-WFJ-AAS, 2021 WL 1610093, at *5 (M.D. Fla. Apr. 26, 2021) ("courts have routinely enforced pre-existing arbitration agreements when a later agreement did not address arbitration" in ordering case to arbitration).[4]

---

[3] "Under Florida law, a valid contract requires an 'offer, acceptance, consideration,' and mutual assent to the essential terms of the agreement."  *Garcia v. Harmony Healthcare, LLC*, 2021 WL 1610093, at *3 (M.D. Fla. Apr. 26, 2021) (internal citations omitted).

[4] In *Nestle Waters North America v. Bollman,* the court of appeals upheld the application of an arbitration provision in an agreement in a dispute involving a separate but related contract.  505 F.3d 498 (6th Cir. 2007).  Finding that the action could not be maintained without reference to the earlier contract or relationship at issue, the court of appeals applied the presumption favoring arbitrability and affirmed the lower court's dismissal of the action finding in favor of a non-signatory defendant who sought to compel arbitration.  *See id.* at 505; *see also Brown v. Sklar-Markind*, , Civil Action No. 14-0266, 2014 WL 5803135, at *13 (W.D. Pa. Nov. 7, 2014) (granting motion of non-signatory defendant to compel arbitration when contract applied to "any resulting transaction or relationship, including that with the dealer, or any result [sic] transaction with third parties who do not sign this contract.").

Indeed, both of the Florida federal district courts that have considered this exact same merger clause argument relating to the exact same RLO and Lease Agreement, under Florida law, have rejected it. *See Robinson v. Hyundai Capital America, Inc.*, No. 22-61234-CV-KMW, at 14 n.4 (Aug. 12, 2024) (exception applies "where the contract with the arbitration clause, such that the latter could be 'interpreted as part of the [former] contract.'" (citing *Lowe v. Nissan of Brandon*, 235 So.3d 1021, 1026 (Fla. 2d DCA 2018[5])); *Scherer v. Hyundai Capital America, Inc.,* Case No. 22-cv-61014, 2022 WL 17488420, at *8 and n.9 (S.D. Fla. Nov. 22, 2022), *report and recommendation adopted* 2022 WL 17486330, (S.D. Fla. Dec. 7, 2022) (plaintiff's arguments went to arbitrability not existence as "[t]here is no dispute that Plaintiff and Dealer entered into the RLO" and "the RLO clearly continued to exist based on the plain language of the RLO").

Moreover, Plaintiff's contention that the "merger clause" caused the Lease Agreement to supersede the RLO (ECF No. 15 at 16-19; No. 21 at 3) rings hollow based on what the subject provision *does not say*. The Lease Agreement "merger" provision never says that the previous agreement is "superseded" or supplanted or replaced or makes any reference to the prior agreement at all. On its face, the provision does not vitiate the previously agreed to RLO and the most natural reading

---

[5] The applicable section of the *Lowe* decision has been cited approvingly by the Florida Court of Appeals in affirming an order to compel arbitration more recently. *See Ron v. Parrado*, 359 So.3d 831, 832 (Fla. 3d DCA 2023).

of the documents is that they should be read together, not in contradiction.  *See, e.g.,*

*Shehadeh v. Horizon Pharma USA, Inc.*, No. 20 Civ. 8107, 2021 WL 4176254, at \*3

(S.D.N.Y. Sept. 14, 2021) (collecting cases) ("merger clause" did not invalidate prior

arbitration agreement and only superseded earlier contract to the extent the

agreements conflicted); *Walker v. Hyundai Capital America, Inc*., Case No. CV417-

045, 2018 WL 1352173, at \*2 (S.D. Ga. Mar. 15, 2018) (rejecting argument that

"merger clause" in a retail sale contract vitiated the arbitration clause in a separate

vehicle purchase agreement).

In summary, *Coinbase* does not change the previous result here.  It is a factually

and legally distinguishable case from the instant matter and does not impact the

correct determination that the Court has already made.

> **B.**    The Arbitration Clause's Delegation Provision Requires This Case Be Referred to Arbitration For a Determination of Arbitrability.

As the Court has already concluded, this matter must be referred to arbitration

pursuant to the provision that Plaintiff agreed to.  In the RLO which Plaintiff executed,

he agreed that "any claim or dispute . . . *[]including the interpretation and scope of*

*this Arbitration Provision, and the arbitrability of any claim or dispute*" would be

resolved by "neutral, binding arbitration and not by a court action."  Ex. A at 4

(emphasis added).  Such language is clear and unmistakable.  As this Court has

acknowledged, the Sixth Circuit has repeatedly made clear that such delegation

provisions must be enforced to require that the question of whether a nonsignatory to

17

an arbitration provision may invoke it, must be decided as a "gateway" issue by an arbitrator.  ECF No. 20 at 7-9; *Swiger*, 989 F.3d 501 at 505;[6] *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 356 (6th Cir. 2022); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 850-51 (6th Cir. 2020).

Other cases confirm this point.  In *Harrison v. General Motors, LLC,* the district court permitted defendant General Motors to invoke an arbitration clause executed by the plaintiff even though it was a nonsignatory to the underlying agreement:

> [W]here a plaintiff has signed a contract with an arbitration provision and a delegation clause and where a non-party to the contract seeks to compel the plaintiff to arbitrate claims that bear some relationship to the contract – the question is *not* whether the plaintiff specifically intended that the non-party could enforce the delegation clause.  . . .  Rather, the sole question is whether the delegation clause clearly and unmistakably delegates questions of arbitrability to the arbitrator.

651 F.Supp.3d 878, 888 (E.D. Mich. 2023) (quoting *Cunningham v. Ford Motor Co.*, No. 21-CV-10781, 2022 WL 2819115, at *4 (E.D. Mich. Jul. 19, 2022) (referring matter to arbitrator to decide gateway issue of arbitrability of claim against a nonsignatory)); *see also Bernadoni*, 2024 WL 3103316, at *4 (rejecting claim that

---

[6] In *Swiger,* a defendant sought to enforce an arbitration clause executed by the plaintiff but to which the defendant was a nonsignatory.  Rejecting the plaintiff's argument that defendant could not enforce the arbitration clause, the Court of Appeals ruled, "whether [defendant] can enforce the arbitration agreement against [plaintiff] presents a question of arbitrability that [plaintiff's] arbitration agreement delegated to an arbitrator."  *Swiger*, 989 F.3d at 507 (citing *Blanton,* 962 F.3d 842).

Plaintiffs had not agreed to arbitrate questions of arbitrability with a non-signatory to contract).

Here, Plaintiff cannot seriously challenge the existence of the arbitration agreement and the validity of its delegation clause. Nor can Plaintiff seriously challenge whether the delegation clause "clearly and unmistakably delegates questions of arbitrability to the arbitrator." The delegation provision in the RLO's arbitration clause states unequivocally that "*the arbitrability of any claim or dispute*" would be resolved by "neutral, binding arbitration and not by a court action." Ex. A at 4 (emphasis added). Accordingly, this Court should refer this matter to arbitration so that an arbitrator can determine arbitrability of the claim presented here.

The arbitration agreement including the delegation clause must be enforced and this matter referred to arbitration for "gateway" determinations of arbitrability. Neither *Coinbase* nor any of Plaintiff's desperate arguments can change the ultimate result that the Court has already assessed and reached.

C.  <u>Alternatively, This Court Should Refer This Case to Arbitration and Dismiss This Action Because Plaintiff Is Estopped From Denying His Intent to Arbitrate Claims Related to His Lease.</u>

But even if this Court determines that it must first resolve whether Plaintiff intended to arbitrate any claims related to his lease of the Vehicle, it should still refer this case to arbitration and dismiss this action. Plaintiff agreed to arbitrate any

19

disputes related to his lease, and the claim under the Consumer Leasing Act advanced by Plaintiff falls squarely within the arbitration clause.

        1.      <u>Plaintiff Agreed to Arbitrate Any Disputes Related to the Lease Contract and Ally May Enforce That Agreement Under the Doctrine of Estoppel</u>

There can be no question that Plaintiff agreed to submit any claims relating to the leasing to arbitration. The Arbitration Provision is clear that it applies to "[a]ny claim or dispute, whether in contract, tort, statute or otherwise . . . which arises out of or relates to your credit application, purchase or condition of this Vehicle, this Order and Agreement or any resulting transaction or relationship . . . ." Ex. A at 4. Here, Plaintiff is challenging the initial disclosures concerning the lease purchase option contained within the Lease Agreement provided to him by Case Alfa Romeo, and which was executed simultaneously with, and a necessary contingent precedent to the fulfillment of, the RLO on November 23, 2018.

As discussed *supra*, *Scherer v. Hyundai Capital America, Inc.,* which involved virtually identical facts and legal issues to the instant litigation, the court granted an auto leasing entity's motion to compel arbitration finding, among other things, that the doctrine of estoppel permitted non-signatory Hyundai to enforce the arbitration agreement. *See id.* at *6.[7] In concluding that the plaintiff would necessarily have to rely on the RLO to advance his claim, the court ruled that "a non-signatory defendant

---

[7] *Scherer* relied on Florida contract law, which is applicable here. *See supra* n.3.

[may] enforce an arbitration clause against a signatory plaintiff . . . when 'the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory" and that the RLO was "an 'essential document' to the claims in this case, a case that involves claims asserted in connection with the leasing of the Vehicle insofar as the claims pertain to a lease-buyout option discussed in the [Lease Agreement]," and observing that the terms of the RLO would control to the extent they conflicted with the Lease Agreement, the court in *Scherer* held that "equitable estoppel allows Defendant to enforce the Arbitration Provision against Plaintiff." *Id.*[8]

More recently, in *Robinson v. Hyundai Capital America, Inc.*, Case No. 22-61234-CV-KMW (S.D. Fla. Aug. 12, 2024), another Florida federal district court involving identical contractual provisions and identical facts applying Florida law reached the exact same conclusion as *Scherer*. The *Robinson* Court held that Hyundai as a non-signatory was entitled to enforce the arbitration agreement under the theory of equitable estoppel. *Id*. at 11-13. The court then went on to state that "[p]ursuant to the Arbitration Provision in the RLO, Plaintiff and the Dealer clearly and

---

[8]  In *Scherer,* defendant Hyundai also argued that the RLO had been assigned to it along with the Lease Agreement. The court accepted that the RLO had been assigned to Hyundai which provided a separate and independent grounds on which to compel arbitration. *Scherer,* 2022 WL 17488420, at *5-6. Ally does not maintain that the RLO was assigned to it. Rather, Ally maintains as argued above that the doctrine of estoppel permits it to enforce the arbitration clause even though it is not a signatory to the RLO.

unmistakably agreed to delegate all issues regarding arbitrability to an arbitrator." *Id*. at 13.

Moreover, the courts in *Robinson* and *Scherer* also rejected the exact argument Plaintiff makes here, namely, that a merger clause in the Lease Agreement somehow completely nullifies the RLO.   Rather, any merger clause argument yields to an exception under Florida law "where the contract with the arbitration clause incorporates by reference the contract which does not contain an arbitration clause, such that the latter could be 'interpreted as part of the [former] contract.'" (*Id*. at 14, n.4 (quoting *Lowe v. Nissan of Brandon, Inc*., 235 So.3d 1021, 1026 (Fla. 2d DCA 2018))); *see also Scherer,* 2022 WL 17488420, at *n. 9.

As this Court has already concluded, "a challenge to a non-signatory's ability to enforce a delegation clause falls into the category of enforceability, not formation." (ECF No. 20 at 6 (citing *Becker v. Delek US Energy, Inc*., 39 F. 4th 351, 356 (6th Cir. 2022)).   The court's decision in *Southland v. Corporate Transit of America* is in accord, holding that "[t]he underlying principle is consent: namely, whether the signatory could have 'foreseen the involvement of the nonsignatory' and could therefore 'be said to have consented to arbitrate with the nonsignatory." *Id*. at *4 (internal citation omitted).   Other courts in this district have reached the same conclusion that a non-signatory may enforce an arbitration agreement. *See Ross v. Subcontracting Concepts, LLC*, Civil No. 20-12994, 2021 WL 6072593, at *3 (E.D.

Mich. Dec. 23, 2021) ("The Court finds the same [as *Southerland*] here.  Accordingly, [defendant] may invoke the arbitration clause in the Agreement").

In this case, there is no question that the Plaintiff knew that Ally would be an essential party to his procurement and leasing of his Vehicle.  At the time that Plaintiff executed the RLO, he knew that he would be required to execute a separate Lease Agreement and that such agreement would be subsequently assigned to a bank or financing institution.  *See* Ex. A at 1.  Moreover, when he executed the RLO, Plaintiff contemporaneously executed the referenced Lease Agreement with Case Alfa Romeo which showed that Ally would serve as the financing institution for the lease of Plaintiff's Vehicle.  *See* Ex. B at 1.  *Cf. Global Gen. Grp., LLC v. Mazzola*, Case No. 13-cv-14979, 2014 WL 2895445 (E.D. Mich. June 26, 2014) (dismissing action in favor of arbitration in light of close relationship between two agreements).

The decisions in *Southerland*, *Scherer*, and *Robinson* each followed well-established precedents as have multiple other courts that have addressed similar cases.  Plaintiff plainly agreed to arbitration and Ally can enforce that agreement.[9]

---

[9] The additional elements to order the matter to arbitration are plainly met.  There can be no doubt that the Arbitration Provision encompasses Plaintiff's claim under the CLA.  It provides, in broad and comprehensive language, that:

> *Any claim, or dispute*, *whether in* contract, tort, *statute* or otherwise . . . between you and us or our . . . successors or assigns, which arises out of or relate to your credit application, purchase or condition of this Vehicle, this Order and Agreement *or any resulting transaction or relationship (including any such relationship with third parties who do*

23

2.    Because the Claim Is Arbitrable, This Court Should Dismiss This Case

As multiple courts in this district have recognized, the Sixth Circuit has authorized courts to dismiss lawsuits where retention of jurisdiction following referral to arbitration would serve no purpose. *See Memmer v. United Wholesale Mortg.*, Case No. 23-cv-10921, 2024 WL 187697, at *3 (E.D. Mich. Jan. 16, 2024) (citing *Hilton v. Midland Funding, LLC*, 687 F. Appx. 515, 518 (6th Cir. 2017)) ("[i]n the Sixth Circuit, if a district court concludes that the plaintiff's claims are subject to

---

*not sign this Order and Agreement)* shall, at your or our election, be resolved by neutral binding arbitration and not by a court action.

Ex. A at 4 (emphasis added).  In *Harrison*, this Court evaluated a similarly broad arbitration clause and held that federal securities fraud claims fell within the scope of the relevant agreement.  *See Harrison,* 651 F.Supp. 3d at 886.  Referring to the arbitration provision's expansive sweep—"any claim, dispute, or controversy arising under, out of or relating to the Agreement"—this Court  dismissed the plaintiff's action and granted defendant's motion to compel. *Id.*  This accords with long-standing precedent that federal statutory claims are subject to arbitration.  *See American Express Co. v. Italian Colors Restaurant,* 570 U.S. 228, 233-34 (2013) (finding that claims under federal antitrust laws could be subject to arbitration).

There is also no indication that Congress intended claims under the Consumer Lease Act to be non-arbitrable.  Nothing in the statute or legislative history of the CLA disfavors arbitration and, indeed, courts have routinely granted motions to compel arbitration when presented with claims under the subject statute.  *See, e.g., Boehm v. VW Credit, Inc.,* Case No. 8:21CV406, 2022 WL 159285 (D. Neb.  Jan. 18, 2022) (granting motion to compel arbitration in Consumer Leasing Act case and directing case to arbitration); *LoMonico v. Foulke Mgmt. Corp.,* Civil No. 18-11511 (RBK/AMD), 2020 WL 831134 (D.N.J. Feb. 20, 2020) (directing claims under the CLA to arbitration); *Mayton v. Tempoe, LCC,* Civil Action No. SA-17-CV-179-XR, 2017 WL 2484849 (W.D. Tex. June 7, 2017) (same).

24

arbitration, it may dismiss the action or, if requested by a party, stay the action"); *Tillman Transpo, LLC v. MI Business Inc*., Case No. 23-10197, 2023 WL 4875872, at *9 (E.D. Mich. July 31, 2023) ("[t]he Sixth Circuit has authorized dismissal of actions where all claims are referred to arbitration and retaining jurisdiction would therefore serve no purpose"); *Rowe v. JP Morgan Chase Bank, NA*, Case No. 2:23-cv-1704, 2024 WL 47704, at *3 (S.D. Ohio Jan. 4, 2024) ("most district courts in this Circuit agree that the best procedure when all remaining claims are arbitrable is to dismiss the action without prejudice").   Plaintiff advances one cause of action, which indisputably falls within the arbitration provision of the RLO, and, accordingly, this Court should dismiss this case.

## VI.   <u>CONCLUSION</u>

Plaintiff agreed to arbitrate any claim or dispute arising from the lease of his vehicle.  The Court has already decided this issue and the *Coinbase* decision does not change the result at all.  Plaintiff agreed that any such claim would be pursued on an individual basis by waiving any right to bring class action litigation.  In addition, Plaintiff agreed to delegate any threshold "gateway" issues of arbitrability to an arbitrator.  Accordingly, as this Court has already done once before, it should dismiss this case and refer this suit to arbitration.

Dated September 27, 2024                Respectfully submitted,

                                        /s/ *Robert J. McGahan*
                                        **BRADLEY ARANT BOULT CUMMINGS LLP**
                                        Robert J. McGahan (D.C. Bar# 446707)
                                        101 Constitution Ave., NW, 9th Floor
                                        Washington, DC  20001
                                        P: (304) 526-3505
                                        Fax: (202) 689-2860
                                        bmcgahan@bradley.com

                                        Keith S. Anderson
                                        Georgia Bar No. 136246
                                        **BRADLEY ARANT BOULT CUMMINGS LLP**
                                        One Federal Place
                                        1819 Fifth Avenue North
                                        Birmingham, Alabama 35203
                                        Telephone: (205) 521-8000
                                        Facsimile: (205) 521-8800
                                        kanderson@bradley.com
                                        *Counsel for Ally Financial Inc.*

                                        M. Alyssa Barksdale (P824440)
                                        **BRADLEY ARANT BOULT CUMMINGS LLP**
                                        ONE 22 ONE
                                        1221 Broadway
                                        Suite 2400
                                        Nashville, TN 37203
                                        Phone: (615) 252-2256
                                        abarksdale@bradley.com

26

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**STEFANO CAVINATO**, on
behalf of HIMSELF and all
others similarly situated,

      Plaintiff,

v.                            CASE NO. 2:23-CV-10054-JJCG

**ALLY FINANCIAL, INC.,**

      Defendant.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 27th day of September, 2024, I served the Renewed Motion to Compel Arbitration upon all parties of record and filed with the Clerk of the Court utilizing the CM/ECF system which will send electronic notification of such filing to all parties of record.

                                 */s/ Robert J. McGahan*
                                 Robert J. McGahan