# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-61234-CV-KMW

PATRICIA ROBINSON,

   Plaintiff,

v.

HYUNDAI CAPITAL AMERICA, INC.,

   Defendant.

_____/

## ORDER

**THIS MATTER** is before the Court on Defendant Hyundai Capital America, Inc.'s ("**HCA**" or "**Defendant**") Motion to Compel Arbitration, to Dismiss Case with Prejudice, and to Strike Class Allegations (DE 17) ("**Motion**").  Plaintiff Patricia Robinson ("**Plaintiff**") filed an opposition (DE 22) and Defendant filed a replied (DE 25).  For the reasons set forth below, Defendant's Motion is **GRANTED IN PART AND DENIED IN PART**.

## I.     FACTUAL BACKGROUND

On September 8, 2018, Plaintiff leased a 2018 Hyundai Genesis G90 ("**Vehicle**") from Rick Case Hyundai ("**Dealer**"), a dealership in Plantation, Florida.  (DE 1 at 3.)  In connection with the transaction, Plaintiff and Dealer entered into a Retail Lease Order ("**RLO**") and a Motor Vehicle Lease Agreement ("**MVLA**").  (*Id.*; DE 18-1 at 3, 5.)  The Dealer's right, title and interest in Plaintiff's lease has been assigned to Hyundai Lease Titling Trust ("**HLTT**").  (DE 18-1 at 5–6.)  HCA is the attorney-in-fact and exclusive servicing agent for HLTT, the initial beneficiary of HLTT, and the beneficial owner of leases and leased vehicles assigned to HLTT.  (DE 18-1 at 3.)

In the Complaint, Plaintiff alleges that, at the end of her lease term, she sought to exercise an option under the MVLA to buy the Vehicle. (DE 1 at 4.) She inquired with HCA about the purchase process and was directed to exercise the purchase option through the Dealer. (*Id.*) However, in exercising the option, Plaintiff alleges that Defendant required her to pay certain amounts that had not previously been disclosed.[1] (*Id.* at 4–5.) As a result, Plaintiff brings two claims against HCA: Count I for violations of the Federal Consumer Leasing Act on behalf of Plaintiff and a national class and Count II for violations of the Florida Deceptive and Unfair Trade Practices Act on behalf of Plaintiff and a Florida sub-class.

According to HCA, Plaintiff's claims are subject to an Arbitration Provision in the RLO which stipulates that arbitration must occur on an individual—not class—basis. (DE 18-1 at 3–4.) The Arbitration Provision provides, in relevant part:

> EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION . . . IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATION.

(*Id.* at 12.) The Arbitration Provision further explains its scope:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this Order and Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Order and Agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

---

[1] These amounts consisted of a $699 "Predelivery Service Charge" and a $132.95 "Electronic Registration Filing Fee." (DE 1 at 5.)

(*Id.*)  Additionally, the Arbitration Provision provides that it "shall survive any termination, payoff or transfer of this Order and Agreement." (*Id.*)  Plaintiff contends that her claims are not brought under the RLO but rather under the MVLA, which does not contain an arbitration provision.  As such, Plaintiff argues the Arbitration Provision does not apply to her claims.

## II.   LEGAL STANDARD

An arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The Federal Arbitration Act ("**FAA**") governs arbitration disputes and "embodies a liberal federal policy favoring arbitration agreements."  *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (citation omitted).  The FAA creates a "presumption of arbitrability" where "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115–16 (11th Cir. 2014) (citation omitted).  "[T]he central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'"  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (citations omitted).

A party to an arbitration agreement may move for an order enforcing the agreed-upon arbitration terms of a contract.  *See Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1294 (11th Cir. 2022).  Before enforcing an agreement, however, the Court must determine whether the arbitration agreement was validly formed.  *See id.*  If the arbitration agreement is valid, the Court next determines whether there is an arbitrable issue and then whether the right to arbitrate that issue has been waived.  *See Gomez v. Allied Pros. Ins. Co.*, 457 F. Supp. 3d 1351, 1356 (S.D. Fla. 2020); *see also Seifert v. U.S. Home*

*Corp.*, 750 So. 2d 633, 636 (Fla. 1999) ("Under both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.").

The "general rule" is that unless a contract clearly and unmistakenly stipulates otherwise, the threshold question of arbitrability is for the courts to decide. *See AT&T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 647 (1986). Nevertheless, when clearly specified, parties can agree to arbitrate "gateway questions" regarding arbitrability such as whether they have agreed to arbitration or if their agreement covers a specific dispute. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019) ("[P]arties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract"); *accord Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). An agreement to arbitrate gateway questions is often referred to as a delegation agreement (or delegation clause or provision) because such a provision "delegates the resolution of disputes about the arbitrability of the parties' claims to an arbitrator." *Attix*, 35 F.4th at 1295 (citing *Rent-A-Center, W., Inc.*, 561 U.S. at 68). However, even when a delegation clause is included, courts must initially determine whether an agreement exists in the first place. *See Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 398 (5th Cir. 2022). In essence, if there is a dispute regarding the existence of the agreement itself, parties cannot delegate this initial determination to an arbitrator. *Id.* Therefore, while an arbitrator may decide questions of arbitrability if the parties have agreed to delegate such authority, the Court retains the responsibility to

decide whether a valid agreement to arbitrate exists. This distinction demonstrates that the presumption favoring arbitration does not extend to disputes concerning the existence of the arbitration agreement itself.

## III.    DISCUSSION

Pursuant to the Motion, HCA seeks to have the Court compel arbitration of Plaintiff's claims on an individual—as opposed to class-wide—basis, dismiss the case with prejudice, and strike class allegations. Preliminarily, HCA argues that the Arbitration Provision in the RLO contains a delegation provision that must be enforced, which should put an end to the Court's inquiry. Although HCA was not an original contracting party to the RLO or the MVLA, it argues that it can enforce the Arbitration Provision as the assignee of the Dealer (who was an original contracting party, along with Plaintiff), or alternatively under the doctrine of equitable estoppel. Insofar as the inquiry does not end upon consideration of the delegation provision, HCA contends that the RLO and MVLA must be construed together, that Plaintiff's claims are within the scope of the Arbitration Provision, and that individual arbitration is required under the Parties' agreement.

Plaintiff argues that HCA cannot compel arbitration because her claims stem from the MVLA (which lacks an arbitration provision) rather than the RLO (which includes the Arbitration Provision). For the same reasons, Plaintiff asserts that the delegation clause in the RLO is not applicable. Furthermore, Plaintiff disputes HCA's ability to enforce the RLO as a non-signatory and contends that any class action waiver would not be enforceable. But if the Court does compel arbitration, Plaintiff requests that the case be stayed instead of dismissed.

The Court must first evaluate whether a valid arbitration agreement exists, regardless of the delegation provision, because arbitration cannot be compelled if no agreement exists. *See Seifert*, 750 So. 2d at 636. If the Arbitration Provision is valid and applicable to this case, the Court must next determine whether the threshold issue of arbitrability should be decided by the Court. *See Gomez*, 457 F. Supp. at 1356. As discussed below, the Court finds that HCA may enforce the Arbitration Provision against Plaintiff. The Court also finds that the delegation provision in the Arbitration Provision applies and therefore requires that an arbitrator decide all arbitrability issues, including whether Plaintiff's claims are within the scope of the Arbitration Provision. "[T]he availability of class arbitration is a question of arbitrability." *JPay, Inc. v. Kobel*, 904 F.3d 923, 935, 944 (11th Cir. 2018). Indeed, the Parties' delegation provision precludes the Court from deciding the availability of class arbitration. *Id.* at 944. Therefore, whether Plaintiff proceeds on an individual or class basis at arbitration is an issue for the arbitrator to decide.[2] Finally, the Court grants Plaintiff's request that this case be stayed—instead of dismissed—pending the outcome of arbitration. *See Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) ("[T]he plain language of § 3 [of the FAA] affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."); *see also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC*, 807 F.3d 1258, 1268 (11th Cir. 2015) ("[S]ection 3 [of the FAA] qualifies the mandatory nature of any stay it authorizes by requiring a party to apply for the stay: 'the court ... shall *on application of*

---

[2] Defendant's separate request to strike Plaintiff's class allegations is denied without prejudice. The Court need only address the request to strike if the arbitrator finds that Plaintiff's claims in this case are not subject to the Arbitration Provision.

*one of the parties* stay the trial.'"); *Olano v. Costco Wholesale Corp.*, No. 20-cv-80467, 2021 WL 8894478, at *4 (S.D. Fla. Apr. 23, 2021).

Since the Motion became ripe, HCA filed a Notice of Supplemental Authority (DE 26) advising that another court in this district granted HCA's motion to compel arbitration in a case with facts nearly identical to this one. *See Scherer v. Hyundai Cap. Am., Inc.*, No. 22-cv-61014, 2022 WL 17488420 (S.D. Fla. Nov. 22, 2022), *report and recommendation adopted*, No. 22-cv-61014, 2022 WL 17486330 (S.D. Fla. Dec. 7, 2022). The Court agrees with HCA that *Scherer* is "highly relevant" to the instant action because the lease documents and arbitration provision are nearly identical and the parties make substantially similar arguments regarding the motion to compel arbitration.

### A.      Whether HCA May Enforce the Arbitration Provision against Plaintiff

HCA argues that it should be allowed to enforce the Arbitration Provision in the RLO against Plaintiff because the RLO was assigned to HCA, or alternatively due to equitable estoppel. State "law governs the issue whether a contract may be enforced by or against a nonparty." *Kong v. Allied Pro. Ins. Co.*, 750 F.3d 1295, 1302 (11th Cir. 2014) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). It Is undisputed that Florida law applies here. The Court finds that Florida law permits HCA to enforce the Arbitration Provision against Plaintiff, provided the RLO was assigned. Even if the RLO was not assigned, the Court finds that HCA can enforce the Arbitration Provision against Plaintiff under the equitable estoppel doctrine.

### 1.      Enforcement by Assignee

It is paramount that a court confirm the existence of a valid arbitration agreement. Arbitration cannot be compelled in the absence of a valid agreement. The validity of an

agreement is closely tied to whether it can be enforced by the parties involved.  Put simply, "deciding enforceability between the parties and an arbitration agreement's existence are two sides of the same coin." *Newman*, 23 F.4th at 398.  Therefore, before addressing whether arbitrability issues should be delegated, the Court must first determine whether HCA, rather than the Dealer, has the authority to enforce the Arbitration Provision.  HCA asserts that the Dealer assigned both the MVLA and the RLO to Hyundai Lease Titling Trust ("HLLT").  (DE 18 at 3.)  HCA is the attorney-in-fact and exclusive servicing agent for HLTT, the initial beneficiary of HLTT, and the beneficial owner of leases and leased vehicles assigned to HLTT.  (*Id.* at 3; DE 18-1 at 3.)  The RLO provides that the "Dealer's obligations and rights hereunder may be assigned as this Order shall inure to the benefit of Dealer, its successors and/or assigns."  (DE 18-1 at 11.)  The MVLA states that "[a]fter [Plaintiff] sign[s] this Lease, we will assign it to Hyundai Lease Titling Trust ("HLTT") and the terms 'Assignee,' 'we,' 'us' and 'our' will refer to HLTT and its agents or to any subsequent assignee."  (*Id.* at 14.)

Thus, the MVLA definitively assigns the Lease to HLTT, whereas the RLO only suggests that it "may be" assigned.  (*Id.* at 11.)  Neither the lease documents nor the Motion explicitly clarify whether the RLO was separately assigned to HLTT, whether it was assigned automatically alongside the MVLA, or whether another theory of assignment applies.  Plaintiff does not dispute the assignment of the RLO, nor does Plaintiff analyze how this assignment impacts HCA's ability to enforce the provisions of the RLO.[3]

---

[3] Plaintiff only addresses assignment with regard to the "assignment liability" clause of the MVLA when arguing that the MVLA's class action waiver provision is unenforceable.

While Plaintiff does not contest that the RLO was assigned to HCA, Plaintiff maintains that HCA cannot enforce the agreement because it was not a signatory to the RLO.  Under Florida law, when a contract right is assigned, it typically does not transfer any corresponding duties to the assignee unless the assignee agrees to assume those duties.  *See Kong*, 750 F.3d at 1302 (quoting *Shaw v. State Farm Fire & Cas. Co.*, 37 So. 3d 329, 332 (Fla. 5th DCA 2010), *disapproved of on other grounds by Nunez v. Geico Gen. Ins. Co.*, 117 So. 3d 388 (Fla. 2013)).  However, arbitration is considered a "remedial mechanism" that binds assignees and is presumed to be included in any assignment of contract rights.  *See Kong*, 750 F.3d at 1303.  Therefore, even if an assignment only transfers contract rights without duties of performance, it includes the agreed-upon arbitration process.  Additionally, the term "party," in the context of enforcing an arbitration provision, should be interpreted broadly to encompass assignees of contracting parties. *Id.* at 1302; *Marcum LLP v. Potamkin*, 107 So. 3d 1193, 1195 (Fla. 3d DCA 2013) (declining to interpret the term "party" to exclude a contracting party's assignee because "[s]uch a narrow reading would mean that assignees and their counter-parties under assigned contracts containing agreements to arbitrate disputes would lose their respective rights to compel arbitration, merely by virtue of the assignment."). Furthermore, Florida courts have demonstrated a readiness to compel arbitration for various parties who are not signatories to the agreement.  *Kong*, 750 F.3d at 1302–03 ("Florida courts have exhibited a willingness to compel a number of different nonsignatories to arbitrate."); *see also Akin Bay Co., LLC v. Von Kahle*, 180 So. 3d 1180,

---

(DE 22 at 24–25.)  The Court will not evaluate this argument as it is not relevant to the enforcement analysis.

1183 (Fla. 3d DCA 2015) (noting, in the context of enforcing an arbitration clause against a nonsignatory assignee, that "[a]n assignee is in no better or worse position that his assignor." (internal quotation marks and citation omitted)).

Here, there is no dispute that HCA acts as the Dealer's assignee, or at least as the assignee's attorney-in-fact and exclusive servicing agent, and thus should be able to enforce the Arbitration Provision against Plaintiff, a signatory. *See Agostino v. Ally Fin. Inc.*, No. 18-cv-1202, 2019 WL 13142893, at *7 (M.D. Fla. Jan. 29, 2019) ("Under Florida law, Bill Curie Ford's assignment of Plaintiff's account and all rights in it to Ally included the right to employ the remedial mechanism bargained for in the RISC. Ally purchased not only Agostino's account, but also the right to compel him to arbitrate his claims against it.")

This conclusion is buttressed by the language of the RLO. The Arbitration Provision in the RLO explicitly states that it applies to "[a]ny claim or dispute . . . between you and us or our employees, agents, successors or assigns." (DE 18-1 at 12.) Additionally, in another part of the RLO, Plaintiff agreed that the "Dealer's obligations and rights may be assigned as the Order shall inure to the benefit of Dealer, its successors and/or assigns." (*Id.* at 11.) Plaintiff further acknowledged in the same provision that the RLO "is an essential document to any claim by [Plaintiff] against Dealer in connection with the leasing of the Vehicle." (*Id.*) HCA, through assignment, possesses the same rights under the Arbitration Provision that the Dealer would have had. Thus, the Court is upholding the parties' contractual agreement by permitting HCA to enforce the Provision.

### 2.      Equitable Estoppel

Plaintiff argues that HCA cannot enforce the RLO because it is not a signatory to the contract.  HCA is an assignee of the RLO (which contains the Arbitration Provision) and, therefore, is a non-signatory to the RLO.  Nevertheless, under Florida law, a non-signatory may enforce an arbitration agreement under the theory of equitable estoppel. *See Kwest Commc'ns. v. United Cellular Wireless*, No. 16-cv-20242, 2016 U.S. Dist. LEXIS 199544, at *17 (S.D. Fla. Apr. 7, 2016).  While it is generally true that "one who is not a party to an agreement cannot enforce its terms against one who is a party," there are two recognized exceptions that are applicable here. *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1167–68 (11th Cir. 2011).  The first exception occurs when a claim arises out of or relates to the agreement containing the arbitration provision; the second exception occurs where there "are allegations of concerted action by both a non-signatory and one or more of the signatories to the contract." *Rolls-Royce PLC v. Royal Caribbean Cruises, Ltd.*, 960 So. 2d 768, 771 (Fla. 3d DCA 2007).

With respect to the first exception, a casual relation is a not enough; a significant relationship must exist between the claim and the agreement containing the arbitration clause. *Seifert*, 750 So. 2d at 642.  Reliance on a contract for equitable estoppel purposes means that a plaintiff's claims "must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself." *Allscripts Healthcare Sols., Inc. v. Pain Clinic of Nw. Fla., Inc.*, 158 So. 3d 644, 647 (Fla. 3d DCA 2014) (quoting *Rolls-Royce*, 960 So. 2d at 771).  In this case, a significant relationship exists between the RLO and the MVLA.  Plaintiff claims that certain fees incurred during the vehicle buyout—the Predelivery Service Charge and the Electronic

Registration filing Fee—were improperly charged, contrary to what is allowed or disclosed in the MVLA.  These disputed fees, however, are disclosed in the RLO.  (DE 18-1 at 9.) Additionally, the negotiated cash value of $69,812.43 for the Vehicle, as indicated in the RLO, plays a crucial role in the calculation of the lease buyout under the MVLA.  (*Id.*) Therefore, the $69,812.43 negotiated cash value listed in the RLO forms a significant part of the lease buyout calculation contested by Plaintiff in the Complaint.

Moreover, as previously noted, Plaintiff agreed in the RLO that the RLO "is an essential document to any claim by [Plaintiff] against Dealer in connection with the leasing of the Vehicle" and that "Dealer's obligations and rights [under the RLO] may be assigned as the Order shall inure to the benefit of Dealer, its successors and/or assigns."  (*Id.* at 11.)  Furthermore, the RLO provides that "[t]o the extent any terms herein conflict with the terms of the Lease Agreement (except as to dollar amounts), this Order shall control and govern."  (*Id.*)  The RLO therefore indicates that it is an "essential document" to the claims in this case, which pertain to the leasing of the Vehicle and the lease-buyout option discussed in the MVLA, and Plaintiff's claims will require reference to or construction of some portion of the RLO.  Consequently, the first exception is met.

With respect to the second exception, Plaintiff argues that her claims "do not allege any concerted action by the dealership . . . and [HCA]."  Plaintiff asserts in the Complaint, however, that HCA "directed Plaintiff to buy the Vehicle" from the Dealer and that together they required Plaintiff to pay additional fees.  Therefore, the second exception is also met.

Accordingly, even if the RLO was not assigned, HCA is allowed to enforce the Arbitration Provision against Plaintiff through equitable estoppel.  *Cf. Julian v. Rollins, Inc.*, No. 16-cv-3092, 2017 WL 495866, at *1–3 (M.D. Fla. Feb. 7, 2017) (finding in a

similar situation that an assignee under a Finance Agreement could enforce an arbitration provision in a Service Agreement that was not assigned because of the assignment of the Finance Agreement or alternatively under equitable estoppel.)

## B.     Delegation Provision

Finding the Arbitration Provision is valid and applicable to this case, the Court must next determine whether the threshold issue of arbitrability should be decided by the Court. Contracting parties must "clearly and unmistakably" agree to arbitrate the gateway issue of arbitrability. *Henry Schein, Inc.*, 586 U.S. at 69 ("This Court has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." (citations omitted)). Pursuant to the Arbitration Provision in the RLO, Plaintiff and the Dealer clearly and unmistakably agreed to delegate all issues regarding arbitrability to an arbitrator. The parties (the Dealer and Plaintiff) agreed:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this Order and Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Order and Agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(DE 18-1 at 12.)  This provision permits either party to elect to resolve "any" claim or dispute arising out of or relating to various items (including any resulting transaction or relationship) by arbitration, and it specifically, clearly, and unmistakably provides that any claim or dispute includes "the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute."  Significantly, "any disputes means all disputes,

because any means all." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1267 (11th Cir. 2017) (quoting *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1028 (11th Cir. 2003)) (cleaned up).

Plaintiff argues that the clause is narrow in scope and "when read in its entirety" applies only to "claims that arise out or relate to Plaintiff's credit application, purchase of the Vehicle, condition of the Vehicle or the RLO." (DE 22 at 18–19.)   Although Plaintiff argues that the claims do not fall under the RLO, the Court has determined that Plaintiff's claims are indeed within the scope of the RLO because they pertain to the fees and purchase option disclosed in the MVLA. *See Clayton v. Howard Johnson Franchise Sys., Inc.*, 954 F.2d 645, 648 (11th Cir. 1992) ("Under Florida law, where two or more documents are executed by the same parties, at or near the same time and concerning the same transaction or subject matter, the documents are generally construed together as a single contract.").[4]

As explained in *Scherer*, accepting Plaintiff's argument that the claims fall outside the Arbitration Provision would nullify the purpose of the delegation provision, which mandates that an arbitrator, rather than the Court, determine "any" issues related to scope and arbitrability.  *See Scherer v. Hyundai Cap. Am., Inc.*, No. 22-cv-61014, 2022 WL 17488420 (S.D. Fla. Nov. 22, 2022), *report and recommendation adopted*, No. 22-cv-

---

[4] Plaintiff argues that the RLO and the MVLA should not be construed together because the MVLA contains a merger provision.  The Court disagrees.  Although generally, where there are "two separate contracts and only one contract contains an arbitration clause, the parties cannot be compelled to arbitrate disputes arising from the contract that does not call for arbitration," unless there is an exception, which the Court finds applicable here, "where the contract with the arbitration clause incorporates by reference the contract which does not contain an arbitration clause, such that the latter could be 'interpreted as part of the [former] contract.'" *Lowe v. Nissan of Brandon, Inc.*, 235 So. 3d 1021, 1026 (Fla. 2d DCA 2018) (internal citations and quotations omitted).

61014, 2022 WL 17486330 (S.D. Fla. Dec. 7, 2022). Ultimately, the unambiguous delegation of questions of arbitrability requires that the Court uphold the parties' agreement as expressed in the contract. *Henry Schein, Inc.*, 586 U.S. at 67; *see also Mercury Telco Grp., Inc. v. Empresa De Telecommunicaciones De Bogota S.A. E.S.P.*, 670 F. Supp. 2d 1350, 1354–55 (S.D. Fla. 2009) (ruling that gateway issues of arbitrability should be arbitrated when a contract provided "clear and unmistakable" language for this stipulation).

## IV.    CONCLUSION

For the reasons set forth above, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Compel Arbitration, to Dismiss Case with Prejudice, and to Strike Class Allegations (DE 17) is **GRANTED IN PART AND DENIED AS PART** as follows:

1.  The Court compels arbitration of this case (where the arbitrator shall decide all issues of arbitrability, including the availability of class arbitration).

2.  This action is **STAYED** pending arbitration.

3.  The Clerk is directed to **ADMINISTRATIVELY CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers in Miami, Florida, this <u>12th</u> day of August, 2024.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE