# Exhibit 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

STEFANO CAVINATO,
individually, and on behalf of all
others similarly situated

        Plaintiff,

v.

ALLY FINANCIAL INC.,

        Defendants.

CASE NO. 5:23-cv-10054-JEL-JJCG

---

## DECLARATION OF JASPER GARRETT IN SUPPORT OF DEFENDANT ALLY FINANCIAL, INC.'s MOTION TO COMPEL ARBITRATION

I, Jasper Garrett, declare as follows:

1. I am over eighteen years of age and am a citizen and resident of Texas.

2. I am currently employed as a Supervisor – Litigation Support, by Ally Financial Inc. ("Ally").

3. I make this declaration based on personal knowledge and upon information obtained from my review of documents generated and maintained in the course of Ally's regularly conducted business activities.

4. As part of my role with Ally and as records custodian, I am familiar with Ally auto accounts and the records maintained by Ally with respect to these accounts, including, specifically, documents executed by customers in connection with the lease or purchase of a vehicle.

5. Ally's records reflect that Stefano Cavinato leased a 2019 Alfa Romeo Stelvio, Vin Number ending in x9755, from Rick Case Alfa Romeo on

November 23, 2018 ("the Transaction"), and that the documents executed in connection with the Transaction were subsequently assigned or sent to Ally.

6. A true and correct copy of the Retail Lease Order executed by Stefano Cavinato on November 23, 2018 relating to the Transaction is attached hereto as Exhibit A.

7. A true and correct copy of the Lease Agreement executed by Stefano Cavinato on November 23, 2018 relating to the Transaction is attached hereto as Exhibit B.

I declare under penalty of perjury that the foregoing is true and correct and that I executed this declaration on February 9, 2023

*Jasper Garrett*
Jasper Garrett

# Exhibit A

**RETAIL LEASE ORDER**   **DEAL#48581**   **CUST#: R48581**   DATE  11/23/2018

| CUSTOMER | | DOB | CO-CUSTOMER | | | DOB |
|---|---|---|---|---|---|---|
| STEFANO CAVINATO | | | | | | |

| ADDRESS | | | ADDRESS | | | |
|---|---|---|---|---|---|---|

| CITY | STATE | ZIP | CITY | | STATE | ZIP 33139 |
|---|---|---|---|---|---|---|

| E-MAIL | | E-MAIL | | |
|---|---|---|---|---|

| HOME PHONE | WORK PHONE | COUNTY | HOME PHONE | WORK PHONE | COUNTY |
|---|---|---|---|---|---|

| STOCK NO. | YEAR | NEW | USED | DEMO | EXECUTIVE | MILEAGE | COLOR | SALESPERSON 1 |
|---|---|---|---|---|---|---|---|---|
| RK7C28755 | 2019 | | X | | 16 | | PXL Vulcano Bl | GIAN MOLINA |

| VIN | MAKE | MODEL | BODY | SALESPERSON 2 |
|---|---|---|---|---|
| 9755 | ALFA ROMEO | STELVIO | | |

## NEW / DEMO AND EXECUTIVE VEHICLE DISCLOSURE

The new, demonstrator or executive Vehicle is leased AS-IS and WITH ALL FAULTS. Dealer hereby expressly disclaims all warranties, either express or implied, including any implied warranties of merchantability or fitness for a particular purpose and neither assumes nor authorizes any other person to assume for it any liability in connection with the lease of the Vehicle. The only warranties applying to this Vehicle are those offered by the Manufacturer. The Manufacturer's warranty is not affected by Dealer's disclaimer of warranties. The Customer hereby acknowledges that Dealer has made available "warranty Pre-Sale Information" as disclosed in the Warranty Binders pursuant to the Magnuson-Moss Warranty Act.

Customer: _____  Customer: ____N/A____

THIS VEHICLE WAS DELIVERED TO A PREVIOUS PURCHASER.

Customer: _____  Customer: ____N/A____

### USED VEHICLE DISCLOSURE

This used Vehicle has been previously driven by others and Dealer has not made any representation regarding the Vehicle's history. Customer acknowledges that no representation has been made by any agent of Dealer: (i) regarding the history, condition, prior repair or maintenance, safety system or suitability of the Vehicle; or (ii) that it has or has not ever sustained damages prior to this Order, nor does dealer have the obligation to make any such disclosure. Customer understands that s/he may retain a third-party to provide information regarding the Vehicle's history and that Dealer encourages Customer to do so. Customer may also make arrangements to have the Vehicle inspected by a person of Customer's own choosing. Customer further acknowledges that Customer has test driven this Vehicle and it meets Customer's satisfaction or Customer has been offered an opportunity to do so, and has declined. Except as otherwise set forth on the window form (Buyer's Guide), this Vehicle is leased "AS IS and WITH ALL FAULTS," without any warranty and Dealer hereby expressly disclaims all warranties, either express or implied, including any implied warranty of merchantability or fitness for a particular purpose, and neither assumes nor authorizes any person to assume for it any liability in connection with the sale of the Vehicle. The manufacturer warranty, if any, has been fully explained. If the Vehicle is designated as a certified vehicle, that indicates that it has qualified for a limited extension of the Manufacturer's original warranty as set forth on the Buyer's Guide. The certified designation does not alter or modify any of the above disclaimers and waivers, nor does it create a Dealer warranty. It also does not mean that the Vehicle, like all used vehicles, will not suffer mechanical breakdowns, nor need maintenance due to wear and tear.

The Vehicle was previously a _____ (enter short-term rental, taxicab, police vehicle, manufacturer buy-back, rebuilt, glider kit, replica or flood vehicle).

Customer: _____  Customer: ____N/A____

Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale. Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

### LEASE FINANCING / CREDIT APPROVAL

This is an Order to lease a vehicle. This is not the Lease Agreement. The lease terms will be contained in a Lease Agreement which Customer will be required to execute. The lease financing terms will be a function of, among other things, Customer's credit and market forces. The Lease Agreement may also contain bank / acquisition fees, ancillary products, disposition fees and may require money paid at lease inception and/or a payment to reduce the capitalized cost which may vary from the amounts shown herein. Customer may arrange for lease financing through Dealer or a financing entity of Customer's choosing and Customer may be able to obtain more favorable lease financing from third parties. The Lease Agreement to be entered between Dealer and Customer, unless otherwise indicated in writing by Dealer, shall be immediately assigned by Dealer to a bank / finance company (at face value or greater) which shall then be the creditor to whom Customer shall be obligated under the Lease Agreement. Customer also understands that: (i) the monthly lease payment pursuant to the lease agreement for the lease of an automobile may be negotiated with Dealer, and (ii) Dealer may receive some compensation for providing the lease financing and selling other products and services. Should Customer fail to execute a Lease Agreement, this Order shall be deemed terminated by Dealer without further notice. Similarly, Dealer may terminate this Order if Dealer cannot obtain credit approval for Customer or if Dealer is unable to sell Customer's Lease to a financial institution at face value or greater (these acts shall be collectively referred to as "Leasing Approvals"), Dealer's right of termination cannot be waived unless in writing. Leasing Approvals are not typically obtained at the time of the Vehicle's delivery and are beyond Dealer's control. Should Customer take delivery of the Vehicle prior to Dealer's obtaining the Leasing Approvals, Customer understands and acknowledges that pending the Leasing Approvals, delivery of the Vehicle to Customer serves as a convenience to Customer only and Customer does not have, nor will acquire, any rights or interests in the Vehicle by such delivery except Dealer's permission to use it, which permission can be revoked, requiring the Vehicle's immediate return to Dealer in the same condition as it existed when delivered to Customer. In the event of the return of the Vehicle, Customer agrees to pay Dealer the amount of any depreciation, repair costs and any damage to the Vehicle while it is in the possession of the Customer. Customer agrees that in no event shall the vehicle be physically removed more than one-hundred (100) miles from the County in which Dealer is located until the Leasing Approvals are obtained. Additionally, the obtaining of the Leasing Approvals are a condition precedent to the enforcement and validity of the Lease Agreement.

Customer: _____  Customer: ____N/A____

Customer Initials _____  Co-Customer Initials ___N/A___  Page 1 of 4

456594 ("RC15-H)

**LAW** FORM NO. FADA-LOVI-ARO_●(REV 015)
© 2015 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

### LEASE INFORMATION

| | |
|---|---|
| Cash Price of Vehicle | 42701.16 |
| Extended Service Plan | N/A |
| Accessories /Options | |
| ACQUISITION FEE | 595.00 |
| | N/A |
| N/A | N/A |
| THE NEXT MILE | 660.00 |
| N/A | N/A |
| N/A | N/A |
| SUBTOTAL CAPITALIZED COST | 43946.16 |
| Predelivery Service Charge** | 899.00 |
| Electronic Registration Filing Fee** | 132.95 |

** These charges represent costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale.

| | BATTERY1.50 | |
|---|---|---|
| Florida New Tire Fee & Lead Acid Battery Fee | TIRE 5.00 | 6.50 |
| | | N/A |
| Sales Tax ___N/A__% | | 82.89 |
| Rental Surcharge | | 60.00 |
| County Tax | | |
| Lemon Law – Warranty Enforcement Act (New Cars Only) | | 2.00 |
| Florida Title, Registration and License Fees (New___ Trans___) ☐ If box is checked this is an estimate | | 189.24 |
| THIRD PARTY TAG AGCY | | 42.00 |
| Trade Pay-off / Balance on Prior Lease | | N/A |
| Pre-owned Allowance &/or Discount | | -4358.64 |
| TOTAL CAPITALIZED COST | | 39587.52 |
| Net Trade Equity Applied Towards Lease inception costs and/or capitalized cost reduction | | N/A |
| Additional Amounts Paid Towards Lease inception costs and/or capitalized cost reduction | | 4358.64 |
| Rebates | | N/A |

### TRADE-IN 1

| ☐ Private Trade | ☐ Lease Walk Away | | |
|---|---|---|---|
| Year: | Make | Model | Color |
| VIN | | Mileage | |
| 1st Lien to: | | Amount N/A | Good Thru |
| 2nd Lien to: | | Amount | Good Thru |
| Authorized by: | | | |

### TRADE-IN 2

| ☐ Private Trade | ☐ Lease Walk Away | | |
|---|---|---|---|
| Year | Make | Model | Color |
| VIN | | Mileage | |
| 1st Lien to: | | Amount N/A | Good Thru |
| 2nd Lien to: | | Amount | Good Thru |
| Authorized by: | | | |

Unless specifically identified by Customer in writing and signed by the parties, Customer represents and warrants the following regarding the Trade-In: (i) it was not involved in an accident; (ii) having no knowledge of any body or major engine repair(s); and (iii) it was not previously a police vehicle, a taxicab, a short-term lease (for less than 12 months), also referred to as a rental vehicle, a flood damaged, frame damaged / salvaged or a rebuilt vehicle, and the title to the trade-in has not been branded as such. Subject to the terms and conditions of this Order, Customer authorizes Dealer to immediately sell the Trade-In whether or not the Leasing Approvals have been obtained. Customer agrees that in the event any Equity reveals any undisclosed lien on the Trade-In, and/or the actual payoff for the disclosed lien on the Trade-In exceeds the Customer's statement of pay-off, Customer will cause such previously unknown lien(s) and/or the understated amount of the disclosed lien(s) to be satisfied within 72 hours of Dealer's notice to Customer in writing. If the vehicle(s) listed is a Lease Walk Away, Customer understands that Dealer's agreement to take possession of it is for convenience only and Dealer assumes no responsibility for its condition or any other obligation of Customer with respect to that lease such as remaining payments, excess miles or damage to vehicle, unless otherwise indicated in writing and signed by Dealer.

Customer: _____  Customer: ____N/A____

DEALER'S RIGHT TO CANCEL - If Customer and Co-Customer sign here, the provisions of the Dealer's Right to Cancel section below, which gives the Dealer the right to cancel if Dealer is unable to assign a Lease Agreement signed with this Order within ___30_____ days, will apply. If you fail to return the vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Dealer a charge of $ ___75.00____ per day from the date of cancellation until the vehicle is returned or repossessed.

X _____   X ___N/A_____
Customer Signs                                                       Co-Customer Signs

---

**Dealer's Right to Cancel**

a. Dealer agrees to deliver the Vehicle to you on the date the Lease Agreement is signed by Dealer and you. You understand that it may take a few days for Dealer to verify your credit, locate financing for you on the exact terms shown in the Lease Agreement, and assign the Lease Agreement to a financial institution. You agree that Dealer has the number of days stated in this Order to assign the Lease Agreement. You agree that if Dealer is unable to assign the Lease Agreement within this time period to any one of the financial institutions with whom Dealer regularly does business under an assignment acceptable to Dealer, Dealer may cancel the Lease Agreement. Dealer's right to cancel the Lease Agreement ends upon assignment of the Lease Agreement Contract.

b. If Dealer elects to cancel per Paragraph a. above, Dealer will give you written notice (or in any other manner in which actual notice is given to you). In that event, you may have the option of negotiating and signing a new Lease Agreement with different financing terms (for example, a larger down payment, a higher rent charge, a required cosigner, etc.) or you may pay with alternate funds arranged by you.

c. Upon receipt of the notice of cancellation, you must return the Vehicle to Dealer within 48 hours in the same condition as when leased other than reasonable wear for the time you had it. Except as described below, Dealer must give you back all consideration Dealer has received from you in connection with the Lease Agreement.

d. If you do not return the Vehicle within 48 hours after receipt of the notice of cancellation, you agree that Dealer may use any lawful means to take it back (including repossession if done peacefully) and you will be liable for all expenses incurred by Dealer in taking the Vehicle from you, including reasonable attorney's fees. If you fail to return the Vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Dealer the charge shown in the Dealer's Right to Cancel provision on page 2 of this Order as may be provided in the Lease Agreement for each day you do not return the Vehicle after receipt of the notice of cancellation.

e. While the Vehicle is in your possession, all terms of the Lease Agreement, including those relating to use of the Vehicle and insurance for the Vehicle, are in full force and you assume all risk of loss or damage to the Vehicle. You must pay all reasonable costs for repair of any damage done to the Vehicle while the Vehicle is in your possession. Dealer may deduct from any consideration due to you under paragraph c. above Dealer's reasonable costs to repair the Vehicle and any daily charges you incur if you fail to return the Vehicle within 48 hours after the receipt of the notice of cancellation. If Dealer cancels the Lease Agreement, the terms of this Dealer's Right to Cancel provision (including those on page 2 of this Order and as provided in the Lease Agreement) remain in effect even after you no longer have possession of the Vehicle.

Customer Initials _____   Co-Customer Initials ___N/A___   Page 2 of 4

**ILAW** FORM NO. FADA-LOVI-ARB_1 (REV. 4/16
© 2015 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.          43959·1·RC15-FI

## TERMS AND CONDITIONS

A. Definitions: As used in this Order the terms: (a) "Customer" shall mean the party(ies) acquiring the Vehicle; (b) "Vehicle" shall mean the vehicle which is the subject of this Order; (c) "Manufacturer" shall mean the manufacturer that manufactured the Vehicle; (d) "Trade-In" shall mean the automobile(s), but not a Lease Walk Away, conveyed by Customer to Dealer and described on page 1 of this Order, which is being applied towards the acquisition costs of the Vehicle; (e) "ACV" shall mean the actual cash value of the Trade-In, as determined by the National Auto Research Black Book Official Used Car Market Guide based on its condition, current as of the date of Customer's delivery of the Trade-In to Dealer, or if the Trade-In is too old to be in such guide, the average auction price at the time of this Order at the Central Florida Automobile Auctions (open only to licensed automobile dealerships) of automobiles of similar equipment, condition model and year as the Trade-In; (f) "Pre-owned Allowance &/or Discount" as identified on page 1 of this Order is the sum of the ACV plus any discount and/or credit given by Dealer towards the price of the Vehicle; (g) "Demonstrator" (as defined by Chapter 320, Florida Statutes), commonly referred to as "Demo" will be considered a new Vehicle; and (h) "executive vehicle" refers to a vehicle used exclusively by Manufacturer, its subsidiary, or a dealer for the commercial or personal use of the manufacturer's, subsidiary's, or dealer's employees and is considered a new Vehicle; and (i) "Lease Agreement" means an agreement by which the Vehicle is provided on a rental payment basis, subject to agreed upon terms and conditions. Terms in general will be interpreted based on Florida statutory definitions, if any.

B. Vehicle: Customer must accept and take delivery of Vehicle within 48 hours from its availability. Failure by Customer to do so shall constitute a material breach of this Order. By taking possession of Vehicle, Customer, unless otherwise confirmed in writing by Dealer, acknowledges that Vehicle has no defects, flaws or irregularities that would be detected during a visual examination and that no equipment or option is missing. Dealer shall not be liable for failing to deliver or for any delay in delivery where such failure or delay is due, in whole or in part, to any cause beyond the control or without the fault or negligence of Dealer. Manufacturer has reserved the right to change the design of any new motor vehicle, chassis and any accessories or parts thereof at any time without notice and without obligation to make the same or any similar change upon any motor vehicle, chassis, accessories or parts thereof previously purchased by or shipped to Dealer or being manufactured or sold in accordance with Dealer's contracts. In the event of any such change by Manufacturer, Dealer shall have no obligation to Customer to make the same or any similar change in any motor vehicle, chassis, accessories or parts thereof covered by this Order either before or subsequent to delivery thereof to Customer. Dealer shall have no duty to disclose intended design changes by Manufacturer. Line item(s) of optional Dealer installed accessories, equipment listed on page 1 of this Order, service contracts or extended service policy shall not be construed as having been produced, supplied, installed by or installed by Manufacturer. With respect to a new Vehicle, all equipment and options existing at the time the Vehicle was shipped by the Manufacturer were produced by the Manufacturer and/or its world wide suppliers. Items installed thereafter may not be products of the Manufacturer. Neither the Manufacturer, nor Dealer warrant these items. Dealer does not warrant or guarantee the mileage indicated on the used Vehicle is accurate or that it may not have been altered by persons in possession prior to Dealer. Customer acknowledges that new vehicles may be delivered by the Manufacturer with some in-transit damage and acknowledges that sometimes new vehicles are damaged from being moved on or around the Dealer's property. Customer acknowledges that Customer may not be advised, except as required by Florida Statutes, if such damage occurs to a new Vehicle and is repaired.

C. Trade-In: Customer grants, bargains, conveys, sells, assigns and transfers to Dealer all of Customer's right, title and interest in the Trade-In. Customer fully warrants title to the Trade-In and that it is free and clear of all liens and encumbrances except as otherwise noted herein and will defend same against the claims of all persons whomsoever. Customer agrees to deliver to Dealer satisfactory evidence of title to any Trade-In at the time of its delivery to Dealer. If Customer fails to pay any undisclosed or understated liens, Customer shall be in material breach of this Order. In the event that the Trade-In has more mileage than represented by Customer or any of Customer's representations regarding the Trade-In are false, Customer shall be obligated to pay Dealer the difference between the ACV of the Trade-In as represented and the correct ACV within 10 days from written demand. Dealer may recover all consequential and incidental damages arising from Customer's breach of any warranty regarding the Trade-In. Dealer may reappraise the Trade-In if before its possession is delivered to Dealer. It is damaged or parts or accessories have been removed. If such reappraised value results in a "Pre-owned Allowance &/or Discount" that is lower than the allowance shown hereon, Customer may, if dissatisfied therewith, terminate this Order.

D. Rebates / Payment / Incentives: Dealer has no obligation to disclose to Customer the availability of any incentives or rebate. All incentives and rebates shown on page 1 hereof are hereby assigned to Dealer. If Customer is receiving a discount or credit based on a specific relationship with the Manufacturer, Customer must furnish all necessary documentation, information, verification and certificates within 30 days. In the event that Customer fails to timely do so or in the event any moneys to be paid at inception are not paid or non-negotiable (i.e., NSF), Customer shall be in breach of this Order.

E. Mandatory Mediation: Before any party institutes an action, other than one that is expressly outside the scope of the arbitration provision, the parties must first mediate the dispute before a court certified mediator, which mediation shall be conducted in the county where the Dealer is situated. The parties shall jointly select the mediator and equally divide the cost of the mediation. The parties shall use good faith in selecting the mediator and participating in the mediation.

F. Miscellaneous: This Order shall survive the execution of the Lease Agreement. To the extent any terms herein conflict with the terms of the Lease Agreement (except as to dollar amounts), this Order shall control and govern. Waste tire fees and lead-acid battery fees, if applicable and if included in the price of Vehicle, are payable to the State of Florida, Department of Revenue. Dealer is not the agent of the Manufacturer. This Order cancels and supersedes any prior contract and comprises the complete and exclusive statement of the terms of the Order relating to the subject matters covered hereby, and constitutes the entire Order between the parties. There are no representations or contracts between the parties except as set forth herein or contemporaneously executed. This Order may not be changed, modified or extended except by an instrument in writing and signed by the parties. In the event this Order or any other contract or document executed by Customer contains a clerical or computation error or if additional documentation is necessary in order to effectuate the parties' intent, Customer agrees to cooperate with the execution of such (corrected) documentation and produce the additional documentation. Should Customer unreasonably refuse to give such cooperation, Customer shall be in material breach of this Order. By execution of this Order, Customer certifies being 18 years old or older. Customer has read, understands and accepts all provisions of this Order and the Warranty Statement. The parties enter into this Order freely and voluntarily in the absence of any duress or coercion. Customer agrees to pay, unless prohibited by law, any and all taxes applicable to this transaction, regardless of which party may have the primary tax liability therefor. The Florida Title, Registration and License fees are the result of a highly complicated formula. As a result, the amounts charged may only be estimates. If the amount of taxes and government fees identified on page 1 hereof is less than the correct amount, Customer shall be obligated to Dealer for such difference. If the amount charged exceeds the correct amount, Dealer shall refund to Customer the difference. Dealer's obligations and rights hereunder may be assigned as this Order shall inure to the benefit of Dealer, its successors and/or assigns. All paragraph headings set forth in this Order are intended for convenience only and shall not control or affect the meaning or construction of the provisions hereof. All remedies afforded in this Order shall be taken and construed as cumulative, that is, in addition to every other remedy provided therein or by law. The failure of Dealer to enforce at any time any of the provisions of this Order, or to exercise any option herein provided, or to require at any time performance by Customer of any of the provisions hereof, shall in no way be construed to be a waiver or create an estoppel from enforcement of such provisions, nor in any way to affect the validity of this Order or any part thereof, or the right of Dealer to thereafter enforce each and every such provision, or to seek relief as a result of the prior breach. This Order is an essential document to any claim by Customer against Dealer in connection with the leasing of the Vehicle.

G. Termination: In the event this Order is terminated by either Dealer or Customer as permitted by this Order, including, but not limited to the failure to obtain Lease Approval: (a) Dealer will be entitled to the immediate return of the Vehicle and Customer shall be obligated to return the Vehicle to Dealer within 24 hours of the date of termination; and (b) Customer shall be liable to Dealer for $1.00 per mile used over and above 25 miles per day average, plus any wear, tear or damage to the Vehicle and diminution in value. In the event that the Vehicle is not returned within this time period, such failure will constitute a material breach of this Order and Dealer shall have those remedies as described in paragraph "F" above. Otherwise, Customer will be entitled to the return of their inception money subject to a lien in favor of Dealer for any amount due it hereunder. If a Trade-In was applied towards the Vehicle's acquisition, it shall be returned to Customer upon payment of a reasonable charge for storage, lien payoffs and repairs (if any) or, if it has been already sold by Dealer, Customer shall be entitled to the "Net Trade-In Proceeds", calculated as follows: the ACV, less the sum of (i) liens, (ii) costs incurred by Dealer to repair and/or ready it for sale, and (iii) a selling commission equal to 15% of the ACV. If the Net Trade-In Proceeds is negative, then Customer shall be obligated to Dealer for that amount.

Customer Initials _____  Co-Customer Initials __N/A__   Page 3 of 4

LAW FORM NO. FADA-LOVI-ARB_8 (REV 9/19)
© 2018 The Reynolds and Reynolds Company
THAT ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM, CONSULT YOUR OWN LEGAL COUNSEL.      43659 1 RC18-FI

---

# ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this Order and Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Order and Agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this Order and Agreement was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the Vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this Order and Agreement. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

DO NOT SIGN BELOW UNTIL YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS AND CONDITIONS CONTAINED ON ALL PAGES OF THIS ORDER. BY SIGNING BELOW, YOU ACKNOWLEDGE THAT EXCEPT AS OTHERWISE PROVIDED IN WRITING, THIS REPRESENTS THE ENTIRE AGREEMENT AND THAT YOU HAVE NOT RELIED ON ANY ORAL REPRESENTATION, PROMISE OR AGREEMENT NOT CONTAINED WITHIN THIS WRITTEN CONTRACT. THIS ORDER IS NOT BINDING UNTIL EXECUTED BY DEALER'S MANAGER. CUSTOMER REPRESENTS AND WARRANTS THAT ALL INFORMATION PROVIDED TO DEALER IN CONNECTION WITH THIS TRANSACTION IS COMPLETE AND ACCURATE. CUSTOMER HAS READ, UNDERSTANDS AND ACCEPTS ALL PROVISIONS OF THIS ORDER AND THE WARRANTY STATEMENT.

Section 501.98, Florida Statutes, requires that, at least 30 days before bringing any claim against a motor vehicle dealer for an unfair or deceptive trade practice, a consumer must provide the dealer with a written demand letter stating the name, address, and telephone number of the consumer; the name and address of the dealer; a description of the facts that serve as the basis for the claim; the amount of damages; and copies of any documents in the possession of the consumer which relate to the claim. Such notice must be delivered by the United States Postal Service or by a nationally recognized carrier, return receipt requested, to the address where the subject vehicle was purchased or leased or where the subject transaction occurred, or an address at which the dealer regularly conducts business.

X _____  X __N/A_____
**Customer's Signature**        **Co-Customer's Signature**

This Order and Agreement represents the final agreement between the parties related to the sale and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties.

X _____  X __N/A_____
**Customer's Signature**        **Co-Customer's Signature**

You have read each page of this Order and Agreement, including the arbitration provision above, and agree to its terms. You have received a completely filled in copy of this Order.

Customer Signs: X _____  Co-Customer Signs: X ___N/A___

Accepted by Dealer: X __Rick Case ALFA Romeo__    By: ____

Customer Initials _____  Co-Customer Initials __N/A__  Page 4 of 4

**LAW** FORM NO. FAOA-LOVI-ARB_# (REV. 4/15)
© 2015 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.    43669'1'B015-FI

# Exhibit B

 SMARTLEASE

48581

| Lessee (and Co-Lessee) ("You") | | Lessor |
|---|---|---|
| Name and address, including county **STEFANO CAVINATO** | Garaging address (if different) N/A N/A Principal driver (if business use) N/A | **RICK CASE ALFA ROMEO FIAT MASERATI 3500 WESTON ROAD DAVIE, FL 33331** |

This is an agreement to lease a vehicle. This is not a purchase agreement. You are not buying the vehicle. By signing this lease, you agree to everything in it.

"We," "us," and "our" refer to Lessor named above and any assignee. An "assignee" is a person to whom this lease is assigned (if this is assigned).

☒ If this box is checked, Lessor will assign this lease and sell the vehicle to **VAULT AS NOMINEE FOR (ALLY OR BOLTERED DLR)** _ALLY BANK LEASE TRUST_ (Assignee).

☐ If this box is checked, Lessor intends not to assign this lease.

Monthly Payment Lease. If your payment schedule shows monthly scheduled payments (Section 2(a)), your lease is a monthly payment lease.

Single Payment Lease. If your payment schedule shows a single scheduled payment (Section 2(b)), your lease is a single payment lease.

### The Vehicle You Are Leasing

| New/Used | Year | Make & Model | Body Style | Vehicle ID # | Mileage | Primary Use: Personal, unless otherwise indicated below |
|---|---|---|---|---|---|---|
| NEW | 2019 | ALFA ROMEO STELVIO | | 9755 | 16 | ☐ Commercial, Business, or Agricultural |

Dealer Installed Options **N/A**           GVW (if truck) **N/A**           ☐ Public Conveyance

### Federal Consumer Leasing Act Disclosures

| 1. Amount Due at Lease Signing or Delivery (Itemized Below) | 2(a). Monthly Scheduled Payments | 3. Other Charges (not part of your scheduled payment) | 4. Total of Payments (The amount you will have paid by the end of the lease.) |
|---|---|---|---|
| | Your first monthly payment of $ **477.57** is due on **11/23/2018** (followed by **36** payments of $ **477.57** due on the **23rd** of each month. The total of your monthly payments is $ **18625.23** | Disposition fee (if you do not purchase the vehicle and we do not waive the fee under Section 14) $ **N/A** **N/A** $ **N/A** | |
| $ **6273.00** | 2(b). Single Scheduled Payment Your single payment of $ **N/A** is due on **N/A**. This is the total of your scheduled payments. | Total $ **N/A** | $ **24420.00** |

#### Itemization of Amount Due at Lease Signing or Delivery

**5. Amount Due at Lease Signing or Delivery:**

- a. Capitalized cost reduction . . . . . . . . . . . $ **4359.64**
- b. First monthly payment . . . . . . . . . . . . . . $ **477.57**
- c. Single scheduled payment . . . . . . . . . . $ **N/A**
- d. Refundable security deposit . . . . . . . . . $ **N/A**
- e. Title fees . . . . . . . . . . . . . . . . . . . . . . . . . $ **N/A**
- f. Registration fees . . . . . . . . . . . . . . . . . . . $ **189.24**
- g. Sales/use tax . . . . . . . . . . . . . . . . . . . . . . $ **305.10**
- h. MVWEA  2.00 / DEALER FEE 699.00 $ **701.00** BATTERY 1.50
- i. RENT SUR. $ 50.00 / TIRES  6.00 $ **66.50**
- j. E-File Fee $ 132.95/Third Party Agcy Fee $ 42.00 $ **174.95**
- k. Total . . . . . . . . . . $ **6273.00**

**6. How the Amount Due at Lease Signing or Delivery will be paid:**

- a. Net trade-in allowance . . . . . . . . . . . . . . $ **N/A**
- b. Rebates and noncash credits . . . . . . . . . $ **N/A**
- c. Amount to be paid in cash . . . . . . . . . . . $ **6273.00**
- d. Total . . . . . . . . . $ **6273.00**

**7. Your scheduled payment is determined as shown below:**

- a. Gross capitalized cost. The agreed upon value of the vehicle ($ **42636.27**) and any items you pay for over the lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance) . . . . . . . . . . . . . . . . $ **43946.16**
- b. Capitalized cost reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . − $ **4359.64**
- c. Adjusted capitalized cost. The amount used in calculating your base scheduled payment . . . . . . . . . . . . . . . . . . . . . . . . = $ **39587.52**
- d. Residual value. The value of the vehicle at the end of the lease used in calculating your base scheduled payment . . . . − $ **23809.10**
- e. Depreciation and any amortized amounts. The amount charged for the vehicle's decline in value through normal use and for other items paid over the lease term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ **15778.42**
- f. Rent charge. The amount charged in addition to the depreciation and any amortized amounts . . . . . . . . . . . . . . . . . . . + $ **1628.45**
- g. Total of base scheduled payment(s). The depreciation and any amortized amounts plus the rent charge . . . . . . . . . . . = $ **17406.87**
- h. Lease payments. The number of payments in your lease . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ÷ **36**
- i. Base scheduled payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ **446.33**
- j. Sales/use tax (estimated) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . + $ **31.24**
- k. **N/A** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . + $ **N/A**
- l. Total scheduled payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ **477.57**

> **Early Termination.** You may have to pay a substantial charge if you end this lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be.

**8. Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of **10,000** miles per year at the rate of $ **.20** per mile.

**9. Purchase Option at End of Lease Term.** You have an option to buy the vehicle at the end of the lease term for $ **23809.10** plus official fees and taxes.

**10. Other Important Terms.** See your lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, and insurance.

**Insurance Notice**
The valid and collectible insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by sections 324.021(7) and 627.736, Florida Statutes.

**SEE THE OTHER PAGES OF THIS LEASE FOR OTHER IMPORTANT AGREEMENTS INCLUDING A PROHIBITION OF TRANSFER OF YOUR INTEREST.**

40119*1*RC(5-FI
**ALLY FINANCIAL ORIGINAL**

Lease Agreement 10 AF-571-FL-a 10/14          Page 1 of 5.          Lessee's Initials: _____ / Co-Lessee's Initials: **N/A**

**11. Itemization of Gross Capitalized Cost.**

a. Agreed upon value of the vehicle . . . . . . . . . $ 42638.27

b. Ally administrative fee . . . . . . . . . . . . . . . . . + $ 595.00

c. License/registration/title fees . . . . . . . . . . . . + $ N/A

d. Sales tax . . . . . . . . . . . . . . . . . . . . . . . . . . . + $ 62.89

e. Other tax (describe) N/A . . . . . . . . . . . . . . . + $ N/A

f. Optional service contract . . . . . . . . . . . . . . . + $ N/A

g. Optional maintenance contract . . . . . . . . . . . + $ 650.00

h. Optional life insurance . . . . . . . . . . . . . . . . . + $ N/A

i. Optional disability insurance . . . . . . . . . . . . . + $ N/A

j. N/A . . . . . . . . . . . + $ N/A

k. N/A . . . . . . + $ N/A

l. N/A . . . . . . . . . . . + $ N/A

m. N/A . . . . . . . . . . . + $ N/A

n. Gross Capitalized Cost . . . . . . = $ 43946.16

**12. The Vehicle You Are Trading.** N/A

(year) (make) (model)

Gross trade-in value . . . . . . . . . . . . . . . . . . . . . $ N/A

Payoff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - $ N/A

Net trade-in value . . . . . . . . . . . . . . . . . . . . . . = $ N/A

**13. Official Fees and Taxes.** You will pay all government license, title, registration, testing, and inspection fees for the vehicle. You will pay all taxes on the lease, payments due under the lease, or the vehicle that the government levies on you, the vehicle, or us (except our net income taxes). We may change your monthly payment if taxes change. We may bill you separately for official fees and taxes.

Estimated Total Official Fees and Taxes You
Must Pay During Lease.         $ 2201.38

The actual total of official fees and taxes may be higher or lower depending on tax rates in effect or the vehicle value when a fee or tax is assessed.

**14. Disposition Fee Waiver.** We will waive any Disposition Fee shown in Section 3 if, at the time this lease ends, you enter into a motor vehicle lease or installment sale contract that the dealer assigns to Ally.

**15. Lease Term:** 39 months.

**16. Total Allowed Mileage.** The total mileage allowed on the odometer at lease end is 32516 miles.

**Extra Miles.** The total allowed mileage includes N/A extra miles that you are buying at $ N/A per mile. If this lease ends on or after the start of the next-to-last monthly period, we will give you a credit for each unused extra mile you bought. There will be no credit if the lease ends earlier, you buy the vehicle, or the vehicle is a total loss.

**17. Required Vehicle Insurance Information.** You affirm that liability and physical damage policies that meet our requirements (see Section 23) are in force on the date of this lease as follows:

Insurance company name: PROGRESSIVE

Insurance agency name: PROGRESSIVE

Agency address: 6300 Wilson Mills Rd. MAYFIELD OH 44143

Agency phone no.: 8007784737

Agent's name: PROGRESSIVE

Policy no.: 20467710-9412

Deductibles: Collision $ 500.00 Comprehensive $ 500.00

**18. WARRANTY AND EXCLUSION OF WARRANTY.** You have the benefit of the standard manufacturer's warranty unless this box is checked. ☒

☐ If this box is checked, you have the benefit of the following warranty:
N/A

Warranty papers that are separate from this lease state any coverage limits. The law gives you a warranty that the vehicle conforms to the description in this lease. THERE ARE NO OTHER EXPRESS WARRANTIES ON THE VEHICLE.

Unless Lessor makes a written warranty or enters into a service contract within 90 days from the date of this lease, LESSOR MAKES NO IMPLIED WARRANTY OF MERCHANTABILITY, AND THERE IS NO IMPLIED WARRANTY THAT THE VEHICLE IS FIT FOR A PARTICULAR PURPOSE. If Lessor makes a written warranty or enters into a service contract within 90 days from the date of this lease, then any implied warranty of merchantability and any warranty that the vehicle is fit for a particular purpose are limited in duration to the longer of the term of the written warranty or the term of the service contract.

**19. Optional Insurance, Service Contracts, and Maintenance Agreements.** We do not require any of the insurance, products, or services listed in this section. Your decision to buy them or not buy them is not a factor in our decision to approve this lease. We will try to get any optional insurance coverage(s) that you initial below. A notice you receive when you sign this lease describes the coverage(s) in greater detail. Life insurance and disability insurance may not cover taxes and other amounts due besides the base monthly payment.

You are not required to buy a service contract or maintenance agreement as part of this lease. Your choice of providers for any service contract or maintenance agreement you buy will not affect our decision to lease to you.

| Optional Insurance | Coverage | Charge or Premium | Provider | By initialing below you indicate you want the insurance |
|---|---|---|---|---|
| Life Insurance (Monthly Payment Lease Only) | N/A Lessee   N/A Co-Lessee Coverage is for lease term  Coverage limit  $ N/A | $ N/A | N/A | Lessee/Co-Lessee Initials  N/A / N/A |
| Disability Insurance (Monthly Payment Lease Only) | Lessee  Coverage is for lease term  Monthly Coverage limit  $ N/A | $ N/A | N/A | Lessee/Co-Lessee Initials  N/A / N/A |
| | N/A Months  N/A  Miles  Coverage limit  $ N/A | $ N/A | N/A | Lessee/Co-Lessee Initials  N/A / N/A |

| Other Optional Products or Services | | | | Term | | |
|---|---|---|---|---|---|---|
| N/A | | | | N/A Months | N/A | Miles |
| THE NEXT MILE | | | | 36 Months | 40000 | Miles |

20. Excess Mileage Charge. See Section 8 for the charge per excess mile and Section 16 for the total allowed mileage. If the lease ends before the start of the last monthly period and the vehicle is not a total loss, any Early Excess-Mileage and Wear Charge (Section 36(o)) will not exceed the Residual Value (Section 7(d)) minus the Realized Value (Section 36(b)). If the vehicle is a total loss before the scheduled lease end date, any excess mileage charge will not exceed the applicable limitation specified in Section 39 (Monthly Payment Lease) or Section 40 (Single Payment Lease). There is no excess mileage charge if you buy the vehicle.

21. Late Charge. If we do not receive a full monthly payment within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.

22. Charge for Fines and Other Items. You will pay promptly any fine, parking ticket, toll charge, toll penalty charge, moving violation fine, or similar charge relating to the vehicle. If you do not, we may pay it. Each time we pay any such fine or charge, you will pay us the amount we pay plus $10. If we pay to remove a lien we did not agree to, you will pay us the amount we pay.

## Insurance, Use, and Care of the Vehicle

23. Required Vehicle Insurance. You must insure the vehicle through liability and physical damage policies acceptable to us. The policies must not exclude or restrict coverage if you were to drive the vehicle, or when the driver is someone you allow to drive the vehicle or who is likely to drive the vehicle. The policies must show any additional insureds and loss payees that we require. You must give us proof of insurance when we ask. We require no other insurance.

Liability insurance must (a) cover at least $50,000 for property damage, $100,000 for bodily injuries to any one person, and $300,000 for bodily injuries for any one accident, or (b) have a combined single limit of at least $500,000 for bodily injuries and property damage for any one accident.

For trucks of 10,000 lbs. GVW or more and public conveyance vehicles, liability insurance must instead (a) provide primary coverage of at least $50,000 for property damage, $100,000 for bodily injuries to any one person, and $300,000 for bodily injuries for any one accident, and umbrella coverage of $1,000,000 or (b) have a combined single limit of at least $1,000,000 for bodily injuries and property damage for any one accident.

Physical damage insurance must be for the full value of the vehicle with deductibles of no more than $1,000 for collision and upset-loss and $1,000 for comprehensive fire and theft loss.

If you move to a new state, we will require coverage amounts in keeping with our requirements for the new state. We now estimate that those amounts will be the same as those in this lease, but they may be higher.

24. Use. You will not:
— Use the vehicle illegally, improperly, or for hire.
— Use the vehicle in a way that causes the insurance coverage on the vehicle to be ineffective.
— Remove the vehicle from the United States, except for trips to Canada of under 60 days.
— Move the vehicle to another state for more than 30 days without telling us.
— Change the vehicle without our written consent.
— Replace parts, accessories, or tires with rented or leased items.
— Expose the vehicle to seizure, confiscation, forfeiture, or other involuntary transfer.
— Allow a lien to be placed on the vehicle unless we agree.

You will not let anyone else do any of these things.

25. Maintenance, Repairs, Operating Expenses, and Damage. You will maintain and repair the vehicle to keep it in good condition. Replacement sheet metal must be new original equipment manufacturer parts. Other replacement parts must be original equipment manufacturer parts or parts of equal quality and design. (If insurance will pay for repairs, ask your insurance company to specify original equipment manufacturer sheet metal.) You will pay all maintenance, repair, and operating expenses, including gas and oil. If the odometer stops working, you must fix it immediately. You will service the vehicle as the manufacturer recommends. You will follow the manufacturer's instructions in any recall. If you don't do those things, we may do them. You will owe us our cost if we do. We may inspect the vehicle at any reasonable time and place.

When you take possession of the vehicle, you take on the risks of loss of the vehicle and of damage to it. If the vehicle is damaged, stolen, or destroyed and money becomes available from insurance, a judgment, a settlement, or the like, we will treat the money as an insurance settlement. We and/or Vehicle Asset Universal Leasing Trust will be entitled to this money. If the lease ends in connection with our receipt of the money, we will treat any money we do not use to repair the vehicle as sale proceeds.

26. Excess Wear. Excess wear is wear that is beyond the minor wear reasonably expected to result from ordinary, everyday use, assuming that you use the vehicle as this lease permits (see Section 24) and maintain it as this lease requires (see Section 25). Excess wear includes: (a) glass that is damaged, engraved, or that you tinted; (b) a damaged or corroded body, trim, frame, crossmember, suspension, engine, powertrain, or other mechanical part; (c) damaged paint; (d) a torn, damaged, or stained interior or trunkliner; (e) sheet metal that is not original equipment sheet metal; (f) missing equipment or parts that were in or on the vehicle when delivered and not replaced with equipment or parts of equal quality and design (including a missing wheel, wheel cover, jack, or wheel wrench); (g) a tire (including spare) that is unsafe, is not the size and type the manufacturer recommends, is recapped or a snow tire, or has less than 1/8 inch of tread left at the shallowest point; (h) a damaged or worn brake that does not meet government safety standards; (i) oil leaks or low oil pressure; (j) a malfunctioning electrical system, battery, or lights; (k) holes that you drilled in the vehicle; (l) any change to the vehicle that damages the vehicle or compromises its structural integrity; (m) any other condition that makes the vehicle run in a noisy, rough, improper, unsafe, or unlawful way; and (n) any other damage, whether or not insurance covers it.

## When the Lease Can End

27. Scheduled End.

Monthly Payment Lease - This lease is scheduled to end on the date that is determined as follows: (1) Start with the date on which the second payment is due (even if that date is not an actual calendar date because the month has too few days) (See Section 2(a)); (2) Move that date forward by the number of months in the lease term (Section 15), minus one month; and (3) Subtract one day. If the resulting date is not an actual calendar date (because the month has too few days), the scheduled lease end date is the last actual date in that month minus one day.

Single Payment Lease - This lease is scheduled to end on the date that is determined as follows: (1) Start with the date of the lease; (2) Move that date forward by the number of months in the lease term (Section 15); and (3) Subtract one day. If the resulting date is not an actual calendar date (because the month has too few days), the scheduled lease end date is the last actual date in that month minus one day.

28. Lease End Daily Extension. At scheduled lease end, if you keep the vehicle and do not buy it at that time, you elect to extend the lease. You will pay a daily extension charge beginning on the eighth day after the scheduled lease end date and ending when you return the vehicle. The charge per day is the greater of: (1) 0.0017 times the Residual Value (Section 7(d)); or (2) $25. Unless we agree to a longer extension, you may not extend the lease for more than 30 days. We may set a shorter limit. During the daily extension period, you agree to comply with the terms of this lease, other than terms that apply to monthly payments and early end. The total allowed mileage will not increase.

29. Early End. You may end this lease anytime. We may end this lease if you are in default or if the vehicle is a total loss.

30. Default. You will be in default if any of these things happens:
— You do not pay on time.
— You made a material misrepresentation when you applied for this lease.
— You start a bankruptcy, receivership, or insolvency proceeding or one is started against you or your property.
— You break any other agreements in this lease.
— You do anything the law says is a default.

If you are in default, we may end this lease and exercise our rights upon default (see Section 38).

## At Lease End

31. Vehicle Return. Unless you buy the vehicle, you will return the vehicle (including any dealer-installed options you do not buy outright) at lease end to any reasonable place we tell you. After you return the vehicle, you will call us promptly and tell us where you returned the vehicle.

32. Option to Buy the Vehicle. You have an option to buy the vehicle. The price to buy the vehicle after the start of the last monthly period is disclosed in Section 9. The purchase option price disclosed in Section 9 is the price for which we would sell the vehicle to you after the start of the last monthly period.

If this is a monthly payment lease, the price to buy the vehicle before the start of the last monthly period is: (1) the price to buy the vehicle disclosed in Section 9, plus (2) the base monthly payment times the number of payments not yet due, minus (3) any unearned rent charge figured by the Actuarial Method (see Section 42) based on the number of full monthly periods between early end and scheduled end.

If this is a single payment lease, the price to buy the vehicle before the start of the last monthly period is: (1) the price to buy the vehicle disclosed in Section 9, plus (2) the Remaining Prepaid Depreciation (Section 37(b)). If this is a single payment lease and you buy the vehicle before the start of the last monthly period, we will give you a credit for (1) the Remaining Prepaid Depreciation (Section 37(b)), plus (2) any unearned rent charge figured by the Actuarial Method (see Section 42) based on the number of full monthly periods between early end and scheduled end.

Regardless of when you buy the vehicle, you must also pay any related official fees and taxes, plus any amounts due because you broke agreements in this lease.

33. Odometer Disclosure. Federal law requires you to tell us the vehicle's mileage in connection with a transfer of vehicle ownership. You may be fined and/or imprisoned if you do not complete the disclosure or if you make a false statement.

**What You Owe at Lease End**

34. **What You Owe If You Buy the Vehicle.** If you have paid us the amount you must pay to buy the vehicle under Section 32 and kept your agreements, you will owe us nothing more.

35. **What You Owe at Scheduled End, or If You End This Lease On or After the Start of the Last Monthly Period, and You Do Not Buy the Vehicle.** You will owe us: (1) any Disposition Fee shown in Section 3 (unless waived; see Section 14), (2) any excess mileage charge (Sections 8, 16, and 20); (3) our estimated or actual cost of repairing excess wear (we do not have to make repairs); (4) any lease end daily extension charge (Section 28); and (5) any additional amounts due under Section 41. We will give you any credits due under Section 41. However, if the vehicle is a total loss before the scheduled lease end date, you will owe us the amount described in Section 39 (Monthly Payment Lease) or Section 40 (Single Payment Lease).

36. **What You Owe If You End This Lease Before the Start of the Last Monthly Period, and You Do Not Buy the Vehicle - Monthly Payment Lease.**

(a) **What You Owe:** You will owe us an Early End Charge as follows:
   The base monthly payment times the number of payments not yet due,
   - Any unearned rent charge figured by the Actuarial Method (see Section 42), based on the number of full monthly periods between early end and scheduled end
   - Any Surplus (see definition in this section) on the vehicle sale
   = The total. If this total is less than zero, we will not give you a refund or credit.

If there is no Surplus, you will also owe us any Early Excess Mileage and Wear Charge (see definition in this section).

You will also owe us: (1) any Disposition Fee shown in Section 3 (unless waived; see Section 14); and (2) any additional amounts due under Section 41. We will give you any credits due under Section 41.

(b) **Definition of "Realized Value" and "Surplus":** We will sell the vehicle at wholesale. We will use the sale price of the vehicle as its Realized Value, unless you get an independent appraisal of the wholesale value of the vehicle that could be realized at sale (see below in this section). If you get such an appraisal, we will use the appraised value of the vehicle as its Realized Value. If the Realized Value exceeds Residual Value (Section 7(d)), the excess is the Surplus. If the Realized Value is the same as or less than Residual Value, there is no Surplus.

**Your Right to Obtain an Independent Appraisal of the Vehicle's Wholesale Value.** You may get a professional appraisal of the wholesale value of the vehicle that could be realized at sale. The appraiser must be an independent third party. You and we must agree on the appraiser. You must pay for the appraisal and get it within a reasonable time after lease end. The appraised value will then be used as the Realized Value.

(c) **Definition of "Early Excess Mileage and Wear Charge":** Our estimated or actual cost of any repairs the vehicle needs because of excess wear (we do not have to make repairs), plus any excess mileage charge (Sections 8, 16, and 20). This charge will not exceed the Residual Value (Section 7(d)) of the vehicle minus its Realized Value (Section 36(b)).

37. **What You Owe If You End This Lease Before the Start of the Last Monthly Period, and You Do Not Buy the Vehicle.- Single Payment Lease.**

(a) **What You Owe:** The single scheduled payment due at lease signing prepays the rent charge, depreciation, and any amortized amounts.
We will give you a credit for any unearned rent charge, figured by the Actuarial Method (see Section 42) based on the number of full monthly periods between early end and scheduled end.

We will give you a credit for any Surplus (see Section 36(b)), up to the amount of the Remaining Prepaid Depreciation (see definition in this section). If the vehicle's Realized Value (Section 36(b)) is less than its Residual Value, you will also owe us any Early Excess Mileage and Wear Charge (Section 36(c)).

You will also owe us: (1) any Disposition Fee shown in Section 3 (unless waived, see Section 14); and (2) any additional amounts due under Section 41. We will give you any credits due under Section 41.

If the sum of the credits exceeds the sum of the amounts due, we will refund the difference to you. If the sum of the amounts due exceeds the sum of the credits, you will owe us the difference.

(b) **Definition of "Remaining Prepaid Depreciation":** The Remaining Prepaid Depreciation is:

   The base single scheduled payment
   + The number of months in the lease
   x The number of full monthly periods between early end and the scheduled lease end date
   - The unearned rent charge credit

38. **Our Rights Upon Default (Including What You Owe Upon Default).** If you are in default, we may:

   — End this lease and require you to pay the amount you would have owed: (1) under Section 36 (Monthly Payment Lease) or Section 37 (Single Payment Lease) if you had ended the lease before the start of the last monthly period; or (2) under Section 35 if you had ended the lease on or after the start of the last monthly period.
   — Take the vehicle from you without demand. If the law permits, we may go on your property to take the vehicle. If the vehicle has an electronic locating device, we may use the device to find the vehicle.
   — Sue you for damages and to get the vehicle back.
   — Pursue any other remedy the law gives us.

We will exercise our rights without breach of the peace, at reasonable times and places, in a reasonable way, as the law permits. We may take and store any personal items that are in the vehicle. If you do not ask for these items back, we may dispose of them as the law allows. You will pay our reasonable expenses of taking these actions as the law allows. These expenses may include expenses of taking and storing the vehicle, attorney's fees, collection costs, and court costs.

39. **Total Loss Before the Scheduled Lease End Date - Monthly Payment Lease.**

(a) **Total Loss With a Settlement Under the Required Insurance Coverage:** If the vehicle is a total loss before the scheduled lease end date, and we get an insurance settlement under a policy that complies with our requirements (Section 23), you have gap protection.

If the money we get from your insurance is more than the Unamortized Capitalized Cost (see definition in this section), we will not give you a credit for any excess.

If the money we get from your insurance is less than the Unamortized Capitalized Cost (see definition in this section), you will owe the difference up to the amount of your insurance deductible. If the difference is more than your insurance deductible, you will also owe an excess mileage charge (Sections 8, 16, and 20), up to the amount by which the difference exceeds your deductible. We will figure the excess mileage charge as if the lease had ended as scheduled. There will be no credit for unused extra miles.

You will also owe us any additional amounts due under Section 41. We will give you any credits due under Section 41.

(b) **Total Loss Without a Settlement Under the Required Insurance Coverage:** There is no gap protection if the vehicle is a total loss before the scheduled lease end date and: (1) we do not get an insurance settlement; or (2) we get an insurance settlement under a policy that does not comply with our requirements (see Section 23). You will owe us: (1) the Unamortized Capitalized Cost (see definition in this section); minus (2) any money we get from your insurance; minus (3) if the vehicle is returned to us, its Realized Value (Section 36(b)). If the vehicle is not returned to us, the Realized Value is zero, and you will not have an independent appraisal right (Section 36(b)). If any money we get from your insurance plus the realized value exceeds the Unamortized Capitalized Cost, we will not give you a credit for any excess.

You will also owe us any additional amounts due under Section 41, plus, if the vehicle is returned to us, any Disposition Fee shown in Section 3 (unless waived; see Section 14). We will give you any credits due under Section 41.

(c) **Definition of "Unamortized Capitalized Cost":** The base monthly payment times the number of payments not yet due, minus any unearned rent charge figured by the Actuarial Method (see Section 42) based on the number of full monthly periods between early end and scheduled end, plus the Residual Value (Section 7(d)).

40. **Total Loss Before the Scheduled Lease End Date - Single Payment Lease.**

(a) **Total Loss With a Settlement Under the Required Insurance Coverage:** If the vehicle is a total loss before the scheduled lease end date, and we get an insurance settlement under a policy that complies with our requirements (Section 23), you have gap protection.

We will give you a credit for any unearned rent charge, figured by the Actuarial Method (see Section 42) based on the number of full monthly periods between early end and scheduled end.

We will give you a credit for the Remaining Prepaid Depreciation (Section 37(b)).

If the money we get from your insurance is more than the sum of the Residual Value (Section 7(d)) plus the Remaining Prepaid Depreciation (Section 37(b)), we will not give you a credit for any excess.

If the money we get from your insurance is less than the sum of the Residual Value (Section 7(d)) plus the Remaining Prepaid Depreciation (Section 37(b)), you will owe the difference up to the amount of your insurance deductible. If the difference is more than your insurance deductible, you will also owe an excess mileage charge (Sections 8, 16, and 20), up to the amount by which the difference exceeds your deductible. We will figure the excess mileage charge as if the lease had ended as scheduled. There will be no credit for unused extra miles.

You will also owe us any additional amounts due under Section 41. We will give you any credits due under Section 41.

If the sum of the credits exceeds the sum of the amounts due, we will refund the difference to you. If the sum of the amounts due exceeds the sum of the credits, you will owe us the difference.

(b) **Total Loss Without a Settlement Under the Required Insurance Coverage:** There is no gap protection if the vehicle is a total loss before the scheduled lease end date and: (1) we do not get an insurance settlement; or (2) we get an insurance settlement under a policy that does not comply with our requirements (see Section 23). You will owe us: (1) the Residual Value (Section 7(d)); minus (2) any money we get from your insurance; minus (3) if the vehicle is returned to us, its Realized Value (Section 36(b)). If the vehicle is not returned to us, the Realized Value is zero, and you will not have an independent appraisal right (Section 36(b)). If any money we get from your insurance exceeds the Residual Value, we will give you a credit for the excess, up to the amount of the Remaining Prepaid Depreciation (Section 37(b)). We will give you a credit for any unearned rent charge, figured by the Actuarial Method (see Section 42) based on the number of full monthly periods between early end and scheduled end.

You will also owe us any additional amounts due under Section 41, plus, if the vehicle is returned to us, any Disposition Fee shown in Section 3 (unless waived; see Section 14). We will give you any credits due under Section 41.

If the sum of the credits exceeds the sum of the amounts due, we will refund the difference to you. If the sum of the amounts due exceeds the sum of the credits, you will owe us the difference.

## What You Owe at Lease End (Cont.)

**41. Additional Credits and Amounts Due.** Regardless of how the lease ends, you will owe us any unpaid fees and taxes, including any tax on what you owe because this lease ends early, plus any amounts due because you broke agreements in this lease. We may cancel any optional insurance or service, maintenance, or other contracts that we financed for you. We will give you a credit for any amount we get from cancellations. If the lease ends on or after the start of the next-to-last monthly period and you do not buy the vehicle, we will give you a credit for any unused extra miles, unless the vehicle is a total loss (see Section 18).

**42. Actuarial Method of Figuring the Unearned Rent Charge.** We will use the Actuarial Method to figure the unearned rent charge on a monthly basis. We will treat the rent charge for each monthly period as fully earned on the period's first day. If this is a monthly payment lease, we will treat each monthly payment that you made as if we received it on its due date. We will give you a written explanation of the Actuarial Method upon request.

**43. Security Deposit.** If you paid a security deposit, we will use it at lease end to pay anything you owe under this lease and do not pay. We will not pay you interest on the security deposit. We will not add to the security deposit any proceeds, money, or funds we receive from the security deposit. After lease end, we will give back any part of the security deposit that remains.

## Additional Terms

**44. Assignment By Lessor.** If this lease is assigned, the assignee may designate Vehicle Asset Universal Leasing Trust, or its trustee, as agent to hold title for the benefit of the assignee on the vehicle's certificate of title and/or registration.

Any sale and assignment will not be considered to change materially your duties, burden, or risk under this lease. Neither the assignee nor Vehicle Asset Universal Leasing Trust will have to make any repairs to the vehicle, get any insurance, or perform any service Lessor has agreed to perform under this lease. You will look only to Lessor for these services.

If we assign this lease, you will not receive notice of assignment.

**45. PROHIBITION OF TRANSFER OF YOUR INTEREST.** YOU WILL NOT SUBLEASE OR OTHERWISE TRANSFER (EXCEPT TO YOUR ESTATE) ANY RIGHT OR INTEREST YOU HAVE UNDER THIS LEASE OR IN THE VEHICLE WITHOUT OUR PRIOR WRITTEN CONSENT.

**46. Indemnity.** You will protect us from all losses, damages, injuries, claims, demands, and expenses arising out of the condition, maintenance, use, or operation of the vehicle. You agree to indemnify, and hold harmless, us and our assigns from all such losses, damages, injuries, claims, demands, and expenses.

**47. Servicing and Collection Contacts.** We may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. We may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

---

**THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.**

---

## Signatures

**THIS IS THE ENTIRE AGREEMENT.** This lease contains the entire agreement between you and us relating to the lease of the vehicle. Any change to this lease must be in writing, and two must sign it. No oral changes are binding.

LESSEE: X _____ BY: X _____ CO-LESSEE: X _____ N/A

We may delay or refrain from enforcing any of our rights under this lease without losing them.

**NOTICE TO LESSEE. 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT. 2. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT.**

YOU AGREE TO THE TERMS OF THIS LEASE. YOU CONFIRM THAT BEFORE YOU SIGNED THIS LEASE, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT.

YOU CONFIRM THAT YOU SIGNED THIS AGREEMENT AND RECEIVED A COPY AT **DAVIE, FL** ON **11  23  2018**
(city)    (state)         (month)  (day)  (year)

LESSEE: X _____ BY: X _____ CO-LESSEE: X _____ N/A

Lessor agrees to the following: (1) Lessor accepts this lease. (2) If a party is identified in this lease as the intended assignee ("Intended Assignee"), Lessor (i) assigns all right, title, and interest in this lease to the Intended Assignee, under the terms of the Lease Plan Dealer Agreement in effect from time to time with the assignee (the "Dealer Agreement"), and (ii) assigns all right, title, and interest in the leased vehicle to the Intended Assignee, or its designee. Under the terms of the Dealer Agreement, Lessor acknowledges that neither the Dealer Agreement nor the assignment renders Lessor an agent of the assignee.

LESSOR: **RICK CASE ALFA ROMEO FIAT MASERATI** BY: X _____ TITLE: **N/A** DATE: **11/23/2018**

Lease Agreement 10 AF-671-FL-a 10/14                    Page 5 of 5
Copyright 2014 Ally Financial. All Rights Reserved. SmartLease is a registered service mark of Ally Financial.