## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

STEFANO CAVINATO,

      Plaintiff

v.                               Case No. 23-10054
                                  Hon. Jonathan J.C. Grey

ALLY FINANCIAL INC.,

      Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION (ECF No. 27)

On January 9, 2023, Plaintiff Stefano Cavinato filed a putative class action complaint against Defendant Ally Financial Inc. ("Ally") alleging violations of the Consumer Leasing Act ("CLA"), 15 U.S.C. § 1667, et seq. (ECF No. 1.) On February 10, 2023, Ally filed a motion to compel arbitration, dismiss the case, and strike class allegations. (ECF No. 9.) On June 26, 2023, this case was reassigned from Judge Judith E. Levy to this Court. On July 20, 2023, the Court held a motion hearing on Ally's motion. On September 29, 2023, the Court granted Ally's motion to compel arbitration and denied Ally's motion to dismiss and its motion to strike class allegations. (ECF No. 20.) The case was then stayed for arbitration.

On October 16, 2023, Cavinato filed a motion for the Court to reconsider its ruling on Ally's motion to compel arbitration. (ECF No. 22.) On August 29, 2024, the Court granted Cavinato's motion for reconsideration, in large part because of the Supreme Court's ruling in *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024). (ECF No. 24.) On September 27, 2024, Ally filed a renewed motion to compel arbitration. (ECF No. 27.) This motion has been fully briefed. The Court finds that the parties have adequately briefed the motion and, therefore, considers it without oral argument. E.D. Mich. LR 7.1(f). For the reasons stated below, the Court **GRANTS** Ally's motion to compel arbitration.

## I.   BACKGROUND

On November 23, 2018, Cavinato entered into two contracts—a lease agreement (the "Lease Agreement") and a retail lease order ("RLO")—with Rick Case Alfa Romeo Fiat Maserati (the "Dealership") to lease a new vehicle. (ECF No. 1, PageID.4; *see* ECF No. 27-3.) The RLO includes an arbitration clause, which states the following:

> Any claim, or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us . . . which arises out of or relates to your credit application, purchase or condition of this Vehicle, this Order and Agreement or any resulting

> transaction or relationship (including any such relationship with third parties who do not sign this Order and Agreement) shall, at your or our election, be resolved by neutral binding arbitration and not by a court action.

(ECF No. 27-3, PageID.267.) The RLO also includes language which states that the Dealership's performance under the RLO was contingent upon Cavinato securing financing. (*Id.* at PageID.264.) Further, the RLO states that it "shall survive the execution of the Lease Agreement" and that "[t]o the extent any terms herein conflict with the terms of the Lease Agreement (except as to dollar amounts), this Order shall control and govern." (*Id.* at PageID.266.) The RLO also clearly states that it is "an essential document to any claim by Customer against Dealer in connection with the leasing of the Vehicle." (*Id.*) Lastly, the RLO includes the following language regarding reassignment:

> "The Lease Agreement to be entered into between Dealer and Customer . . . shall be immediately assigned by Dealer to a bank/finance company . . . which shall then be the creditor to whom Customer shall be obligated . . . ."

(*Id.* at PageID.264.)

The Lease Agreement was eventually assigned to Ally. (ECF No. 1, PageID.4.) The Lease Agreement included a purchase option at the end of the lease term for $23,809.10, plus official fees and taxes. (*Id.*; *see also*

3

ECF No. 27-3, PageID.269.) Although the Lease Agreement does not contain an arbitration clause, it does contain an integration clause that states the following:

> **THIS IS THE ENTIRE AGREEMENT.** This lease contains the entire agreement between you and us relating to the lease of the vehicle. Any change to this lease must be in writing, and you must sign it. No oral changes are binding.

(ECF No. 27-3, PageID.273.)

On February 19, 2022, Cavinato exercised the Lease Agreement's purchase option and purchased the vehicle from the Dealership for $26,199.55. (ECF No. 1, PageID.5.) Cavinato alleges that the Dealership charged him $2,390.45 more than was indicated on the Lease Agreement. (*Id.*) Specifically, Cavinato alleges that the additional fees included in his purchase from the Dealership were not disclosed by Ally in the Lease Agreement. (*Id.*)

## II.    LEGAL STANDARD

A motion to compel arbitration is reviewed under a standard like the one used for summary judgment. *See Great Earth Co. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). That is, the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. *Id.* All facts and inferences are viewed in the light

most favorable to the opposing party to determine whether a reasonable factfinder could conclude that no valid agreement exists. *Id.*

The Federal Arbitration Act ("FAA") governs the applicability of arbitration agreements. 9 U.S.C. §§ 1–16. The FAA states, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2. Additionally, the FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citation and internal quotation marks omitted). However, in cases where "parties have multiple agreements that conflict as to the third-order question of who decides arbitrability[,] . . . that question must be answered by a court." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 149–150 (2024).

5

## III.    ANALYSIS

"A federal court with diversity jurisdiction over a state-law claim must follow the choice-of-law rules of the State in which it sits." *Olenik v. Ohio Cas. Ins. Co.*, 114 F.4th 821, 825 (6th Cir. 2024). Since the Court has diversity jurisdiction over this matter, it will apply Michigan's choice of law rules. Here, because both parties agree that Florida law is applicable to both the RLO and the Lease Agreement, the Court will determine which contract governs this case under Florida law. *See* Restatement (Second) of Conflict of Laws § 187 (Am. L. Inst. 1971) (stating that, ordinarily, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied"); *Chrysler Corp. v. Skyline Indus. Servs.*, 528 N.W.2d 698, 703 (Mich. 1995) (stating § 187 of the Second Restatement "provide[s] a sound basis for" determining choice of law for contracts").

The primary issue before the Court is whether there is a conflict between the RLO, which contains an arbitration clause, and the Lease Agreement, which does not contain an arbitration clause. The Court acknowledged in its prior August 29, 2024 Order that a conflict may exist between the two contracts at issue. (*See* ECF No. 24, PageID.196

6

(granting Cavinato's motion for reconsideration because a conflict may exist and, thereby, "*Coinbase* might control this issue.").) Ally argues that there is no conflict because the Lease Agreement is silent as to arbitration. (ECF No. 27-1, PageID.229.) Ally further argues that the RLO's arbitration clause is applicable because both contracts are fully integrated. (*Id.* at PageID.231 ("The RLO and Lease Agreement are entirely consistent, compatible, and integrated documents to be read together as multiple other courts have concluded.").) Conversely, Cavinato argues that there is a conflict and, under *Coinbase*, the Court must determine whether the Lease Agreement's merger clause superseded the RLO. (ECF No. 28, PageID.284–287.) The Court agrees with Ally and finds that there is no conflict between the contracts. Alternately, even if there was a conflict, the Court would find that the RLO's uncontested delegation clause places the question of arbitrability before an arbitrator.

Since the Supreme Court's decision in *Coinbase*, several courts have found that a conflict does not exist between two contracts if one contract is silent as to arbitration. *Storz, Tr. of I. Shane Storz Tr. v. S. Airways Corp.*, No. 23-CV-01496-SEP, 2024 WL 3652919, at *4 (E.D. Mo. Aug. 5,

7

2024) ("Because the [first contract] is silent on how the parties must resolve future disputes, it can coexist with the [second contract's] arbitration provision."); *Cloney's Pharmacy, Inc. v. Wellpartner, Inc.*, No. 23-cv-10088-MKV, 2024 WL 4349291, at *10 (S.D.N.Y. Sep. 30, 2024) (internal quotation marks and citation omitted) (finding that *Coinbase* was not applicable because "no provision of the competing contract . . . either explicitly or implicitly sen[t] arbitrability disputes to the courts."); *Cordero v. Solgen Power LLC*, No. 23-cv-01701-MO, 2024 WL 5066061, at *2 (D. Or. Dec. 11, 2024) (finding that because "[one contract] contains a provision delegating the question of arbitrability to an arbitrator," while the other is "silent with respect to forum. . . , *Coinbase* does not apply"); *In re Axos Bank Litig.*, No. 23-cv-2266-RSH-SBC, 2024 WL 4195299, at *7 (S.D. Cal. Sep. 13, 2024) (finding no conflict between two contracts because "the *Coinbase* decision is a narrow one" and it was "undisputed that one of the contracts at issue did not have a forum selection or arbitration provision."). The Court finds these cases persuasive and declines to apply *Coinbase* where it is undisputed that the Lease Agreement is silent as to arbitration.

Specifically, the Court agrees with the *Storz* court's narrow interpretation of *Coinbase*'s holding, which limits its application to "two contracts [where] one [contract sends] arbitrability disputes to arbitration, and the other either explicitly or implicitly send[s] arbitrability disputes to the courts[.]" *Storz*, 2024 WL 3652919, at *4 n.1 (internal quotation marks omitted) (quoting *Coinbase*, 602 U.S. at 152). The *Storz* court reasoned that since one of the contracts at issue "[did] not require the parties to litigate their disputes in court" due to its silence on the issue of arbitrability, *Coinbase* was inapplicable. *Storz*, 2024 WL 3652919, at *4 n.1. Similarly, here, the Lease Agreement does not implicitly or explicitly send the issue of arbitrability to the courts because, under the Lease Agreement, the parties are not required to bring the issue before any court.

Although Cavinato argues that the RLO became invalid upon the execution of the Lease Agreement, the record does not support his conclusion. The RLO clearly states that it "shall survive the execution of the Lease Agreement[.]" (ECF No. 27-3, PageID.266.) Therefore, even if the Lease Agreement did supersede certain parts of the RLO, the RLO is still a valid contract under which Cavinato agreed to arbitrate

arbitrability. Additionally, since neither party contests that the RLO clearly and unmistakably includes a delegation clause, there is no reason for the Court to determine arbitrability. Accordingly, the question of whether the RLO was subsequently superseded by the Lease Agreement should be submitted to an arbitrator.

## IV.   CONCLUSION

For the reasons stated above, Ally's motion to compel arbitration (ECF No. 27) is **GRANTED**.

**IT IS HEREBY ORDERED** that the proceedings are **STAYED** pending the outcome of arbitration.

**SO ORDERED.**

<u>**s/Jonathan J.C. Grey**</u>
Jonathan J.C. Grey
Dated:  August 25, 2025          United States District Judge

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 25, 2025.

<u>s/ **S. Osorio**</u>
Sandra Osorio
Case Manager

11